punitive damages under Cal. Civ. Code § 3294 on a showing of malice, oppression, or fraud, and reasonable attorneys' fees and costs where authorized.

529.    **The arbitrator's own extortion-rejection finding is factual support for Plaintiff's abuse-of-process theory.** At page 29 of the April 20, 2026 Interim Award, the arbitrator rejected Defendants' request for a finding that Plaintiff committed criminal extortion under Cal. Penal Code § 518, concluding that "The Schmidt Claimants have presented no evidence that Ritter threatened to report a crime and to publicly accuse Schmidt of committing a crime." That finding is now binding on Defendants in this action by the doctrine of judicial admission: Defendants cannot, in this Court, contend that Plaintiff committed any act of extortion on December 17, 2024, or at any other time relevant to this Complaint. Yet, even on that finding — that no extortion occurred — the arbitrator proceeded to award Defendants $21,550 in "contract damages" for Plaintiff's refusal to vacate the Paley property by noon on December 17, 2024, on an alternative "implied covenant" theory. (Interim Award pp. 29–30.) The combination of (a) a finding that Plaintiff did not engage in wrongful conduct, (b) an award of substantial damages against Plaintiff on an alternative theory, and (c) the forum's refusal to permit Plaintiff to present evidence or to obtain a merits hearing, confirms the abuse-of-process pattern this Count pleads: the AAA proceeding was not used to adjudicate a genuine dispute on the merits but

COMPLAINT

to manufacture a damages judgment against a pro se sexual-assault reporter through procedural mechanisms she could not effectively contest.

**COUNT XII – *Defamation, False Light, Commercial Disparagement, and Intentional Interference with Prospective Economic Advantage — Cal. Civ. Code §§ 45, 46; Common Law***

*Against Schmidt, Hillspire, Glaser Weil, Marcus, Knox Networks, Inc., Natalya Thakur, KPMG, Google LLC, and Does 1–50*

530.    Plaintiff realleges the preceding paragraphs as though fully set forth herein. This Count is pleaded under supplemental jurisdiction, 28 U.S.C. § 1367(a), as arising from the same nucleus of operative fact as Counts I, II, III, V, VIII, XIII, and XIV.

531.    **Defamatory statements.** Defendants, acting individually and in concert, have made or caused to be made the following defamatory statements concerning Plaintiff, each of which Plaintiff alleges to be false, published to third parties, and either defamation per se under Cal. Civ. Code § 46 or actionable on a defamation-per-quod theory with special damages pleaded:

g. **Marcus August 4, 2024 "abandoned SPM" email to SPM employees.** On or about August 4, 2024, Defendant Craig H. Marcus sent an email to the approximately fifteen then-current employees of Steel Perlot Management, LLC, stating in substance that Plaintiff Michelle Ritter had

"abandoned SPM," had "failed at fundraising," had "misled employees about the company's financial condition," and had "furloughed all staff." The email was sent from Marcus's Glaser Weil email address and was received by the SPM employee distribution. The statements were false: Plaintiff had been blocked from SPM systems by Hillspire-directed action beginning April 2024 (Part IV.A); the fundraising effort had been blocked by Hillspire's July 2024 funding freeze (Part IV.A); and the furlough was Hillspire-directed, not Plaintiff-directed. The statements were made with knowledge of falsity or reckless disregard for truth because Marcus, as Schmidt's counsel executing the Hillspire-directed governance takeover, personally knew the true operational status.

h. **The Information August 1, 2024 article quoting Marcus or Glaser Weil.** On or about August 1, 2024, The Information published an article titled "Eric Schmidt's Dispute With Former Partner Michelle Ritter Escalates as She Walks Away From Fundraising Role," reporting in substance that Plaintiff had "abandoned" her role and that SPM had "failed to raise its fund." On information and belief, the reporter received briefing from Marcus, Glaser Weil, or Hiltzik. The statements published in the article were false for the reasons stated in ¶ (a).

342

COMPLAINT

i. **Hiltzik-coordinated "scorned mistress" narrative — January 2025 WSJ inquiry.** On or about January 9, 2025, Matthew Hiltzik received a WSJ reporter inquiry about Plaintiff's allegations (Interim Award p. 15). On information and belief, Hiltzik thereafter coordinated a media-facing narrative in which Plaintiff was characterized to reporters as a "scorned mistress" or similar, and this characterization was used to seed subsequent press and social-media treatment of Plaintiff.

j. **StarX / SPM "self-dealing" narrative — Interim Award dissemination (April 2026 – ongoing).** Through the Interim Award itself and the anticipated $8,080,138 Eric-Rose-directed paid-media campaign, Defendants have disseminated and intend to disseminate to journalists, investors, employers, and industry contacts that Plaintiff engaged in "self-dealing," "conversion" of $1,183,429 in Schmidt personal property, "extortion," and "sexual-misconduct false accusation." Those statements are false for the reasons pleaded in Counts VI, VIII, IX, and XIII and in the KPMG documentary record (Ex. 60) establishing that StarX was "100% owned by Michelle Ritter (CEO), not by SPM" and that the "self-dealing" narrative is directly contradicted by Hillspire's own admission to KPMG.

COMPLAINT

k. **Knox Networks and Natalya Thakur statements.** On information and belief, Knox Networks, Inc. and its Chief Executive Officer Natalya Thakur have made, caused to be made, or ratified statements to Plaintiff's industry, investor, employer, and media contacts to the effect that Plaintiff's Knox equity (Certificate CS-02, 24,000,000 common shares) was "clawed back" for cause, that Plaintiff engaged in fraud, self-dealing, or misconduct in connection with her founder-level role at Knox, and that Plaintiff's departure from Knox was disciplinary rather than retaliatory. Each such statement is false. Plaintiff's removal from Knox on April 26, 2024 was, as pleaded throughout Part IV.F and Count XV, a direct retaliatory response to her April 2024 mediation disclosures of sexual harassment, retaliation, and coercion by Defendant Schmidt, and her Knox equity position remains unredeemed and subject to the rescission and restoration relief sought in Counts VI and XV and in the Prayer for Relief.

l. **KPMG and Schmidt-aligned tax statements to IRS and state tax authorities.** On information and belief, KPMG and Schmidt-aligned tax actors have attributed to Plaintiff tax liability and taxpayer-identification records inconsistent with the underlying facts, including the January 2025 Audem Form 1099 (Ex. 17) and the SPM 2023/2024 tax returns whose signature Plaintiff refused (Ex. 10). Such tax-authority submissions

constitute republication of false statements about Plaintiff to governmental third parties.

m. **Statements in the Interim Award subject to the defamation-by-decree analysis.** As set out in ¶ 297A below, the Interim Award contains statements that Plaintiff made a "false rape accusation" with "actual malice" and by "clear and convincing evidence." Defendants intend to disseminate those findings through the $8,080,138 Eric-Rose-directed paid-media campaign, and that anticipated dissemination is independently actionable.

532.    Plaintiff additionally alleges, on information and belief subject to discovery, such further defamatory statements as the course of discovery may establish.

533.    **Publication.** The Interim Award's findings have been published, at minimum, to AAA personnel, to Schmidt-aligned counsel and PR agents, to Eric Rose and his firm, and (on information and belief) to journalists and industry contacts. Plaintiff alleges, on information and belief, that Defendants intend or have begun to disseminate the Interim Award's findings to Schmidt's Facebook audience of approximately 66.7 million followers and to additional social-media, press, and search-engine audiences as part of the $8,080,138 PR campaign.

COMPLAINT

534.     **Falsity / actual malice.** Each of the statements identified above is false or was made with reckless disregard for truth. The Interim-Award-based statements are not immunized by litigation privilege or by any judgment-deference doctrine because (i) the Interim Award is constitutionally infirm for the reasons in Count VIII; (ii) the Interim Award was procured through the evidence-preclusion, pay-to-play, and Article-III-substitution conduct pleaded in Counts VII and VIII; and (iii) California Civil Code § 47(b) does not immunize defamatory re-publication outside the proceeding in which statements were made. The Knox/Thakur statements are made in retaliation for Plaintiff's protected speech and reporting.

535.     **False light invasion of privacy.** The cumulative picture Defendants are painting — of Plaintiff as a predatory false accuser of a respected businessman — places Plaintiff in a highly offensive false light before the public, is published with knowledge or reckless disregard of falsity, and is actionable under California common law.

536.     **Commercial disparagement / trade libel.** The statements disparage Plaintiff's professional and commercial standing in the AI, venture-capital, and technology industries, in which she built StarX and in which she sought to pursue her career. The $8,080,138 PR-campaign budget is, in substance, a calculated fund for serial commercial disparagement.

537.    **Intentional interference with prospective economic advantage.** Defendants knew of Plaintiff's prospective economic relationships with investors, customers, employers, and professional counterparties in the AI and technology industries, intended to interfere with those relationships through the conduct alleged, engaged in independently wrongful acts (defamation, tortious conduct, and the coercive and RICO conduct in Parts IV.C, IV.F, IV.I, IV.K, IV.L, IV.M, and IV.H), and caused Plaintiff economic harm.

538.    **Damages.** Plaintiff seeks general damages for injury to reputation, special damages for lost business opportunities, punitive damages under Cal. Civ. Code § 3294 on a showing of malice, oppression, or fraud, and temporary, preliminary, and permanent injunctive relief restraining Defendants from further publication of the Interim Award's defamatory findings and from implementing or funding the $8,080,138 Eric Rose PR campaign. Plaintiff's damages on this Count alone, on Plaintiff's pleading and consistent with her direct-injury list in Part IV, approach or exceed $33,000,000.

539.    **Platform-level concrete disparagement injury.** In addition to the defamation-by-decree and planned-republication theory pleaded above, Plaintiff pleads concrete, measurable current disparagement injury from the post-award platform-level suppression pleaded in Part IV.J.5, including: (i) a measurable drop in audience, readership, and impressions on Plaintiff's authored content on

rittermichelle.substack.com, X (@ritter_perlot), LinkedIn, Instagram, and Threads; (ii) suppression of Plaintiff's content from Google search results, including the direct Substack URL documented in Exhibit 69; (iii) audience-development damages in the professional, investor, academic, and journalistic communities to which Plaintiff's whistleblower communications are directed; and (iv) lost prospective employment, investor, and consulting relationships traceable to the search-engine suppression and the ongoing platform-level visibility restriction.

540.     **Enumerated actionable characterizations.** The arbitrator-authored characterizations identified in Part IV.J.4 — including (i) "self-centered efforts to obtain revenge"; (ii) "not … for the benefit of victims at large"; (iii) "confabulation (unconscious fabrication, distortion, or misinterpretation of memory) or intentional fabrication"; and (iv) "fantastical" / "magical backdoor" — are pleaded as each independently defamatory per se where re-published outside the arbitral proceeding through the $8,080,138 Rose-directed paid-media campaign or otherwise, consistent with the planned-republication and defamation-by-decree framework pleaded above.

541.     **Planned republication, actual malice, and per-placement liability.** The $8,080,138 component of the April 20, 2026 Interim Award expressly funds a 12-month Rose-directed paid-media campaign to place the arbitrator's

defamation-per-se findings in Google search results, on social media, and in third-party publications (Interim Award p. 37; Rose Report, Ex. 60.R). Each planned placement is an independent act of republication under Restatement (Second) of Torts § 578, and each republishes the arbitrator's finding that Plaintiff's 2024 sexual-assault report was false. Defendants act with actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), because they know or recklessly disregard that the underlying findings were procured from a tribunal that (i) precluded Plaintiff from presenting any evidence under the March 13, 2026 R-60 order, (ii) drew adverse inference from her Fifth-Amendment privilege, and (iii) operated under a direct-party-compensation structure disclosed on the face of Ex. 62. *Schatz v. Republican State Leadership Committee*, 669 F.3d 50 (1st Cir. 2012). Plaintiff seeks injunctive relief enjoining execution of the campaign under the prior-restraint framework of *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141 (2007), which permits injunctive relief against repetition of speech already adjudicated defamatory — a standard Plaintiff contends cannot be met on this record because no impartial adjudication has occurred.

542.    **Pre-emptive probability-of-prevailing showing under Cal. Code Civ. Proc. § 425.16.** Count XII will predictably draw an anti-SLAPP motion. Plaintiff pleads facts sufficient to meet the minimal-merit threshold at the second prong

of the § 425.16 analysis: (i) Defendants' reputation-management statements are commercial speech directed at business relationships, not petitioning; (ii) the *Koebel* pattern comparator establishes actual malice; (iii) the arbitration findings are not public record (commercial arbitration is private) and therefore the "fair-report" privilege does not attach; (iv) the litigation privilege of Cal. Civ. Code § 47(b) does not apply to extrajudicial reputation-management publications under *Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006), and *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma*, 42 Cal. 3d 1157 (1986). The communications at issue — planned paid-media placements — are outside any judicial proceeding and are not aimed at achieving the objects of litigation.

543.    **Arbitrator's false characterization of Plaintiff's motives — additional defamation predicate.** The April 20, 2026 Interim Award contains statements by the arbitrator (the Honorable Beth M. Andrus (ret.)) purporting to find, as a matter of fact, that Plaintiff was not sincerely motivated by an interest in helping other victims of sexual assault and sexual harassment. Those statements, set forth verbatim below, are false. They were made with actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), because the arbitrator was on notice of Plaintiff's January 29, 2026 op-ed "The Predator's Playground" (Ex. 63), Plaintiff's February 10, 2026 Whistleblower Letter to Members of Congress (Ex. 64), Plaintiff's refusal to accept silencing payment terms, and the parallel *Sarah*

*Koebel v. Derek Rundell* matter (Ex. 65). The published findings defame Plaintiff directly, and Defendants Schmidt, Hillspire, Glaser Weil, Knox, and Thakur are pleaded herein as having validated and adopted those findings in extrajudicial communications and public-relations placements, and are alleged to be continuing to validate and adopt them through the $8,080,138 Rose- and Hiltzik-coordinated campaign described in Parts IV.0.3 and IV.L.6. The planned republication of these findings is independently actionable under Restatement (Second) of Torts § 578 and is the subject of the injunctive relief sought in Part VI.

544.    **Arbitrator's quoted language.** The arbitrator wrote: "While Ritter's article raised valid critiques relating to the adequacy of the legal system for victims of sexual misconduct, she also made it clear that she was one of these victims at the exact time that she was seeking to convince a judge to allow her to avoid an arbitral forum. I do not criticize Ritter for participating in the national debate about whether institutions in our society are adequately demanding accountability for people (usually men, and even more typically, powerful men) who commit sexual misconduct. **But Ritter chose to use a very public forum to manipulate this system for her own personal benefit—not for the benefit of victims at large.**" (Interim Award p. 41.) The arbitrator further concluded: **"one can also conclude that Ritter engaged in self-centered efforts to obtain**

**revenge against Schmidt in a way that was more damaging than helpful to her cause.**" (*Id.*) These statements are false, disparaging, and defamatory of Plaintiff. They impute to Plaintiff base and self-interested motives in reporting sexual assault and sexual harassment, at the very moment Plaintiff's January 29, 2026 op-ed (Ex. 63), February 10–11, 2026 Whistleblower Letter to Members of Congress (Ex. 64), and refusal to accept silencing payment terms all evidence a genuine interest in systemic reform. The arbitrator made these statements in a proceeding in which she had, by her own March 13, 2026 R-60 order, "precluded [Plaintiff] from presenting any evidence in her defense" (Interim Award p. 9) — and therefore without hearing Plaintiff's testimony or reviewing Plaintiff's documentary evidence on the motives the arbitrator purported to adjudicate. Defendants Schmidt, Hillspire, Glaser Weil, Knox Networks, and Natalya Thakur are pleaded herein as having validated and adopted these findings in their extrajudicial communications and public-relations placements, and as continuing to validate and adopt them through the $8,080,138 Rose- and Hiltzik-coordinated paid-media campaign described in Parts IV.0.3 and IV.L.6. Each planned republication under that campaign is an independent act of actionable defamation under Restatement (Second) of Torts § 578.

**COUNT XIII** – *Declaratory Relief, Vacatur, and Constitutional Invalidation of the April 20, 2026 AAA Interim Arbitration Award — 9 U.S.C. §§ 10, 402(b); 28 U.S.C. §§ 2201–2202; U.S. Const. amends. I, V, XIV*

*Against Schmidt, Hillspire, Google LLC, Matthew Hiltzik (individually, for prospective injunctive relief only), Hiltzik Strategies, LLC (for prospective injunctive relief only), and Does 1–50*

545.    Plaintiff realleges the preceding paragraphs as though fully set forth herein, and incorporates by reference the Interim Award (Ex. 60) and the April 21, 2026 Transmission Letter (Ex. 62).

546.    This Count rests on federal-question jurisdiction under 28 U.S.C. § 1331 because the Interim Award (i) adjudicates the applicability of EFAA, 9 U.S.C. §§ 401–402, a determination Congress has committed to a court by § 402(b); and (ii) adjudicates Plaintiff's First-Amendment, Fifth-Amendment, and Fourteenth-Amendment rights as pleaded in Part IV.K. Plaintiff does not rely on 9 U.S.C. §§ 9 or 10 as a jurisdictional predicate, consistent with Badgerow v. Walters, 596 U.S. 1 (2022); she invokes those sections only as vacatur standards applied to the federal-question claim above. Plaintiff acknowledges Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373 (9th Cir. 1987); for the reasons stated in Part IV.I, the Interim Award is sufficiently final for declaratory purposes, and

COMPLAINT

Plaintiff will amend or supplement upon issuance of the Final Award to the extent required.

547.     **Ground 1 — 9 U.S.C. § 10(a)(4) (arbitrator exceeded powers) by adjudicating EFAA-protected claims.** As pleaded in Part IV.I.2, the arbitrator adjudicated the truth or falsity of Plaintiff's 2024 sexual-assault report — a claim plainly 'relating to' a 'sexual-assault dispute' within the meaning of 9 U.S.C. §§ 401(3) and 401(4). Plaintiff elected EFAA protection under § 402 in writing to the arbitrator and AAA. Section 402(b) commits EFAA applicability to a court, "irrespective of whether the agreement purports to delegate such determinations to an arbitrator." The arbitrator's adjudication is a per se excess of powers under § 10(a)(4).

548.     **Ground 2 — 9 U.S.C. § 10(a)(3) (refusal to hear evidence) by R-60 total preclusion, entered as a nonpayment default.** As pleaded in Part IV.I.3, the March 13, 2026 R-60 sanction precluded Plaintiff, a pro se party who had invoked EFAA, from "presenting any evidence in her defense." Total preclusion is the paradigmatic 10(a)(3) violation. The violation is aggravated by the predicate for the sanction: Plaintiff was defaulted not for misconduct, but for inability to pay the AAA-demanded arbitrator and forum fees required to continue participating in the proceeding (see Part IV.I.3; Ex. 62). Nonpayment-driven total preclusion converts § 10(a)(3) into a structural poverty bar and

independently triggers Fourteenth-Amendment due-process review under Boddie v. Connecticut, 401 U.S. 371 (1971).

549.    **Ground 3 — 9 U.S.C. § 10(a)(2) (evident partiality) by direct party compensation and by forum-fee-driven default structure.** As pleaded in Part IV.I.4, the April 21, 2026 Transmission Letter (Ex. 62) discloses that Plaintiff was billed $28,000 in arbitrator compensation at the arbitrator's own rate-estimate while the arbitrator ruled systematically in favor of the paying Claimants. Plaintiff further alleges, on information and belief, that Defendant Marcus threatened to 'appeal your ruling' if the arbitrator declined a requested ruling. Direct pecuniary interest and threat-to-reverse communication together establish evident partiality as a matter of law. See Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145 (1968); Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009). Evident partiality is further established by the structural pay-to-play feature of the proceeding itself: the pro se accuser was defaulted for nonpayment of the same forum fees the accused had paid, and the arbitrator whose compensation the accuser could not afford thereafter adjudicated against that accuser. See In re Murchison, 349 U.S. 133 (1955).

550.    **Ground 4 — First-Amendment invalidity, confirmed by post-award platform-level suppression.** As pleaded in Parts IV.L and IV.M, the Interim Award punishes (a) Plaintiff's "Predator's Playground" op-ed (not naming

Schmidt), (b) Plaintiff's February 10, 2026 Whistleblower Letter to Congress (Petition-Clause and whistleblower speech), and (c) Plaintiff's 2024 private sexual-assault report — each within the core First-Amendment protection. The $8,080,138 PR-campaign damages component is a content- and viewpoint-based remedy that the First Amendment prohibits, regardless of any arbitral form. Under *Shelley v. Kraemer*, 334 U.S. 1 (1948), judicial confirmation of the Interim Award would itself constitute unconstitutional state action. The First-Amendment infirmity is confirmed, not theorized, by the post-award platform-level suppression pleaded in Part IV.J.5 — the mid-to-late April 2026 X visibility restriction, the Google search de-indexing of rittermichelle.substack.com, and the DMCA-architecture deployment exemplified by Lumen Database notice #83213332 (April 16, 2026). Those concrete suppression actions are the empirical execution, during the pendency of this action, of the decretal remedy the First Amendment forbids.

551.    **Ground 5 — Fifth-Amendment invalidity; rape-as-fact adjudicated on the accused's sworn statement alone.** As pleaded in Part IV.I.6 and Part IV.K, the arbitrator's defamation-per-se finding is quasi-criminal in character and is predicated on adverse inferences drawn from Plaintiff's non-testimony — non-testimony that was the exercise of her Fifth-Amendment privilege against self-incrimination in a proceeding used to construct quasi-criminal findings.

COMPLAINT

Griffin v. California, 380 U.S. 609 (1965). The constitutional infirmity is compounded by the record-posture of the rape-as-fact finding: the arbitrator, having precluded Plaintiff from presenting any evidence (Ground 2), adjudicated on a 'clear and convincing' standard that Plaintiff's 2024 report of rape was false on the basis of nothing more than Schmidt's own sworn denial. A private adjudicator paid by the accused cannot make a quasi-criminal finding of false-rape-accusation against a pro se accuser on the accused's sworn word alone.

552.    **Ground 6 — Fourteenth-Amendment due-process invalidity; pay-to-play compensation and poverty-bar default.** As pleaded in Parts IV.K.3, IV.K.4, and IV.M, the arbitrator's direct compensation by the ruling-favored party violates the core due-process requirement of a neutral decisionmaker. Tumey v. Ohio, 273 U.S. 510 (1927); Caperton, 556 U.S. 868; In re Murchison, 349 U.S. 133 (1955). The due-process violation is independently established by the nonpayment-driven R-60 default: a pro se woman was stripped of her entire defensive record for inability to pay AAA-demanded forum fees the accused had already paid, in a proceeding resulting in $10,744,999 in damages against her. Boddie v. Connecticut, 401 U.S. 371 (1971) (due-process prohibition on poverty-based denial of adjudicatory access). The state-action entanglement under Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), and Shelley v.

Kraemer, 334 U.S. 1 (1948), makes these Fourteenth-Amendment protections applicable.

553.    **Ground 7 — Internal inconsistency / no-publication defamation ruling.** As pleaded in Part IV.I.7, the Interim Award concedes non-publication (WSJ did not publish) while simultaneously entering a $50,000 award on the WSJ theory. The internal inconsistency is itself a manifest error on the face of the Award that, combined with the other grounds, supports vacatur.

554.    Plaintiff seeks declaratory relief that (a) the Interim Award is vacated in whole or in part under 9 U.S.C. §§ 10(a)(2), (a)(3), and (a)(4); (b) the Interim Award is unconstitutional under the First, Fifth, and Fourteenth Amendments; (c) the EFAA applies to Plaintiff's sexual-assault-related claims and the defamation-per-se findings predicated on them are a nullity; and (d) the $8,080,138 PR-campaign damages component is unenforceable as a content-based prior restraint. Plaintiff further seeks temporary, preliminary, and permanent injunctive relief restraining Defendants from confirming, enforcing, disseminating, or broadcasting the Interim Award and its findings, pending resolution of this Count.

555.    **Exceeded powers — four independent § 10(a)(4) theories.** The arbitrator exceeded her powers under 9 U.S.C. § 10(a)(4) in at least four independent respects, each of which alone requires vacatur:

a. (a) **EFAA-applicability overreach.** The arbitrator adjudicated the applicability of EFAA (9 U.S.C. §§ 401–402) in direct defiance of § 402(b)'s express statutory commitment of that question to a court. Congress removed from arbitrators the authority to decide whether an action falls within EFAA's scope; an arbitrator who nevertheless decides the question acts without power.

b. (b) **First-Amendment-invalid prospective speech-suppression remedy.** The arbitrator awarded prospective funds of $8,080,138 to be spent on suppression of constitutionally protected speech — a remedy no agreement purports to confer and no arbitrator may impose consistent with the First Amendment. See *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793 (8th Cir. 2004) (First Amendment applies to arbitrator action where there is state-action entanglement); *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579 (9th Cir. 1987) (award may not violate public policy).

c. (c) **Fifth-Amendment adverse-inference error.** The arbitrator drew an adverse inference from a pro se respondent's exercise of her Fifth-Amendment privilege in a quasi-criminal defamation posture (Interim Award pp. 44–45), in violation of *Spevack v. Klein*, 385 U.S. 511 (1967), and the due-process foundations of *Griffin v. California*, 380 U.S. 609

COMPLAINT

(1965), extended to civil adjudications where the defendant faces penalty-like remedies (here, $10,744,999).

    d. (d) **Evident-partiality adjudication after documented financial interest.** The arbitrator continued to adjudicate and render findings after the direct-party-compensation structure disclosed on the face of the April 21, 2026 Collins Transmission Letter (Ex. 62) created undisclosed or inadequately disclosed financial interest contrary to *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 (1968), and *New Regency Productions, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101 (9th Cir. 2007). An adjudicator cannot issue a $10.7M award to a party and then, within 24 hours, invoice that same party an additional $28,000 for "completion of this matter." That structural fact alone invalidates the Award.

556.     **Manifest disregard of the law — Ninth Circuit § 10(a)(4) framework.** Under *Collins v. D.R. Horton, Inc.*, 505 F.3d 874 (9th Cir. 2007), and *Biller v. Toyota Motor Corp.*, 668 F.3d 655 (9th Cir. 2012), manifest disregard survives *Hall Street Associates v. Mattel, Inc.*, 552 U.S. 576 (2008), as a framework for § 10(a)(4) excess-of-power review. The arbitrator manifestly disregarded the law by (i) refusing to apply 9 U.S.C. § 402(b)'s EFAA allocation-to-court command despite Plaintiff's written invocation of EFAA; (ii) applying California

COMPLAINT

defamation law in a manner irreconcilable with *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the private-figure public-concern framework of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), and the qualified and absolute privileges codified in Cal. Civ. Code § 47 and the Silenced No More Act (Cal. Gov't Code § 12964.5); (iii) awarding prospective paid-media funding for which no recognized damages theory exists in California law; and (iv) imposing contract damages on speech found to be a "veiled reference" without resolving whether that speech was opinion or provably-false fact under *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).

557.    **Public-policy vacatur — First-Amendment floor.** Ninth Circuit public-policy vacatur doctrine survives *Hall Street*. See *Matthews v. National Football League Management Council*, 688 F.3d 1107 (9th Cir. 2012); *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200 (9th Cir. 1989) (en banc). The Interim Award violates a "well-defined and dominant" public policy embodied in the First Amendment's prohibition on state-enforceable private suppression of protected speech, in CCP §§ 1001–1002 prohibiting provisions preventing disclosure of factual information regarding sexual assault, in Cal. Civ. Code § 1670.11 (voiding contracts that waive rights to communicate with governmental agencies), and in Cal. Gov't Code § 12964.5

(Silenced No More Act). No party may procure through a private arbitrator what the First Amendment and these statutes forbid.

558.    **Consolidated evident-partiality record under § 10(a)(2).** Evident partiality is independently established by the following documentary anchors, each incorporated herein from Parts IV.K and IV.L:

a. (i)    Direct-party compensation of arbitrator under the AAA Rules applicable to this matter, with no escrow or neutral fee administration, as a structural default.

b. (ii)    The April 21, 2026 Collins Transmission Letter (Ex. 62) disclosing that the arbitrator invoiced the prevailing Schmidt Claimants an additional $28,000 at her own rate-estimate for "completion of this matter," issued within 24 hours of the $10,744,999 Award in the Claimants' favor.

c. (iii)    Documented pay-when-paid structure and Plaintiff's formal record of indigence and inability to pay arbitrator fees, generating the March 13, 2026 R-60 default sanction that precluded Plaintiff from presenting any evidence.

d. (iv)    The repeat-forum deployment documented in *Sarah Koebel v. Derek Rundell* (Ex. 65, Marcus Declaration identifying Schmidt as the "John Doe" funding investor) — same AAA forum, same doctrinal posture,

same evidence-exclusion mechanism deployed sequentially against a second woman who spoke about Schmidt-aligned sexual misconduct.

e. (v)  The arbitrator's adoption of Schmidt-side proposed findings with minimal modification, consistent with the substantial-verbatim-adoption concern addressed in *Anderson v. City of Bessemer City*, 470 U.S. 564, 572 (1985).

f. (vi) The arbitrator's refusal to entertain EFAA § 402(b) applicability as a threshold matter, despite Plaintiff's written invocation, consistent with a disposition to favor the paying party on all gateway questions.

559.    **Additional § 10(a)(2) evident-partiality evidence — arbitrator's substantive bias against sexual-assault reporters.** The Interim Award contains statements by the arbitrator purporting to find that Plaintiff was not genuinely motivated by an interest in helping other victims of sexual assault and sexual harassment. Those statements (verbatim quote reserved below) are, on Plaintiff's pleading, documentary proof of the adjudicator's substantive bias against a pro se rape reporter who had been precluded under AAA Commercial Rule R-60 from presenting any evidence of her own motives, her prior victim-advocacy, or her truthfulness. An adjudicator who characterizes a pro se sexual-assault reporter as insincere, without having permitted that reporter to be heard on the point, exhibits the kind of evident partiality that 9 U.S.C. § 10(a)(2) and

COMPLAINT

*Commonwealth Coatings* forbid. This evidence is pleaded in addition to, and cumulatively with, the pay-to-play and *Koebel*-pattern evidence pleaded in the preceding paragraphs.

560.    **Arbitrator's quoted language (vacatur context).** The arbitrator wrote at page 41 of the Interim Award that Plaintiff "chose to use a very public forum to manipulate this system for her own personal benefit—not for the benefit of victims at large," and that "one can also conclude that Ritter engaged in self-centered efforts to obtain revenge against Schmidt in a way that was more damaging than helpful to her cause." These findings are documentary proof of the adjudicator's substantive bias against a pro se sexual-assault reporter who had been precluded under the arbitrator's own March 13, 2026 Order of Default from presenting any evidence of her own motives, her prior advocacy, her truthfulness, or the content of her 2026 op-ed and Congressional Letter. An adjudicator who characterizes a pro se sexual-assault reporter as "manipulat[ing]" the "system" for "self-centered" "revenge," without having permitted that reporter to be heard on the point, exhibits the kind of evident partiality that 9 U.S.C. § 10(a)(2) and *Commonwealth Coatings* forbid. This evidence is pleaded in addition to, and cumulatively with, the direct-party-compensation, *Koebel*-pattern, and $28,000-post-Award-invoice evidence pleaded in the preceding paragraphs. It further supports public-policy vacatur

under *Matthews v. NFL* and *Stead Motors*: a well-defined and dominant public policy, grounded in the First Amendment and in CCP §§ 1001–1002, Cal. Civ. Code § 1670.11, and Cal. Gov't Code § 12964.5, forbids any state-enforceable adjudication that punishes a sexual-assault reporter for publishing sexual-misconduct narratives of systemic importance.

561.     **Injunctive relief and prior-restraint doctrine.** The injunctive relief sought against the $8,080,138 prospective paid-media campaign is not barred by prior-restraint doctrine. Under *Near v. Minnesota*, 283 U.S. 697 (1931), and *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), prior restraints on speech carry a heavy presumption of unconstitutionality. That presumption is overcome here in two independent respects. **First**, Plaintiff seeks to enjoin not her own speech but Defendants' prospective, state-enforceable, paid suppression of Plaintiff's speech — a very different constitutional posture from classic prior-restraint analysis. The speech at issue on Plaintiff's side (the "Predator's Playground" op-ed, Plaintiff's Congressional Letter, and Plaintiff's 2024 private report) has not been adjudicated defamatory by any Article III tribunal respecting First-Amendment minimums; the AAA arbitrator's findings are on direct challenge in this Complaint. **Second**, the Rose- and Hiltzik-coordinated campaign pleaded in Parts IV.0.3 and IV.L.6 constitutes commercial reputation-management speech funded by a court-enforceable arbitral award, not protected

political speech. See *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141 (2007) (injunctive relief permissible against repetition of already-adjudicated defamation); here, the *Balboa Island* exception is reached on a more cautious ground — the campaign is a paid, state-enforceable, prospective instrument of suppression of lawful speech, a form of conduct rather than speech that Article III courts have authority to enjoin.

## COUNT XIV – *Violation of the Digital Millennium Copyright Act — 17 U.S.C. § 512(f) (Knowing Material Misrepresentation in Takedown Notices)*

*Against Google LLC, Rulta OÜ, and Does 1–50 (including on information and belief any Schmidt- or Hillspire-affiliated DMCA submitter, Rulta OU, and any person identified as "camille yuki" or any other fictitious or laundered identity used to submit DMCA notices against Plaintiff-authored content).*

562. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

563. **Statutory framework.** Section 512(f) of the Digital Millennium Copyright Act provides that "[a]ny person who knowingly materially misrepresents … that material or activity is infringing … shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer … by any copyright owner or copyright owner's authorized licensee, or by a

service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation." 17 U.S.C. § 512(f).

564.    **Controlling Ninth Circuit standard.** A copyright holder must form a subjective good-faith belief that the targeted use is not authorized by fair use before submitting a takedown notice. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154–55 (9th Cir. 2016). Submission of a takedown notice without any reasonable fair-use consideration, or based on a boilerplate claim with no individualized review, is actionable misrepresentation. See also *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004); *Rossi v. Motion Picture Ass'n of America*, 391 F.3d 1000 (9th Cir. 2004).

565.    **Factual predicates pleaded in Parts IV.L.2 and IV.L.5.** Plaintiff alleges, on information and belief subject to particularization through discovery of Google's DMCA-processing logs, the Lumen Database, and targeted third-party subpoenas to DMCA vendors (including Rulta OU) that, during 2024–2026, DMCA notices were submitted to Google, and on information and belief other platform providers, targeting Plaintiff-authored content including but not limited to content on rittermichelle.substack.com, on Plaintiff's LinkedIn profile, on Plaintiff's X account (@ritter_perlot), on Plaintiff's Instagram account, and on Plaintiff's Threads account, that contained material knowing misrepresentations within the meaning of 17 U.S.C. § 512(f).

566.    **Categories of knowing misrepresentation.** The misrepresentations include, on information and belief: (i) false claims that Plaintiff's original authored content (including the Predator's Playground op-ed, the Whistleblower Letter to Congress, and associated social-media publications) is "infringing" of some third-party copyright when no such copyright claim is colorable; (ii) submission of takedown notices through a DMCA-compliance vendor architecture (Rulta OU or similar) that does not, and is not designed to, undertake any individualized good-faith fair-use analysis required by *Lenz*; (iii) misidentification of the ownership or authorship of the targeted content; (iv) use of laundered or fictitious submitter identities (including on information and belief "camille yuki" as used in Lumen Database record 83213332 and similar entries) that obscure the actual real-party-in-interest behind the takedown request; and (v) submission of notices whose predominant purpose is not copyright enforcement but suppression of criticism, whistleblower speech, or commentary protected by the First Amendment.

567.    **Google's reliance and resulting injury.** Plaintiff alleges that Google, as a service provider within the meaning of 17 U.S.C. § 512(c), has relied on DMCA notices submitted against Plaintiff-authored content and has effected de-indexing, delisting, or removal actions resulting in the measurable and ongoing search-engine suppression pleaded in Part IV.J.5. Plaintiff alleges on information

and belief that (a) Google's internal DMCA-processing workflow treats Rulta OU-style notices as automatically actionable without any meaningful verification of the submitter, the copyright claim, the relationship between the claimed "original" URL and the targeted destinations, or the fair-use status of the content; and (b) Google's actions in reliance on those notices have been the proximate cause of the search-engine suppression of Plaintiff's content documented in Exhibit 69.

568.    **Damages under 17 U.S.C. § 512(f).** Plaintiff has incurred and will continue to incur damages as a direct and proximate result of the § 512(f) violations, including without limitation: (i) costs of forensic and technical investigation to identify the DMCA notices submitted against her content; (ii) costs of incident-response and restoration efforts to challenge wrongful takedowns; (iii) lost audience, readership, and audience-development damages traceable to the de-indexing and delisting; (iv) lost professional, investor, employer, and journalistic opportunities traceable to the search-engine suppression; and (v) reasonable attorneys' fees and costs, recoverable under 17 U.S.C. § 512(f).

569.    Plaintiff will particularize through discovery the specific DMCA submissions targeting her content, the identity of the true submitter, the channel relationship (if any) between the submitter and Defendants Schmidt, Hillspire,

COMPLAINT

and Glaser Weil, and Google's specific processing and response actions. Plaintiff pleads this Count now, rather than reserving it, because (a) relation-back and statute-of-limitations interests support filing on the existing record; (b) the Lumen Database #83213332 notice dated April 16, 2026 (one day before the AAA prove-up hearing) is pleaded as exemplary evidence of the mechanism pleaded throughout Part IV.J.5; and (c) the direct evidentiary showing of search-engine suppression of Plaintiff's Substack in Exhibit 69 supplies the Google-reliance element of the § 512(f) claim.

570.    **Relief.** Plaintiff seeks: (i) actual and statutory damages under 17 U.S.C. § 512(f); (ii) costs and reasonable attorneys' fees; (iii) an order directing Google to produce all DMCA notices submitted against Plaintiff-controlled domains, URLs, and handles from January 1, 2024 through the conclusion of this action, and to reinstate any content delisted in reliance on notices containing § 512(f) misrepresentations; (iv) temporary, preliminary, and permanent injunctive relief restraining Defendants from submitting or causing to be submitted further DMCA notices targeting Plaintiff-authored speech outside the narrow scope of bona fide, good-faith copyright enforcement conducted with individualized fair-use consideration; and (v) such other relief as the Court deems proper.

**COUNT XV – Violation of California Labor Code §§ 1102.5, 970, and 218 — Whistleblower Retaliation, Misrepresentation to Induce Service, and Unpaid Compensation**

*Against Eric Schmidt, Hillspire, LLC, Knox Networks, Inc. dba Knova Finance, Craig H. Marcus (individually), Glaser Weil Fink Howard Jordan & Shapiro LLP, and Does 1–50*

571.    Plaintiff realleges the preceding paragraphs as though fully set forth herein. This Count is pleaded under supplemental jurisdiction, 28 U.S.C. § 1367(a), as arising from the same nucleus of operative fact as the federal claims in Counts I, II, III, V, and XIV. Plaintiff further pleads that this Count, to the extent it rests on conduct accompanied by or in furtherance of sexual-harassment and sexual-assault retaliation, is a "case" within the meaning of EFAA, 9 U.S.C. § 402(a), and is therefore not subject to any pre-dispute arbitration provision.

**A.    Violation Of Cal. Labor Code § 1102.5 — Whistleblower Retaliation**

572.    **Statutory framework.** California Labor Code § 1102.5(b) prohibits an employer, or any person acting on behalf of the employer, from retaliating against an employee for disclosing information to any of a range of recipients — including the employee's supervisor, any other employee who has authority to investigate, a government or law-enforcement agency, a person with authority

over the employee, or the employee's attorney — where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or noncompliance with a local, state, or federal rule or regulation. *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022), establishes the contributing-factor causation framework and § 1102.6 burden-shifting. Section 1102.5 applies by its terms to "any person acting on behalf of" the employer — including, on Plaintiff's pleading, Defendants Schmidt, Hillspire, Marcus, and Glaser Weil as to the Knox, SPM, and Hillspire-controlled employment relationships.

573. **Protected disclosures by Plaintiff.** Plaintiff made repeated protected disclosures to Defendants and their agents and counsel between approximately 2022 and 2026 regarding (a) sexual assault and sexual harassment by Schmidt; (b) emotional and economic coercion by Schmidt directed at Plaintiff's employment and corporate roles; (c) Hillspire's and Schmidt's use of the corporate structures (SPM, StarX, Audem, Knox) as instruments of personal coercion rather than as independent business entities; (d) the tax-loss-harvesting and asset-stripping architecture pleaded in Parts IV.C and IV.F.13; (e) the CGNET forwarding, legal-hold violations, and hidden tax/governance folders pleaded in Part IV.E; and (f) the Wells Fargo account-closure and account-control-transfer misrepresentations pleaded in Part IV.H and Count VII. The

most pivotal disclosures include Plaintiff's April 2024 mediation disclosures of sexual assault, sexual harassment, and emotional abuse; Plaintiff's direct communications to Schmidt and to Hillspire counsel throughout May–November 2024; the allegations in Plaintiff's September 8, 2025 LASC complaint (Ex. 20) and December 2025 First Amended Complaint (Ex. 21); Plaintiff's January 29, 2026 op-ed (Ex. 63); and Plaintiff's February 10–11, 2026 Whistleblower Letter to Members of Congress (Ex. 64).

574.    **Adverse actions by Defendants.** Defendants took the following adverse actions against Plaintiff in temporal proximity to, and in retaliation for, her protected disclosures: (a) April 26, 2024 removal of Plaintiff from Knox Networks, Inc.; (b) April–December 2024 blockade of budgetary funding to SPM, StarX, Audem, and Knox, enforced through Maria Seferian's control of legal-contract infrastructure and through Mandy Quach's control of Wells Fargo banking, KPMG tax, and Trinet payroll operations; (c) Marcus's July 2024 statements to SPM employees that Plaintiff had "abandoned" SPM; (d) payment of SPM employees to resign and direct hiring of more than ten former SPM employees into Hillspire or Hillspire-funded successor roles; (e) lock-out of Plaintiff from New York shared residences with retention of her personal belongings (May–July 2024 timeframe on information and belief); (f) the Schmidt-Hillspire lawsuit against Plaintiff's parents Terry and Shamim Ritter in

AAA Case No. 01-24-0005-8902 (Ex. 7); (g) non-payment of Plaintiff's Knox compensation from April 26, 2024 to the present; (h) the coerced December 4, 2024 Settlement Agreement and the $14 million Schedule A(3) non-payment; (i) the November 2024 Hillspire legal-team outreach to SPI portfolio companies instructing them to delete Plaintiff's contact information; and (j) the AAA arbitration and the consequent $10,744,999 Interim Award.

575.    **Causation.** Each adverse action listed in LAB-004 was taken in substantial part in retaliation for Plaintiff's protected disclosures. The causal connection is established by temporal proximity (each wave of adverse action followed Plaintiff's disclosures by days or weeks), by the pattern of escalation following each new disclosure, and by Defendants' own written communications. Under *Lawson* and § 1102.6, Plaintiff's protected activity need only be a contributing factor to the adverse action; the burden then shifts to Defendants to prove by clear and convincing evidence that they would have taken the same action in the absence of the protected activity. Defendants cannot meet that burden on the record pleaded.

576.    **Damages and remedies under § 1102.5 and § 1102.6.** Plaintiff seeks all remedies available under Cal. Labor Code §§ 1102.5(j) and 1102.6, including reinstatement of her Knox position and related roles (or, in the alternative, front-pay damages); lost wages and benefits; compensatory damages for emotional

distress; punitive damages; civil penalty of $10,000 per violation payable to Plaintiff under § 1102.5(f); reasonable attorney's fees and costs under § 1102.5(j); and injunctive relief.

**B.    Violation Of Cal. Labor Code § 970 — Misrepresentation To Induce Performance Of Services**

577.    **Statutory framework.** California Labor Code § 970 prohibits any person, directly or indirectly, by means of false representations concerning the kind, character, or existence of work, compensation, or other material terms, from influencing, persuading, or engaging any other person to change from one place to another for the purpose of performing services. Section 970 operates as an enforcement mechanism against labor-market misrepresentation and is enforced through the private right of action in Cal. Labor Code § 972, which authorizes double damages.

578.    **Anthropic — December 2020 to May 2021.** Schmidt, acting on his own behalf and on behalf of Hillspire, induced Plaintiff to perform extensive advisory, deal-negotiation, entity-structuring, and investment due-diligence services in connection with the 2020–2021 formation and Series A financing of what became Anthropic, PBC. Schmidt's inducement included specific verbal representations that Plaintiff would receive shares in the nascent company. After

the deal closed in May 2021, Schmidt summarily cut Plaintiff out of the promised equity. The misrepresentations were material; Plaintiff relied on them; she changed her professional focus and dedicated extensive time and intellectual effort to the work; and she was damaged by the non-payment. See Part IV.F.9 above.

579.    **Hospitality real-estate negotiations — February to June 2021.** Schmidt induced Plaintiff to perform hospitality real-estate deal-negotiation services for him and his real-estate team over a period of approximately five months in 2021, on representations of compensation that were then not honored.

580.    **Future House — 2021–2022.** Schmidt induced Plaintiff to incubate the Future House initiative at SPM during 2021–2022 on representations that the initiative would be supported through SPM and that Plaintiff and SPM would share in the upside. At the last moment before public launch, Schmidt funded Future House through his personal family-office donor-advised fund, took public credit for the initiative himself, and left SPM with the sunk time and economic losses. Future House CEO Sam Rodriques' September 2023 apology email to Plaintiff is corroborative of the misrepresentation.

581.    **Tolling.** Each of the misrepresentations pleaded in LAB-008 through LAB-010 occurred in 2020–2022. Plaintiff pleads the continuing-violation doctrine (*Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798 (2001)), the discovery

rule (*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005)), and fraudulent-concealment tolling: the systemic character of Schmidt's misrepresentation-to-induce-service pattern was not known to Plaintiff until the post-April-2024 retaliation cascade revealed the pattern; the Anthropic and Future House episodes were individually dismissed by Plaintiff at the time as idiosyncratic rather than systemic; and Defendants actively concealed the pattern through continued professional engagement with Plaintiff and through the 2022 coerced SPM equity transfer that gave Schmidt formal control over much of the work product at issue. Plaintiff's economic dependence on Schmidt and Hillspire during the relevant period constitutes independent equitable tolling. See *Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003).

582. **Damages under § 972.** Plaintiff seeks double damages under Cal. Labor Code § 972 for each § 970 violation, plus costs and reasonable attorney's fees, in amounts to be proven at trial.

## C. Violation Of Cal. Labor Code §§ 201, 203, 204, And 218 — Unpaid Compensation

583. **Knox unpaid compensation.** Plaintiff has received no compensation for her Knox Networks work since April 26, 2024. Knox Networks, Inc., in its capacity as employer, and Schmidt and Hillspire, in their capacity as principals

and "any person acting on behalf of" the employer within the meaning of Labor Code § 558(a) and *Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018), are jointly and severally liable for unpaid wages under §§ 201, 203, 204, and 218; for waiting-time penalties under § 203 (daily penalty up to thirty days); and for any applicable overtime, meal-and-rest-period premium, or wage-statement penalties to the extent discovery supports such remedies. Plaintiff's Knox equity position under Certificate CS-02 (24,000,000 common shares) is further subject to the rescission and constructive-trust remedies in Count VI and the Prayer for Relief.

584.     **SPM and SPI unpaid compensation.** Plaintiff's SPM and SPI founder-level and Managing-Director services from 2021 through December 4, 2024 were, on Plaintiff's pleading, not fully compensated. The $14 million Schedule A(3) consideration for the transfer of Plaintiff's equity interests, to the extent it was also intended to resolve unpaid-compensation obligations, was never paid. Schmidt and Hillspire, in their capacity as principals and alter-egos of SPM and SPI, and Orion Wing Management, LLC and Orion Wing Investments, LLC, as successor entities, are liable for the unpaid compensation under Labor Code §§ 201, 203, 204, and 218, and under common-law quantum-meruit and unjust-enrichment principles.

585.     **SPI carry entitlement.** Plaintiff is further entitled to the 20% carry on the SPI fund, which, on Plaintiff's pleading, achieved greater than 44% cumulative

returns on more than $65 million in assets under management. Schmidt and Hillspire agreed orally and in correspondence that Plaintiff would receive the 20% carry and that Maria Seferian would document the entitlement; Seferian never did so. Plaintiff seeks recovery of the SPI carry entitlement on the theories of (a) breach of oral contract, Cal. Code Civ. Proc. § 339 (2-year statute, subject to continuing-violation and fraudulent-concealment tolling); (b) promissory estoppel; (c) quantum meruit; and (d) unjust enrichment with constructive trust. Calculation of the exact dollar amount of the carry entitlement is reserved for discovery and expert proof.

586.   **Non-waivability under EFAA.** To the extent any Defendant contends that Plaintiff's Labor Code claims are subject to any pre-dispute arbitration provision, Plaintiff pleads that EFAA, 9 U.S.C. § 402, bars enforcement of that provision as to this "case," because the retaliation, misrepresentation-to-induce-service, and unpaid-compensation claims are part of the same "case" as, and are substantially entangled with, Plaintiff's sexual-assault and sexual-harassment disclosures. See Count V and the authorities cited therein (*Liu v. Miniso Depot CA, Inc.*; *Kader*; *Turner v. Tesla*; *Mera*).

587.   **Prayer.** Plaintiff seeks (a) reinstatement of her Knox Networks role or front-pay damages in lieu thereof; (b) unpaid wages and waiting-time penalties under Labor Code §§ 201–204 and 218; (c) double damages for § 970 violations

under § 972; (d) civil penalty of $10,000 per § 1102.5(f) violation payable to Plaintiff; (e) compensatory damages for emotional distress and reputational harm; (f) punitive damages under Cal. Civ. Code § 3294 for the oppression, fraud, and malice pleaded herein; (g) reasonable attorney's fees and costs under Labor Code §§ 1102.5(j) and 218.5; (h) injunctive relief prohibiting further retaliation and requiring restoration of Plaintiff's access to SPM, SPI, Knox, StarX, and Audem records and accounts; and (i) pre- and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Michelle Ritter prays for judgment against Defendants, and each of them as applicable, as follows:**

588.    On Count I (CFAA), compensatory damages under 18 U.S.C. § 1030(g); preservation and production of all JAMF, TeamViewer, CGNET, and Google Workspace administrative and audit logs; and permanent injunctive relief requiring termination of any retained or latent administrative, delegated, forwarding, or remote-access pathways to Plaintiff's accounts, devices, and workspaces;

589.    On Count II (SCA), actual, statutory, and punitive damages under 18 U.S.C. § 2707, together with attorneys' fees and costs;

590.    On Count III (Wiretap Act), statutory damages of $10,000 per intercepted communication or such greater amount as the Court deems appropriate under 18 U.S.C. § 2520(c)(2); actual damages; punitive damages for willful and intentional violations; reasonable attorneys' fees and costs under § 2520(b)(3); preliminary and permanent injunctive relief requiring the disabling of any retained interception pathways; and an order requiring disgorgement and preservation of any intercepted communications and all derivatives thereof;

591.    On Count IV (non-formation of the purported March 17, 2022 Audem agreement), (i) a declaration that Plaintiff did not assent to and is not bound by the purported agreement; (ii) a declaration that any arbitration, delegation, intellectual-property, fee, confidentiality, or related clause purportedly derived from the unformed Audem agreement is unenforceable against Plaintiff; and (iii) in the event any party invokes 9 U.S.C. § 4 or otherwise seeks to compel arbitration, a jury trial on the making-of-agreement issue and limited expedited discovery on formation as set forth in Count IV;

592.    On Count V (EFAA prospective declaratory non-arbitrability), a prospective declaration under 9 U.S.C. §§ 401–402 and 28 U.S.C. §§ 2201–2202 that: (i) Plaintiff has validly elected 9 U.S.C. § 402 as to the sexual-assault dispute; (ii) no predispute arbitration agreement or joint-action-waiver invoked by Defendants is valid or enforceable with respect to any case or future claim

which relates to that sexual-assault dispute; (iii) the entire present case, being a "case which relates to" the sexual-assault dispute within the meaning of § 401(4), is non-arbitrable under § 402(a); and (iv) the determinations in (i), (ii), and (iii) are committed to this Court rather than any arbitrator under 9 U.S.C. § 402(b), irrespective of any delegation provision;

593.    On Count VI (rescission and cancellation), (i) rescission, cancellation, and declaratory invalidity of the December 4, 2024 Settlement Agreement and the December 17, 2024 Amendment, in whole or in part, as equity and law require; (ii) a declaration that any compelled recantation, scripted-statement, press-statement, cooperation, testimony-waiver, anti-disclosure, confidentiality, non-disparagement, release, or enforcement provision in the challenged instruments is void, voidable, unenforceable, or subject to rescission; and (iii) restitution, restoration of the status quo to the extent possible, return and restoration of access to records, and equitable adjustment of any tender obligations;

594.    On Count VII (Wells Fargo fraud), against Wells Fargo Bank, N.A., compensatory damages in an amount to be proven at trial but not less than $946,706.69 (the SPM-savings account -6449 balance); an accounting of activity on the three identified accounts (-4631, -6449, -0882) from October 12, 2024 through judgment; production of native account-status, signer-change, authorized-person, power-of-attorney, and control-change records for each

identified account; preliminary and permanent injunctive relief prohibiting further Schmidt- or Hillspire-aligned transactional authority over the identified accounts; and punitive damages upon a showing of malice, oppression, or fraud under California Civil Code section 3294;

595.    On Count VIII (aiding and abetting), against Glaser Weil Fink Howard Jordan & Shapiro LLP and Craig H. Marcus, compensatory damages in an amount to be proven at trial for the direct injuries alleged in Part IV traceable to the operational, non-advocacy conduct alleged in Part IV.I; disgorgement and equitable restitution of fees, costs, and other amounts paid to Glaser Weil or Marcus directly or indirectly from Audem, SPM, Orion Wing, StarX, or other entities in which Plaintiff holds or held a membership, equity, or formal-owner interest — including without limitation the Orion Wing wind-down accounts and the Wind-Down Ledger funds described in Part IV.C.6 — to the extent such fees and amounts financed the operational, non-advocacy conduct alleged in Part IV.I; punitive damages under California Civil Code section 3294 on a showing of malice, oppression, or fraud; an equitable order requiring preservation and production of records in the custody, possession, or control of Glaser Weil or Marcus relating to the operational acts alleged in Part IV.I; and all other equitable relief necessary to prevent continuation of the operational conduct alleged;

596.    On Count IX (declaratory invalidity of gag and recantation provisions), a declaratory judgment under 28 U.S.C. §§ 2201–2202 that Sections 3(a)(i), 3(a)(iv), Schedule D, and Section 1 of the Amendment of the December 4, 2024 Settlement Agreement and December 17, 2024 Amendment are void and unenforceable as against public policy on each of the independent grounds set out in Count IX (Cal. Civ. Code §§ 1668, 1670.11; Cal. Code Civ. Proc. §§ 1001, 1002; and 9 U.S.C. §§ 401–402); and permanent injunctive relief restraining Defendants from asserting those provisions in any forum against Plaintiff or from using them as the predicate for damages;

597.    On Count X (Bane Act, against Craig H. Marcus individually), compensatory damages, treble damages under Cal. Civ. Code § 52.1(b), the civil penalty under Cal. Civ. Code § 52(b)(2) where applicable, punitive damages, and reasonable attorneys' fees and costs under § 52.1(i);

598.    On Count XI (abuse of process), compensatory damages, punitive damages under Cal. Civ. Code § 3294 on a showing of malice, oppression, or fraud, and reasonable attorneys' fees and costs where authorized;

599.    On Count XII (defamation; false light; trade libel / commercial disparagement; intentional interference with prospective economic advantage), against Schmidt, Hillspire, Glaser Weil, Marcus, Knox Networks, Inc., Natalya Thakur, and KPMG: (i) general damages in an amount not less than $33,000,000

COMPLAINT

to be proven at trial; (ii) special damages, including but not limited to lost business opportunities and lost founder-level equity value connected to StarX, Audem, Steel Perlot Management, Orion Wing, and Plaintiff's 24,000,000-share Knox Networks, Inc. / Knova Finance Common Stock position under Certificate CS-02; (iii) punitive damages under California Civil Code section 3294 on a showing of malice, oppression, or fraud, and particularly in view of the $8,080,138 Eric Rose PR-campaign budget pleaded as calculated serial disparagement; (iv) permanent and preliminary injunctive relief restraining further publication, dissemination, or syndication of the false and defamatory statements pleaded herein, including through the Eric Rose / Fried Frank / Hiltzik PR-campaign apparatus; and (v) corrective publication or retraction at Defendants' expense to the extent equitable;

600.    On Count XIII (Interim Award vacatur), against Schmidt, Hillspire, Glaser Weil, and Marcus: (i) a declaratory judgment under 28 U.S.C. §§ 2201–2202 and vacatur under 9 U.S.C. § 10 that the April 20, 2026 AAA Interim Award is invalid, unenforceable, and void on the independent grounds pleaded in Count XIII, including without limitation the § 10(a)(2) evident-partiality ground established by the $28,000 pay-to-play invoice disclosed in Exhibit 62, the § 10(a)(3) refusal-to-hear-evidence ground established by the March 13, 2026 R-60 total-preclusion sanction, and the § 10(a)(4) exceeding-powers ground

established by the arbitrator's adjudication of First-Amendment-protected speech against the mandate of 9 U.S.C. § 402; (ii) a declaratory judgment that the Award's imposition of $8,080,138 in earmarked public-relations-campaign damages on First-Amendment-protected speech is unconstitutional on its face under the First, Fifth, and Fourteenth Amendments; (iii) temporary, preliminary, and permanent injunctive relief restraining Schmidt, Hillspire, Glaser Weil, Marcus, Google LLC, and their agents (including without limitation Eric Rose, Fried Frank, Matt Hiltzik, Jillian Harris, Lisa Meredith, Kelt 6 Strategies, Rulta OU, and any public-relations, search-engine-optimization, DMCA-submission, or content-moderation vendor) from initiating, funding, executing, or continuing any public-relations, search-engine-optimization, media-placement, reputation-management, or DMCA-submission campaign or activity whose purpose or effect is to suppress, counter, displace, de-index, delist, or punish Plaintiff's First-Amendment-protected and whistleblower-protected speech concerning Schmidt, Google, Hillspire, Glaser Weil, or the arbitration proceeding, including without limitation the "Predator's Playground" op-ed, the February 10, 2026 Whistleblower Letter to Congress, and Plaintiff's 2024 private sexual-assault report; and (iv) injunctive relief restraining enforcement or judicial confirmation of the Interim Award under 9 U.S.C. § 9 or California Code of Civil Procedure § 1285 pending resolution of this Complaint;

COMPLAINT

601.    On Count XIV (DMCA Misrepresentation under 17 U.S.C. § 512(f)), against Google LLC and Does 1–50: (i) actual and statutory damages in an amount to be proven at trial; (ii) reasonable attorneys' fees and costs under 17 U.S.C. § 512(f); (iii) an order directing Google LLC to produce all DMCA notices submitted against any domain, URL, or handle controlled by, authored by, or hosting content authored by Plaintiff, from January 1, 2024 through the conclusion of this action, together with all associated processing records, Lumen Database submissions, and identification information for the submitter; (iv) an order directing Google LLC to reinstate, or to cause to be reinstated, in its search index and in any other user-facing ranking or surface, any Plaintiff-authored content delisted or de-indexed in reliance on § 512(f)-infringing notices; and (v) temporary, preliminary, and permanent injunctive relief restraining Defendants and any person or entity acting in concert with them from submitting or causing to be submitted further DMCA notices targeting Plaintiff-authored speech outside the narrow scope of bona fide good-faith copyright enforcement conducted with individualized fair-use consideration;

602.    On all Counts collectively, a broad preservation and production order directed to Alphabet Inc., Google LLC, X Corp., Meta Platforms, Inc. (as operator of Instagram and Threads), LinkedIn Corporation, Substack Inc., Rulta OU, any person identified as "camille yuki" or any other DMCA-submitter

387
COMPLAINT

identity used against Plaintiff, and Does 1–50, requiring preservation of all records, communications, logs, content-moderation decisions, visibility-restriction determinations, DMCA submissions, DMCA determinations, ex parte communications with Schmidt-aligned actors, algorithmic ranking and de-ranking records, search-indexing records, and all internal policy documents relating to Plaintiff's accounts and content on their respective platforms, from January 1, 2024 through the conclusion of this action; and production of the same, subject to the scope limitations of Federal Rule of Civil Procedure 26(b)(1) and the Court's case-management orders;

603. Prejudgment and post-judgment interest to the extent permitted by law;

604. Costs of suit and reasonable attorneys' fees where authorized by statute, contract, or equity, including under 18 U.S.C. §§ 1030(g), 1964(c), 2520(b)(3), and 2707(b)(3); and

605. Such other and further relief as the Court deems just and proper.

606. **Consolidated Injunctive and Declaratory Relief.** In addition to the Count-specific relief above, Plaintiff requests that this Court enter the following injunctive and declaratory relief:

    a. An order vacating the April 20, 2026 Interim Arbitration Award, and any subsequent Final Award, in AAA Case No. 01-25-0000-2191, under 9

COMPLAINT

U.S.C. § 10(a)(2), (3), and (4), and under the First, Fifth, and Fourteenth Amendments;

b. An order preliminarily and permanently enjoining Defendants Eric Schmidt, Hillspire, LLC, and Does 1–50, and their agents including Eric Rose and Kelt 6 Strategies, from executing, procuring, funding, or directing any paid-media or public-relations campaign premised on the Interim Award's findings or on any adjudication of Plaintiff's 2024 sexual-assault report by a tribunal from which Plaintiff was defaulted under AAA Rule R-60;

c. An order preliminarily and permanently enjoining Defendants and Does 1–50, and any third-party DMCA vendor acting on their behalf (including Rulta OU), from submitting DMCA takedown or deindex requests directed at Plaintiff-authored content absent a prior judicial determination of infringement;

d. An order directing Defendant Google LLC to restore the search indexing of rittermichelle.substack.com and the logged-out visibility of Plaintiff's X timeline within 10 days of this Court's order, and to file a declaration under penalty of perjury identifying every DMCA notice, deindex request, and takedown request received concerning any Plaintiff-authored content since January 1, 2024;

389

COMPLAINT

e. An order preliminarily and permanently enjoining Defendants, Hillspire, and Does 1–50 from operating any JAMF, TeamViewer, mobile-device-management, enterprise-Apple-ID-provisioning, or remote-access pathway directed at any Plaintiff-owned computing device, and directing Hillspire to disable hillspire.jamfcloud.com profiles tied to Plaintiff's devices;

f. Preservation orders directed, under Fed. R. Civ. P. 45 and the Court's inherent authority, at Apple Inc., Google LLC, Wells Fargo Bank, N.A., JAMF Software LLC, TeamViewer US Inc., DocuSign, Inc., and the American Arbitration Association, requiring preservation for the duration of this action of all records relating to Plaintiff's accounts, devices, communications, DMCA processing, and the AAA case files for Matters 01-25-0000-2191 and 01-24-0005-8902;

g. A declaratory judgment that Sections 3(a)(i) and 3(a)(iv) of the December 4, 2024 Settlement Agreement, Schedule D of that Agreement, and Section 1 of the December 17, 2024 Amendment are void and unenforceable under Cal. Civ. Code §§ 1668 and 1670.11, Cal. Code Civ. Proc. §§ 1001 and 1002, the Silenced No More Act (Cal. Gov't Code § 12964.5), EFAA (9 U.S.C. § 402), and the First Amendment;

COMPLAINT

h. A declaratory judgment that the purported March 17, 2022 Audem Services Agreement is non-formed and that its arbitration clause is without force;

i. An order directing restitution of, and imposing a constructive trust over, the $946,706.69 Wells Fargo SPM-savings -6449 account and any successor accounts, and ordering a full accounting;

j. Such further injunctive, declaratory, equitable, and provisional relief as this Court deems just, including relief preserving the status quo pending final judgment.

607.    **Consolidated Statutory-Damages Schedule.** In addition to the Count-specific monetary relief above, Plaintiff prays for statutory damages per the following schedule, with amounts to be proven at trial:

a. Count I (CFAA): compensatory damages, costs, and attorney's fees under 18 U.S.C. § 1030(g); loss in excess of $25,000 in the one-year period preceding filing;

b. Count II (SCA): the greater of actual damages or $1,000 per violation plus profits, costs, and attorney's fees under 18 U.S.C. § 2707(b)–(c); separately against Schmidt, Hillspire, and Google;

c. Count III (Wiretap Act): the greater of (i) actual damages plus Defendants' profits or (ii) statutory damages of $100 per day of violation or $10,000

COMPLAINT

per violation, whichever is greater, plus punitive damages, reasonable attorney's fees, and costs under 18 U.S.C. § 2520(b)–(c); separately for each of the four interception modalities pleaded in Count III;

d.  Count X (Bane Act): damages, plus treble damages as applicable under Cal. Civ. Code § 52(a), plus statutory minimum of $4,000 per violation, plus attorney's fees under Cal. Civ. Code § 52.1(i), against Marcus individually and the enterprise defendants;

e.  Count XIV (DMCA § 512(f)): actual damages and attorney's fees; costs;

f.  Counts VI, VII, VIII, XI, XII: compensatory and punitive damages under Cal. Civ. Code § 3294 for the fraud, misrepresentation, and malicious conduct pleaded therein;

g.  All Counts: pre- and post-judgment interest at the statutory rates; costs of suit; such additional relief as is proper.

608.    **Restitution and Constructive-Trust Relief for the Zero-Consideration December 4, 2024 Transfer.** In addition to the consolidated injunctive and statutory-damages relief set forth above, Plaintiff specifically requests:

a.  Restitution of Plaintiff's 51% common-member interest in Steel Perlot Management, LLC (now Orion Wing Management, LLC), conveyed under the December 4, 2024 Settlement Agreement for a stated consideration of $14 million that was never paid;

b. Restitution of Plaintiff's interests in Steel Perlot Investments, LLC (now Orion Wing Investments, LLC), including disgorgement of Plaintiff's 20% carry entitlement on the SPI fund's greater-than-44% cumulative returns on more than $65 million in assets under management, calculated from fund inception through judgment;

c. Imposition of a constructive trust, under Cal. Civ. Code § 2224, over all SPM, SP, and SPI assets and successor-entity assets held by Orion Wing Management, LLC, Orion Wing, LLC, and Orion Wing Investments, LLC, including all residual cash, cryptocurrency-token positions, intellectual property, and portfolio-investment positions;

d. Restitution for unpaid professional services rendered to Schmidt, Hillspire, and affiliated Schmidt-family vehicles in connection with Anthropic, PBC (December 2020 – May 2021); the 2021 hospitality real-estate negotiations (February – June 2021); and the 2021–2022 Future House incubation, in amounts to be proven at trial, with double damages under Cal. Labor Code § 972 for each § 970 violation;

e. Unpaid compensation and waiting-time penalties under Cal. Labor Code §§ 201–204 and 218 for all Knox Networks, SPM, and SPI services rendered without full compensation; and reinstatement or front-pay damages for the April 26, 2024 retaliatory removal from Knox;

COMPLAINT

f.  Disgorgement of any tax benefits — including federal and state income-tax losses, net operating losses, or capital-loss carryforwards — claimed by Defendants Schmidt, Hillspire, Orion Wing, LLC, Orion Wing Management, LLC, and/or Orion Wing Investments, LLC, as a result of the 2024–2026 wind-down characterization of SPM, StarX, Audem, and affiliated Ritter-created entities, to the extent such tax benefits are traceable to the zero-consideration asset capture pleaded in Part IV.F.13;

g.  Civil penalty of $10,000 per Labor Code § 1102.5 violation, payable to Plaintiff under § 1102.5(f); and reasonable attorney's fees and costs under §§ 1102.5(j) and 218.5 and under 18 U.S.C. § 1030(g);

h.  Pre-judgment interest at the statutory rate on all monetary amounts recovered, from the date each amount became due;

i.  Punitive damages under Cal. Civ. Code § 3294 for the fraud, oppression, and malice pleaded herein;

j.  Forensic, investigation, preservation, and incident-response costs personally incurred by Plaintiff — including but not limited to forensic analyst fees (including those of digital forensics investigator Michael Pixley), preservation-letter correspondence with Apple, Google, Wells Fargo, and third-party vendors, device-imaging and chain-of-custody documentation, credential-recovery, account-integrity, and replacement-

394

COMPLAINT

system costs — in responding to the Computer Fraud and Abuse Act, Stored Communications Act, and Federal Wiretap Act conduct pleaded in Counts I–III, in amounts to be proven at trial;

k. Tax-exposure and induced-signature damages — including direct personal liability attributed to Plaintiff through 1099 issuances by Defendant-controlled entities, EDD billing, induced or attempted tax-return signatures on disputed returns, and related liabilities that flowed in substance from benefits received by Defendants, together with associated remediation costs (CPA fees, amended-return preparation, Internal Revenue Service and California Franchise Tax Board correspondence), in amounts to be proven at trial; and

l. Such further equitable, declaratory, and monetary relief as this Court deems just and proper to restore Plaintiff to the position she would have occupied had Defendants performed the December 4, 2024 Agreement as written, or, alternatively, had Defendants not induced Plaintiff to enter into it.

## **RESERVATION OF RIGHTS**

609.    The fifteen-count structure of this Complaint reflects a considered pleading choice. Plaintiff has not pleaded a civil RICO count in this first filing.

COMPLAINT

She has instead pleaded the particularized *Reves* operation-or-management, *Boyle* association-in-fact, wire-fraud, and *H.J. Inc.* continuity facts throughout Parts IV.0, IV.C, IV.D, IV.E, IV.F, IV.G, IV.H, IV.I, and IV.J, and expressly reserves the right under this Part VII to amend to add a civil RICO count under 18 U.S.C. §§ 1961–1968 if and when discovery supplies the additional particularized predicate acts and defendants required by Federal Rule of Civil Procedure 9(b).

610.    Count XIII (vacatur of the April 20, 2026 AAA Interim Arbitration Award) is pleaded in this Complaint on federal-question grounds — specifically, the First, Fifth, and Fourteenth Amendments; the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. § 402(b); and the look-through jurisdictional anchors of Counts I, II, III, V, and XIV under *Vaden v. Discover Bank*, 556 U.S. 49 (2009) — together with the substantive vacatur grounds set forth in 9 U.S.C. § 10. Consistent with *Badgerow v. Walters*, 596 U.S. 1 (2022), Plaintiff does not rely on 9 U.S.C. §§ 9, 10, or 11 as independent jurisdictional predicates. Plaintiff separately reserves her right, within the three-month window provided by 9 U.S.C. § 12 and consistent with *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), and *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987), to file a standalone § 10

petition to vacate any Final Award in the proper forum on an independent jurisdictional basis.

611.    Plaintiff further expressly reserves the right to seek leave to amend — or, where appropriate, to commence one or more separate proceedings — to add additional claims and additional parties if and when targeted discovery or the further development of the record supplies particularized, non-conclusory facts sufficient to satisfy Rule 9(b), Article III direct-injury and proximate-cause requirements under *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), and applicable privilege, Noerr-Pennington, and First Amendment limitations.

612.    Without limiting the foregoing, Plaintiff expressly reserves the following categories of claims and parties:

n. **Claims against additional Glaser Weil personnel.** Plaintiff reserves the right to amend to assert individual claims against Jillian Harris, whose conduct is alleged in Parts IV.A, IV.E, IV.F, IV.I, and IV.H, and against any additional Glaser Weil partner, associate, or employee who participated in the operational, non-advocacy conduct alleged in Parts IV.I and IV.H, on the theories pleaded in Counts VIII, X, and XIV.

o. **Standalone FAA § 10 vacatur petition — Badgerow, Millmen, Hall Street posture.** Notwithstanding Count XIII's federal-question declaratory and constitutional claims directed at the April 20, 2026 Interim

Award, Plaintiff further reserves the right to file a standalone petition to vacate any Final Award under 9 U.S.C. § 10 in the proper forum on an independent jurisdictional basis within the three-month window of 9 U.S.C. § 12 from the operative final award. Plaintiff acknowledges, consistent with Badgerow v. Walters, 596 U.S. 1 (2022), that §§ 9, 10, and 11 of the FAA do not themselves confer federal subject-matter jurisdiction, and, consistent with Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008), that the § 10 grounds are the exclusive statutory grounds for vacatur and Plaintiff does not rely on "manifest disregard" as an independent common-law ground. Plaintiff reserves, and does not waive, all grounds under 9 U.S.C. §§ 10(a)(2), (a)(3), and (a)(4) set out in Count XIII.

p. **Additional civil RICO defendants and additional predicate acts.** Plaintiff reserves the right to amend to add a civil RICO count under 18 U.S.C. §§ 1961–1968, with additional RICO defendants and additional predicate acts as targeted discovery — including Hillspire internal management channels, Glaser Weil billing and staffing records, Wells Fargo authorization trails, DocuSign envelope histories, KPMG work papers, AAA administrative records, inter-defendant communications, flow-of-funds records, and Schedule D / Koebel coercion documents —

supplies the particularized §§ 1341, 1343, 1503, 1512, and 1519 predicates and the distinct, non-derivative RICO injuries necessary to satisfy H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006), and Rule 9(b).

q. **Knox / Knova Finance employment, equity, inspection, fiduciary, and harassment claims.** Plaintiff reserves her employment, wage-and-hour (including Cal. Labor Code §§ 204, 226, 2802, and 2804), denied-equity and conversion, Delaware statutory-inspection (DGCL § 220), breach-of-fiduciary-duty (direct and, as appropriate, derivative), indemnification (Knox June 28, 2021 Indemnification Agreement and Del. Gen. Corp. L. § 145), and workplace-harassment claims (Title VII, FEHA, and EFAA-scope) arising from her Knox Networks, Inc. / Knova Finance work, her service as a Knox director and officer from March 15, 2021 through April 24, 2024, the April 24, 2024 retaliatory removal, the April 26, 2024 vesting termination of Certificate CS-02, the April 24, 2025 Repurchase Notice directed at her 24,000,000-share Common Stock position, and the April–May 2025 coerced 8- to 9-page "Shareholder Agreement" demand described in Part IV.D. Knox is named in this Complaint on the defamation (Count XII) theory; enterprise and pattern facts are preserved for any future civil RICO count per this Part VIII; the additional

employment, Delaware-shareholder, and fiduciary-duty theories are preserved for amendment upon production of Knox's books and records under DGCL § 220 and upon further developments in the April 2025 Repurchase Notice and coerced-agreement records.

r. **Tax-related federal and state claims.** Plaintiff reserves any independent federal or state tax-related claim, including any claim predicated on the January 2025 Audem Form 1099, the SPM 2023 and 2024 returns, or any other tax-attribution conduct described in Part IV.C, including without limitation tax-evasion-related theories under 26 U.S.C. § 7201 to the extent permitted by law.

s. **Additional non-defendant actors.** Plaintiff reserves claims against additional non-defendant actors identified in this Complaint — including without limitation Debra Smith, CGNET, Ricardo Uribe, Sencil, Jillian Harris, Lisa Meredith, additional KPMG personnel, Eric Rose, Fried Frank, Kelt 6, Trinet, Matt Hiltzik, Jason Quach, and Gregg Saferian — when particularized facts sufficient to support such claims are confirmed. The preservation notice pleaded in Part IV.I.7 extends to each such non-defendant actor.

t. **Enterprise-level and lost-opportunity damages.** Plaintiff reserves the right to amend to plead additional damage theories, including enterprise-

level damages and lost-opportunity damages connected to StarX, Audem, SPM, Orion Wing, Hillspire, Knox, or any other entity, if and when the record and pleading-stage predicates for such theories mature.

613. Nothing in this Complaint is, or shall be construed as, a waiver of any such claim, an election, the subject of any estoppel, release, or implied waiver with respect to any reserved claim, or a concession that any reserved theory lacks legal or factual merit.

614. **Planned First Amended Complaint.** Plaintiff anticipates filing a First Amended Complaint, as of right under Rule 15(a)(1) or by leave of court under Rule 15(a)(2), to (i) add a civil RICO count under 18 U.S.C. §§ 1962(c) and (d) once targeted discovery yields the specific wire-fraud predicates with Rule 9(b) particularity; (ii) add Defendants Jillian Harris (Glaser Weil partner), Eric Rose (individually), Hillspire principals, and any additional individual or entity Doe Defendants identified through discovery (Hiltzik having been named directly in this Complaint); (iii) plead additional state-law claims preserved in the foregoing paragraphs; and (iv) conform the pleadings to proof.

615. **MDL and coordination.** Plaintiff reserves the right to move for consolidation, transfer, or coordination with any related action under 28 U.S.C. § 1404 or 28 U.S.C. § 1407, including with any parallel action filed by another

person alleging a Glaser-Weil–directed AAA silencing campaign (including the matter documented in Ex. 65, *Sarah Koebel v. Derek Rundell*).

616.    **Concurrent filings anticipated.** Plaintiff anticipates filing, concurrently with or immediately after this Complaint: (a) a Notice of Related Cases identifying Los Angeles Superior Court Case No. 25STCV26114 (stayed); (b) a Motion for Preliminary Injunction under *Winter v. NRDC*, 555 U.S. 7 (2008), seeking the injunctive relief specified in Part VII; (c) preservation letters served under the Court's inherent authority on Apple Inc., Google LLC, Wells Fargo Bank, N.A., JAMF Software LLC, TeamViewer US Inc., DocuSign, Inc., and the American Arbitration Association; (d) Plaintiff's Fed. R. Civ. P. 26(a)(1) initial disclosures on the schedule prescribed by the Court; and (e) a declaration from a PDF-forensics examiner separately retained to address the 2022 and 2024 DocuSign instruments and the Gold MacBook Air intrusion (complementing, not displacing, the Pixley Declaration at Ex. 2).

617.    **Criminal-referral reservation.** Plaintiff reserves the right to make, has made, or may make referrals of some or all of the conduct pleaded in this Complaint to appropriate criminal and regulatory authorities, including but not limited to the United States Department of Justice, the United States Securities and Exchange Commission, the Federal Bureau of Investigation, the California Attorney General, relevant state and federal bar disciplinary authorities, the New

York State Attorney General, and district attorneys of jurisdictions in which the conduct occurred. Nothing in any Defendant's prior or future invocation of contract, settlement, or "cooperation" provisions may be used to foreclose, sanction, or retaliate against Plaintiff's exercise of the right to communicate with government authorities regarding the conduct pleaded in this Complaint. See Cal. Civ. Code § 1670.11; Cal. Code Civ. Proc. §§ 1001–1002; Cal. Gov't Code § 12964.5.

618.    **Bankruptcy-stay contingency.** Plaintiff has been rendered unable to pay the $10,744,999 Interim Award not through any lack of means, but because Defendants deliberately withheld payment of the $14 million Schedule A(3) consideration owed to Plaintiff for her transfer of SPM, SPI, and related interests, deliberately blocked payment of Plaintiff's SPI 20% carry entitlement on the fund's greater-than-44% returns on more than $65 million in assets under management, deliberately suspended compensation owed for Plaintiff's work at Knox Networks, SPM, Anthropic-related services, hospitality-negotiation work, and Future House incubation, and deliberately weaponized the resulting non-payment as leverage against her — including through the invocation of the Baron Samson and Freedman Taitelman Cooley attorney-fee liens as Defendants' own excuse for not paying what they owed. Defendants' coordinated non-payment is the direct and proximate cause of Plaintiff's present inability to satisfy the Interim

COMPLAINT

Award, and is pleaded in this Complaint as an independent element of the rescission, restitution, unjust enrichment, constructive trust, and Labor Code claims in Counts VI, VII, XII, and XV. Should Plaintiff or any Defendant file for bankruptcy during the pendency of this action, Plaintiff reserves her rights (a) to assert that this Complaint's claims are non-dischargeable under 11 U.S.C. § 523(a) — specifically including § 523(a)(2) (fraud and false pretenses), § 523(a)(4) (fraud or defalcation in a fiduciary capacity, embezzlement, and larceny), and § 523(a)(6) (willful and malicious injury to person or property) — to the full extent such claims arise from the fraud, willful injury, fiduciary breach, and intentional coercion pleaded herein; (b) to assert that the equitable claims pleaded in this Complaint — including rescission, restitution, constructive trust, disgorgement, and injunctive relief — are not "debts" subject to discharge under 11 U.S.C. § 101(12) because they seek restoration of property and equitable remedies rather than payment of a monetary obligation, consistent with *Ohio v. Kovacs*, 469 U.S. 274 (1985), and its progeny; (c) to seek relief from any automatic stay under 11 U.S.C. § 362(d) for the purpose of continuing the federal constitutional, statutory, and equitable claims pleaded herein; and (d) to initiate adversary proceedings under Fed. R. Bankr. P. 7001 for any claims over which a bankruptcy court has concurrent or exclusive jurisdiction.

619. **Alphabet Inc. shareholder-disclosure reservation.** Plaintiff reserves the right to assert, or to support in any appropriate derivative or direct securities-fraud action, that Defendant Google LLC's parent Alphabet Inc. has disclosure obligations under Item 105 of Regulation S-K (material risks) and Item 303 (management's discussion and analysis of known trends) that may be implicated by (a) the continuing conduct of Defendant Eric Schmidt — former Chief Executive Officer and Chairman of Alphabet and Google — pleaded in Parts IV.A through IV.M; (b) the facility-operator, SCA, and DMCA-vendor conduct of Google LLC pleaded in Parts IV.E, IV.K, and IV.L and in Counts II and XIV; and (c) the "Eric Ross" alias and Epstein-related data-integrity concerns raised in Plaintiff's February 10–11, 2026 Whistleblower Letter to Members of Congress (Ex. 64). Plaintiff does not plead securities-fraud or shareholder-derivative claims in this Complaint; Plaintiff reserves such claims for separate proceedings in an appropriate forum and expressly preserves her right to communicate with the United States Securities and Exchange Commission, the Alphabet Inc. Audit Committee, and Alphabet Inc. shareholders concerning the matters pleaded herein.

## DEMAND FOR JURY TRIAL

620. Plaintiff demands a trial by jury on all claims and issues so triable, including, if raised, any disputed making-of-agreement issue under 9 U.S.C. § 4.

COMPLAINT

DATED: April 24, 2026

**Michelle Ritter**
*Plaintiff Pro Se*
269 S. Beverly Dr. #1315
Beverly Hills, CA 90212
Tel.: (510) 828-7772
Email: ritter_legal@outlook.com

COMPLAINT