Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)

# FIRST AMENDED COMPLAINT — EXHIBIT INDEX AND EXHIBITS 1–61

*Keyed to the First Amended Complaint filed September 21, 2026. "FAC ¶¶" lists the paragraphs citing each exhibit. Each exhibit follows behind a cover sheet.*

| Ex. | Description | FAC ¶¶ |
|---|---|---|
| 1 | Declaration of Bruce W. Pixley, CISSP, GCFA, EnCE (Apr. 9, 2026), with forensic findings on MacBook Pro serial TFWF7V17GQ and the steelperlot.com GoDaddy DNS record | 39, 43, 84, 85, 90, 114, 132, 141, 182 |
| 2 | Declaration of Elijah Reinhardt (Sept. 25, 2025) | 86, 96, 97, 114, 141 |
| 3 | Settlement Agreement dated December 4, 2024, with Schedules A–I (including Schedule B, Schedule C, Schedule D, Schedule H), and the November 20–24, 2024 Glaser Weil drafting redlines | 64, 65, 67, 74, 76, 87, 99, 111, 113 |
| 4 | Amendment to Agreement dated December 17, 2024, with the FL-300 dismissal stipulation | 100, 113, 163 |
| 5 | AAA Claimants' Appendix Ex. 8 (Apr. 6, 2026): "Orion Wing Management, LLC (fka Steel Perlot Management, LLC) — Privileged & Confidential — Payments: 12/4/2024 to 3/16/2026" (40 lines; $1,060,943.78) | 2, 4, 58, 73, 79, 80, 89, 98, 111, 115, 124, 128 |
| 6 | AAA Claimants' Appendix Ex. 9 (Apr. 6, 2026): Written Consent of the Manager of Orion Wing Management, LLC (Dec. 19, 2024), executed by Joon Hur for Hillspire (DocuSign 7A36843B), and the Multi-Draw Loan Agreement as produced | 4, 64, 65, 77, 111 |
| 7 | KPMG Tax Compliance Information Request, FY2023 (SPM / StarX / Knox), including Fed. Request, State Request, KPMG Request, Knox, and Tracker sheets | 35, 43, 45, 46, 48, 62, 63, 66, 86, 111, 128, 132, 178 |
| 8 | Hillspire "Summary budgeting analysis" and Updated Schedule C (Nov. 18, 2024) (rows 43, 51) | 2, 44, 57, 98, 111 |
| 9 | "SPM Scenario Expectations" V1 (July 12, 2024) (rows 21, 34–36, 87) | 43, 64, 70 |
| 10 | KPMG (Tahiliani)–Coit email thread (Apr. 9, 2024) with Quach cover page ("our investor") | 46, 111, 128 |
| 11 | KPMG–SPM Finance "SPM – additional information request" correspondence (Apr. 9, 2024 et seq.; Tahiliani, Cho, Kierzkowski, Aum, and Auriemma with Coit, Bajema, and Rabinowitch) (excerpts); July 31, 2024 records of the SPM/StarX tax-allocation discrepancies | 47, 111, 124, 128 |
| 12 | Audem Employment Development Department notices and Marcus's transmittals of them to Ritter (Apr. 21, May 15, and July 6, 2026), including Marcus's July 6, 2026 email ("Attached is an EDD Notice of Form Delinquency for Audem Management … that was sent to Hillspire") | 68, 78, 83, 101, 111, 124 |
| 13 | StarX Networks, Inc. Idaho Department of Labor Power of Attorney and cover letter transmitted through TriNet (June 2024), with DocuSign signing log; Apr. 1, 2024 DocuSign package of California EDD and Idaho employment-tax forms executed in Ritter's name | 68, 111, 124 |
| 14 | Wells Fargo: Oct. 8, 2024 closure letters (SPM -4631/-6449; Audem -0882) and Meredith transmittal email; Oct. 10, 2024 Meredith email; Oct. 11, 2024 commercial-card termination letter; Oct. 18 and Oct. 25, 2024 Meredith emails; Nov. 14, 2024 "Steel Perlot Management Connection" email | 71, 111, 112, 151 |
| 15 | Wells Fargo: Meredith "sole member" / "sole owner and control person" correspondence (July 11–17, 2024) and July 26, 2024 follow-up; Sencil email of July 29, 2024 ("joint written confirmation from you and Hillspire") | 70, 111, 112, 151 |
| 16 | Wells Fargo online-banking Account Summary and Statements & Documents screens for "ORION WING MANAGEMENT, LLC" captured May 1, 2025 (-4631 closed; -6449 $48,847.15; Time Account -4953 $207,370.86) | 70, 72, 112, 115 |
| 17 | Wells Fargo: Authorization for Information BBG18141 ("Submit manually"); SPM and Audem account-opening documents and Certifications of Beneficial Ownership (Dec. 2021) | 34, 69 |
| 18 | Audem Services Agreement DocuSign envelope EF878356 and certificate; Manekin–Frayer email (Mar. 17, 2022, 8:29 a.m.); Ritter–Manekin email (Mar. 17, 2022, 8:33 a.m.); Ritter–Blank Rome email (June 26, 2024); Uribe (CGNET) email (June 27, 2024) | 84, 111, 182 |
| 19 | AAA Demand for Arbitration, No. 01-24-0005-8902 (June 7, 2024); AAA amended initiation letter (July 9, 2024); written objections of Shamim Ritter (July 10, 2024) | 84, 97, 111, 166 |
| 20 | AAA Demand for Arbitration, No. 01-25-0000-2191 (Jan. 15, 2025) and Second Amended Demand (Sept. 16, 2025) | 101, 111, 113, 166 |
| 21 | H, LLC Severance Agreement template (§§ 2, 4) | 97, 111, 114 |
| 22 | Marcus email to SPM/Audem employees (Aug. 4, 2024); The Information article (Aug. 1, 2024) | 97, 111, 178 |

| Ex. | Description | FAC ¶¶ |
|---|---|---|
| **23** | SPM Internal Memo "SP Status / Next Steps" (July 15, 2024) and replies (July 24 and Aug. 4, 2024) | 96 |
| **24** | Sixty-day notices to terminate occupancy (Aug. 7, 2024) as transmitted by Marcus to Ritter's counsel (Aug. 20, 2024); three-day notices to quit for both Los Angeles residences (Dec. 2, 2024) | 97, 98, 113, 163 |
| **25** | Forensic analysis of SPM Operating Agreement, DocuSign envelope 805F7E18 (PDF Expert revisions, Sept. 3, 2024, 1:12:56 and 1:13:09 p.m. PDT) | 85, 111, 132 |
| **26** | Nov. 8, 2024 Baron Samson preservation demand to Nobu Malibu; Feb. 21, 2025 counsel's evidence-preservation letter to Google; Dec. 5, 2025 Miller Barondess preservation demand to Google's Chief Legal Officer | 92, 98, 132 |
| **27** | Harris–Joffe "MR/ES Settlement Obligations" exchange (Dec. 5–6, 2024) re SPI cryptocurrency-account passcodes and CGNET's custody of SPI information | 87, 100 |
| **28** | Harris email, "CGNet/google" (Dec. 10, 2024, 7:03 p.m.), with Marcus/Baron replies | 88, 97, 111, 132 |
| **29** | Knopf notice to CGNET and Google re unauthorized access, alteration, and preservation (Dec. 10, 2024) | 88, 92, 111, 132 |
| **30** | Marcus email re DVRO dismissal (Dec. 23, 2024); Baron–Marcus emails re declaration timing (Jan. 13–15, 2025); Harris email re Workspace return (Jan. 16, 2025); Harris email (Dec. 13, 2024) | 90, 100, 101, 111, 113 |
| **31** | Marcus email re modification of Agreement ("Fwd: WSJ") (Jan. 15, 2025) | 101 |
| **32** | Ritter/counsel notices to Glaser Weil re Workspace theft and Google breaches (Dec. 31, 2024; Jan. 19, 2025) | 90, 92 |
| **33** | Knox Shareholders' Written Consent and Board Written Consent removing Ritter (Apr. 26, 2024; DocuSign envelope A5DA96EA; signed for Steel Perlot, LLC by Big Hen Group I, LLC / Hillspire, LLC / Eric Schmidt, Co-Manager, and by directors Eric Schmidt and R. Martin Chávez); Carta capitalization records for Knox and StarX (Jan. 19, 2022; June 2024) | 8, 28, 35, 67, 94 |
| **34** | Knox Networks, Inc. Notice of Stock Repurchase (Apr. 26, 2025; 4,500 "Unvested Shares" at $1.00 per share); Knox proposed NDA (May 19, 2025); Knox § 220 demand response (May 9, 2025); Knox letter re NDA (May 30, 2025) | 81, 82, 111, 113 |
| **35** | Notice to Preserve All Records (Sept. 11, 2025); Marcus response (Sept. 12, 2025) | 101, 114 |
| **36** | Control Risks Device Collection Report (Aug. 8, 2024); Paley residence TeamViewer findings | 39, 86, 132, 141 |
| **37** | AAA Order to Show Cause (Mar. 5, 2026); Order of Default (Mar. 16, 2026); arbitrator letter (Oct. 7, 2025); AAA deposit request (July 23, 2025) | 101, 166 |
| **38** | AAA Claimants' Apr. 6, 2026 declarations of Craig Marcus (with Appendix Ex. 72), Kelly Young, Mandy Quach, Eric Schmidt, and Eric Rose (excerpts); Claimants' Ex. 34 (Glaser Weil billing); Exs. 26–28 (RSI and Bullpen invoices) | 4, 39, 90, 100, 101, 102, 111, 113, 114, 163, 166 |
| **39** | Final Arbitration Award (June 4, 2026), p. 13 (recital concerning Ex. 8) | 80 |
| **40** | Google Workspace Terms of Service; Complaint, Ritter v. Google LLC et al., No. 25CV475336 (Santa Clara Super. Ct., filed Sept. 18, 2025); Request for Dismissal (Nov. 18, 2025) | 92 |
| **41** | Screenshots (Apr. 6–18, 2025) of StarX records hosted in and owned by the SchmidtEntity.co tenant, with share-permission records showing mrteam@schmidtentity.co as owner and an account in Ritter's name at that domain | 82, 90, 91, 111, 132 |
| **42** | StarX–FIFA Memorandum of Understanding (Sept. 14, 2023) | 62, 180 |
| **43** | "The Predator's Playground" op-ed (Jan. 2026); Feb. 2026 letter to Members of Congress (images) | 13 |
| **44** | Marcus correspondence refusing attorney-witness status (Sept. 12, 2025) | 101 |
| **45** | Rad Rectangle, LLC "Review of StarX" (July 27, 2024) with StarX admin-event log excerpts and CGNET audit log | 62, 86, 111, 132, 141 |
| **46** | DV-100 Request for Domestic Violence Restraining Order (Dec. 11, 2024), LASC No. 24SMRO00444 | 100 |
| **47** | Releases provided by Hillspire to Steel Perlot (Oct. 2024); SPM release correspondence | 97 |
| **48** | Ritter buyout request and Marcus response ("false assertions and is generally denied") (Oct. 24–26, 2024) | 98 |
| **49** | Fried Frank "SPM Potential Claims Outline" (Apr. 17, 2024); Fried Frank invoice transmittals and invoices for SPM and StarX matters (Apr. 1, 2024) | 62, 178 |
| **50** | July 2021 SPM Amended and Restated Limited Liability Company Agreement (95%/5%) and July 1, 2022 Agreement resetting the Percentage Interests to 51% Common Member / 49% Preferred Member (DocuSign A6BCF8E3) | 36 |

| Ex. | Description | FAC ¶¶ |
|---|---|---|
| **51** | Coit emails of May 23, 2024 ("URGENT REGARDING 2022 TAX RETURNS/AMENDMENTS," 10:26 a.m.; "Re: 2022 Amended return for SPM," 11:29 a.m. and 3:36 p.m.) re the $26.8M FY2022 amendment, "massive tax benefit," and "Michelle will need to amend her 2022 K1, and Big Hen will need to amend their 2022 K1" | 2, 28, 51, 59, 111, 124 |
| **52** | Coit email of May 29, 2024 ("Re: 2022 Amended return for SPM") transmitting KPMG's $40K–$45K addendum for DocuSign, with draft notice to Big Hen Group I, LLC, and Ritter's forwarding note ("Please share with the appropriate counsel") | 2, 28, 51, 52, 111, 124 |
| **53** | "Meeting w/ KPMG 05.31.2024" minutes (3 pp.): "Discussion Topic: $26.8M amendment to SPM FY2022 Tax Return"; attendees Coit, Bajema, Rabinowitch, Keel, Lennon, Cho, Kierzkowski, Minyong, Quach; "All losses will be allocated to hillspire, MR K1 will not be impacted" | 2, 53, 55, 56, 60, 111, 124 |
| **54** | Steel Perlot Management, LLC book-to-tax reconciliation, year ended December 31, 2023 (book loss $(20,580,161); taxable income $(15,777,531); "Written off capitalized labour cost" $3,388,013) | 50, 111, 124 |
| **55** | SPM capital model dated November 1, 2022 ($MM; FY21–FY23 capital invested $95.3M; "Inhouse Startups" including StarX; "Incremental Investment Needed" $61.2M) | 49, 59 |
| **56** | Rabinowitch email to "Michelle and Eric" (June 16, 2023) re Knox/SPM/StarX headcount, June budget, and funding request; Quach reply (June 21, 2023) copying Eric Schmidt, Seferian, Hur, and Manuel | 49 |
| **57** | "Wire scheduled - SPM to StarX for May-2024 Coverage" thread (May 1–6, 2024): Rabinowitch–Quach; Quach's "Eric has no further funding obligation" / "recoupable loan to SPM" / "broader transition" email (May 6, 2024) (Google Vault preservation export by Ritter, July 13, 2024) | 2, 57, 59, 96, 111 |
| **58** | The Corporation Trust Company "Important Delaware Tax Information" and "2023 State of Delaware 1st Estimated Tax Notice" for StarX Networks, Inc. (DE File No. 7944901), addressed to "Natalya Thakur-COO, Knox Networks Inc., 555 Bryant St PMB 374, Palo Alto, CA" (Apr. 24, 2023); Delaware Division of Corporations status for StarX ("AR Delinquent, Tax Due," as of Mar. 2, 2025); StarX 2023 Delaware Annual Franchise Tax Report filed by Ritter (July 15, 2024) | 21, 66, 111, 124 |
| **59** | StarX (Papapanagiotou)–Auth.Inc (Greene) email thread (May 14, 2024) (Google Vault preservation export by Ritter, July 13, 2024) | 62 |
| **60** | Still image from video recorded by Ritter at her residence, December 17, 2024, 12:21 p.m., showing Marcus inside the home | 100 |
| **61** | WhatsApp messages from Emina (United Kingdom) to Ritter, September 2025, reporting Schmidt's statements ("He told me more than once 'I will bankrupt her' as if it was his vengeance for you not submitting to him") | 95, 113, 168 |

# EXHIBIT 1

Declaration of Bruce W. Pixley, CISSP, GCFA, EnCE (Apr. 9, 2026), with forensic findings on MacBook Pro serial TFWF7V17GQ and the steelperlot.com GoDaddy DNS record

# EXHIBIT 2

---

## Pixley Declaration (Apr. 9, 2026)

**Description**

Forensic expert declaration of Bruce Pixley dated April 9, 2026, regarding MacBook Pro (Serial No. TFWF7V17GQ), JAMF / Hillspire MDM enrollment, CGNet administrator credential architecture, and remote-management capability.

**Status**

**ATTACHED — exhibit content follows this cover sheet.**

**Source**

[mounted]/__USE/Y- Signed Decs/2026.04.09 - Declaration of B. Pixley.pdf

— Cover sheet compiled 2026-04-27 —

# DECLARATION OF BRUCE W. PIXLEY

1. I am an adult over the age of eighteen (18) years and have personal knowledge of the facts set forth herein. If called to testify I would and could testify competently to the following facts.

2. I was engaged and rendered expert services on behalf of Michelle Ritter.

3. I am the Managing Member of Pixley Forensics Group LLC. My responsibilities include assisting corporate clients and law firms in investigations and disputes involving forensic accounting issues, electronic discovery, theft of intellectual property, and computer forensic investigations. In this capacity, I manage teams of forensic examiners and use a variety of technologies to perform data acquisition and analysis of this information.

4. Starting in 2001, I served as a lead instructor of computer forensics, Internet investigations, and network intrusion courses for the California Department of Justice's Advanced Training Center. Additionally, I have been employed as a Master Instructor for Guidance Software, which developed the EnCase computer forensic software. As an instructor, I have taught for more than 2,000 hours on the subjects of computer forensics and high-tech investigations. I have developed course training materials and written manuals for computer forensic courses such as Advanced Internet Examinations and Network Intrusion Investigations.

5. I have earned three professional certifications in my field of work. I possess the Certified Information Systems Security Professional (CISSP) certification and the GIAC Certified Forensic Analyst (GCFA) certification, which are both ANSI ISO accredited credentials, and the EnCase Certified Examiner certification.

6. Since 2003, I have been retained as a computer forensic examiner and subject matter expert in both criminal and civil matters. I have been qualified as an expert witness in both state and federal courts and testified about the foundation of computer forensics, Windows and Mac operating systems, chat software, Internet and network operations, e-mail, peer-to-peer file sharing, digital photography, recovery of deleted data, and Trojan viruses.

7. Attached as **Exhibit A is** a copy of my current Curriculum Vitae, which sets forth additional aspects of my qualifications and background.

## EVIDENCE AND METHODOLOGY

8. On February 21, 2025, my office received an Apple laptop computer (Mac Book Pro, serial number TFWF7V17GQ) from Michelle Ritter which contained an internal solid state storage device (460.4 GB capacity); hereafter referred to as the "Ritter Laptop."

9. A forensic image of the internal storage device was created in AFF4 format using Digital Collector, version 3.8. The image completed with zero errors reported. This forensic image was used to conduct my analysis of the Ritter Laptop.

10. During my analysis of the Ritter Laptop, I used different software programs, including the following forensic software programs: Cellebrite Inspector, (version 10.9.1) and Magnet Forensics Axiom (version 8.9.1).

## INITIAL TIMELINE OF EVENTS

11. I found that the Mac operating system was installed on the Ritter Laptop on 11/9/2021 at 6:51:30 PM (UTC) and had been assigned a computer name of "MR MacBook Pro 16".

12. The first user account assigned to this computer was "ericschmidt." This account was later deleted less than one month later on 12/4/2021 at 4:04:22 AM (UTC).

13. Two additional user accounts, "it" and "it_Hillspire," were created respectively on 11/9/2021 at 7:07:11.845 PM and 7:14:30 PM (UTC). It should be noted that user accounts on a Mac are set in lowercase by default. The "it" accounts listed are commonly associated with the abbreviation of I.T., which is short for "Information Technology."

14. Multiple software programs were installed on 11/9/2021. This included programs such as Microsoft Office for Mac, Google Drive, TeamViewer, and JAMF Software.

15. The wireless network known as "Schmidt Futures" was added to the computer on 11/10/2021 at 5:12:42 PM (UTC). Wireless networks, such as this one, allows the computer to connect a local computer network and the Internet.

16. The user account for Michelle Ritter (michelleritter) was not created until a few days later on 11/13/2021 at 1:19:32 AM (UTC). As of this date, this Ritter Laptop was associated with a personal Apple ID of michelleshamim9@gmail.com and two other personal Apple accounts (michelle.ritter@icloud.com and michelle.ritter@me.com), which I understand belong to Michelle Ritter.

## REMOTE ACCESS PROGRAMS

17. JAMF Software is enterprise-level Apple device management (MDM) software used by organizations to centrally administer macOS computers and other Apple devices. When a computer is enrolled, JAMF allows authorized administrators to remotely enforce security policies, install or remove software, deploy configuration profiles, and execute administrative tasks within the scope of Apple's MDM framework. JAMF itself does not provide live, interactive access to user files or the desktop, but it can be used to deploy, configure, and manage additional software that provides those capabilities.

18. Forensic analysis shows that JAMF software was installed on the Ritter Laptop on or about November 9, 2021. The Ritter Laptop was configured to automatically execute JAMF management tasks at system startup and to perform recurring check-ins thereafter. JAMF logs show that management policies were enforced repeatedly and without user interaction, providing persistent administrative control over system configuration and installed software. Once running, the JAMF software was configured to communicate with a cloud-based management service hosted at https://hillspire.jamfcloud.com, which, as of the date of this declaration, resolves to an authentication service associated with Schmidt Entities.

19. Through this JAMF management framework, administrators could remotely install, update, configure, or remove software on the Ritter Laptop without direct user involvement. This included the deployment and management of third-party remote access software, such as TeamViewer. JAMF functioned as the administrative control mechanism through which such software could be persistently configured, enabled, disabled, or reconfigured over time.

20. TeamViewer is remote access software that, when installed and enabled, allows a remote user to interact with a computer through its desktop interface. Forensic artifacts show that TeamViewer was installed on the Ritter Laptop and configured for full unattended access capability. TeamViewer was authorized at the operating system level to record the screen and control keyboard and mouse input, permissions that are required for live viewing and interactive remote control and are not granted by default. These permissions were granted in or around November 2021. When enabled, TeamViewer allows a remote user to view the screen in real time, control the keyboard and mouse, and transfer files.

21. Analysis of the macOS privacy authorization database (TCC.db) shows that TeamViewer was granted screen recording and accessibility permissions on the Ritter Laptop. These permissions are required for live viewing of the screen and remote control of keyboard and mouse input and are not granted by default. The presence of these authorizations indicates that TeamViewer was configured for interactive remote access at or around the time the system was enrolled in enterprise management.

22. In combination, JAMF and TeamViewer created a system architecture in which JAMF provided persistent, root-level administrative management of the Ritter Laptop, while TeamViewer provided the mechanism for live, interactive remote access. Under this configuration, and when the TeamViewer service was enabled, an authorized remote administrator could obtain broad and effectively unrestricted access to the system, including the ability to view and control the desktop, transfer files, and interact with user data and applications.

23. The presence of these artifacts demonstrate that the Ritter Laptop was configured in a manner that allowed persistent administrative management and the capability for unattended interactive remote access. When deployed on a personal computer, this combination of enterprise management software and remote access software materially reduces the user's expectation of privacy with respect to personal and sensitive information stored on or accessed through the device.

24. According to the Unified Log of the Ritter Laptop, the laptop was powered on and the JAMF software was running on 9/5/2024. The laptop was shutdown on 9/6/2024.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 9th day of April, 2026, at Prescott Valley, Arizona.




BRUCE PIXLEY

# Bruce W. Pixley, CISSP, GFCA, EnCE

**Qualifications**

Certified forensic analyst and expert witness providing testimony in U.S. Federal Court and CA State Court on the subject of computer forensics, operating systems, e-mail, Trojan viruses, peer-to-peer software, digital photographs and recovery of deleted data. Areas of expertise include computer forensics, theft of intellectual property/trade secrets, network intrusions, Internet investigations, and human resource investigations. Course developer and instructed law enforcement and corporate investigators around the world for over 2,000 hours on the subjects of computer forensics, network intrusions, and high-tech investigations.

**Summary of Professional Experience**

**Pixley Forensics Group** — **November 2013 – Present**

Provides computer forensic analysis, digital evidence collection, expert witness testimony, and litigation consulting services to clients for matters involving criminal activity, intellectual property and trade secret misappropriation, internal investigations, spoliation and tampered evidence, cellular/mobile devices, and network intrusion.

**Course Developer and Instructor, California Cyber Training Complex** — **July 2016 – November 2021**

A partnership of California State University, Cal Poly San Luis Obispo and California Military Department to prepare law enforcement agencies and military department to address the growing cyber threat. Provide course development, instructional materials, and instruction to students on the introductory through advanced topics of computer forensics as it relates to cyber investigations.

**Lead Instructor, California Department of Justice** — **July 2001 – June 2016**

Provides contract services as a lead instructor for the Advanced Training Center which includes training, course development and development of instructional material for the basic, advanced, and Mac computer forensic courses. Serves as the lead developer and instructor for the Department's 40-hour network intrusion course. Received formal certification as an instructor from California's POST Robert Presley Institute of Criminal Investigation.

**Vice President, Precision Discovery** — **September 2008 – October 2013**

Executive responsible for Precision Discovery's nationwide computer forensic practice. This in-house team of expert examiners conducts end-to-end computer forensic examinations; handles all types of electronic discovery collections; provides litigation consulting services and expert witness testimony; and delivers a quality final work product to their clients.

**Senior Director, Aon Consulting** — **January 2006 – September 2008**

Responsible for managing and investigating high-tech investigations for the Western United States practice. Investigations spanned from trade secret theft and intellectual property matters to computer intrusion and human resource issues. Provided testimony as an expert witness.

**Master Instructor, Guidance Software** — **September 2003 – August 2005**

Responsible for development and maintenance of advanced and expert series training courses, such as network intrusion and advanced Internet examinations, that instructs law enforcement and corporate forensic examiners with investigative methodologies, computer skills and instruction on the functionality and usage of EnCase Forensic Edition and EnCase Enterprise Edition.

**Lieutenant, Santa Barbara Sheriff's Department** — **May 2002 – August 2003**

Assigned to Special Operations, High Tech Crime Task Force. Responsible for the formation, operations and training of a new multi-county task force. Additional responsibilities included conducting computer forensics examinations and providing training to outside agencies. Began conducting computer forensic examinations in 1999 as a Sheriff's Detective Sergeant.

**California Peace Officer**

Santa Barbara Sheriff's Department — **July 1992 – August 2003**
Carpinteria Police Department — **January 1988 – June 1992**

**Education**

University of Phoenix, B.S., business management

**Professional Certifications**

- Certified Information Systems Security Professional (CISSP)
- GIAC Certified Forensic Analyst (GFCA)
- EnCase Certified Examiner (EnCE)
- AccessData Certified Examiner
- Certified ProDiscover Examiner
- Microsoft Certified Professional

**Professional Affiliations**

- International High Technology Crime Investigation Association; founding president of the Central California Chapter
- International Association of Computer Investigative Specialists

**Summary of Professional Training**

- SANS Advanced Computer Forensic Analysis and Incident Response
- SANS Hacker Techniques & Incident Handling
- EnCase Expert Series and Intermediate Courses
- Blackbag Macintosh Forensics Courses
- AccessData Computer Forensics Courses
- HTCIA Annual Training Conferences
- CA Department of Justice Training Courses

**Presentation and Publications**

Provided computer forensic report writing class to federal agents and prosecutors in a one day training session sponsored by the US Attorney's Office in Los Angeles, October 2015.

*Report Writing Handbook for the Computer Forensic Examiner: Law Enforcement Edition*, California: 2014. Print.

"Protecting Trade Secrets in the Computer Age: The Basics on Computer Forensics", *Bender's California Labor & Employment Bulletin*: LexisNexis, June 2008.

"Data Search Strategies for Mobile Devices that can Help Counsel Win," *The Metropolitan Corporate Counsel,* December 2007.

"Looking Beyond E-mail: Alternate Forms of Communication and Their Impact on E-Discovery," *The Metropolitan Corporate Counsel*, November 2007.

"The Quest to Uncover All the Facts: The Role of Computer Forensics in Electronic Discovery," The Metropolitan Corporate Counsel, November 2007.

"In Search of Lost Assets: Using Computer Forensics in Intellectual Property and Trade Secret Theft Investigations," *The Metropolitan Corporate Counsel*, November 2007.

**Expert Testimony**

*Saint Mary's Medical Group v. Pinnacle Medical Group et. al, Second Judicial District Counrt of the State of Nevada, Washoe County, November 2024 and August 2025*

*USC Investments LLC v. Faryan Afifi, et al. (BC678400), Superior Court of California, County of Los Angeles, August 2024.*

*People of State of California v. Angela K. Mirabella, et al.* (21ZF0019), Superior Court of California, County of Orange, June 2024.

*People of State of California v. David Mark Fink* (BA435472), Superior Court of California, County of Los Angeles, November 2021.

*In Re Grand Jury Investigation,* Orange County Criminal Grand Jury, Santa Ana, CA, August 2021.

*U.S. v. Michael Joseph Pepe* (CR 07-168), United States Federal Court, Central District of California, August 2021.

*U.S. v. Vahe Sarkiss (19-495-DSF)*, United States Federal Court, Central District of California, June, 2021.

*People of State of California v. Joshua Raffaelli,* Superior Court of California, County of San Mateo, June 2019.

*In Re Grand Jury Investigation,* Orange County Criminal Grand Jury, Santa Ana, CA, March 2019.

*People of State of California v. David Mark Fink* (BA435472), Superior Court of California, County of Los Angeles, September 2018.

*U.S. v. Ronald Gerard Boyajian (CR 09-933)*, United States Federal Court, Central District of California, February, 2016.

Parker Waichman LLP against Michelle Mauro, David Krangle, Andres Alonso and Alonso Krangle LLP, Supreme Court of the State of New York, Nassau County, February, 2016.

*U.S. v. Keith Gartenlaub* (CR 14-173-CAS), United States Federal Court, Central District of California, December 2015.

*People of State of California v. Kristin Regina Davis, Superior Court of California, County of Ventura, November 2015*

*U.S. v. Stanley Reczko III* (CR 07-1221), United States Federal Court, Central District of California, February 2015.

*U.S. v. Michael A. Peterson* (CR 12-228-GW), United States Federal Court, Central District of California, July 2014.

*U.S. v. Denis Aviles Salguero* (11-CR-1156-FMO), United States Federal Court, Central District of California, September 2013.

*U.S. v. Yongda Huang Harris,* United States Federal Court, Central District of California, April 2013.

*Bryan Hooper v. The Fulcrum Group,* Superior Court of California, San Bernardino County, September 2012

*U.S. v. Tyrone Ganoe* (CR 06-19(A)-DSF), United States Federal Court, Central District of California, April 2012.

*U.S. v. Ronald Gerard Boyajian* (CR-09-933(A) CAS), United States Federal Court, Central District of California, March 2011.

*U.S. v. Erik Leonardus Peeters* (CR 09-932(C)-CAS), United States Federal Court, Central District of California, February 2011.

*Gray 1 Central Pacific Bank, LLC v. SCC Acquisitions, Inc*, Superior Court of California, County of Orange, December 2010.

*U.S. v. Gregory Berry (CR 09-831-DSF)*, United States Federal Court, Central District of California, August 2010.

*U.S. v. Carl Stephen Tisthammer* (CR 08-57-CAS), United States Federal Court, Central District of California, March 2010.

*U.S. v. William Lawrence Billow (CR 08-151 RT)*, United States Federal Court, Central District of California, December 2009.

*Ma Laboratories, Inc v. ASI Computer Technologies, Inc,* Superior Court of California, County of Santa Clara, May 2009

*U.S. v. Drew Endacott* (CR 08-813-PSG), United States Federal Court, Central District of California, February 2009.

*Selvin & Weiner P.C. et al v. Bench International Search, Inc., et al,* Superior Court of California, County of Los Angeles, November 2008.

*U.S. v. Michael Joseph Pepe* (CR 07-168(A)-DSF), United States Federal Court, Central District of California, May 2008.

*U.S. v. James Sanders* (EDCR 04-42(A)-VAP), United States Federal Court, Central District of California, Eastern Division - Riverside, June 2007.

*Bazak International Corp. v. Tarrant Apparel Group*, United States Federal Court, Southern District of New York, November 2006.

*U.S. v. Tyrone Ganoe* (CR 06-19(A)-DSF), United States Federal Court, Central District of California, January 2007.

*U.S. v. Bruce Wernick,* United States Federal Court, Eastern District of New York, April 2005.

*U.S. v. Jorge Agusto Mijangos* (CR 04-688(A)-JFW), United States Federal Court, Central District of California, September 2004.

**Deposition Testimony**

*Saint Mary's Medical Group v. Pinnacle Medical Group et. al, Second Judicial District Counrt of the State of Nevada, Washoe County, October 2024*

*Blackberry Corporation and Cylance Inc. v. Chris Coulter and Sentinel Labs Inc.*, Superior Court of the State of Vermont, Chittenden Unit Civil Division, August 2023.

*Kung Fury 2 v. Creason Entertainment USA, Inc,* Superior Court of California, County of Los Angeles, March 2023.

*Joshua Joiner v. Builder AI Corp,* Superior Court of California, County of Los Angeles, March 2022.

*The Best Label Company LLC v. Custom Label & Decal LLC,* United States District Court, Northern District of California, January 2022.

*Jeremy Swanson v. County of Riverside,* Superior Court of California, County of Riverside, November 2021.

*Saint-Gobain Performance Plastics v. Tuan La et al.*, Superior Court of California, County of Los Angeles, August 2021.

*Paul J. Napoli v. Marc J. Bern,* Supreme Court of the State of New York, County of New York, July and September 2020.

*Cell-Crete Corporation v. Scott Taylor and Davison Vivit*, Superior Court of California, County of Los Angeles, March 2020.

*Laurie Carranza v. State of California,* Superior Court of California, County of San Bernardino, August 2017

*David Yang and Hollie Yang v. State of California,* Superior Court of California, County of Los Angeles, June 2017

*San Diego County Credit Union v. Carlton Roark et al.,* Superior Court of California, County of San Diego, June 2015

*W.J. Bradley Mortgage Capital, LLC v. Logemann et al.*, Superior Court of California, County of Orange, February 2015

*In Re Delta/AirTran Baggage Fee Antitrust Litigation, MDL 2089*, United States Federal Court, Northern District of Georgia, Atlanta Division, May 2014

*In Re Delta/AirTran Baggage Fee Antitrust Litigation, MDL 2089*, United States Federal Court, Northern District of Georgia, Atlanta Division, January 2014

*Bryan Hooper v. The Fulcrum Group,* Superior Court of California, San Bernardino County, August 2012

*Christopher Mendoza v. Nordstrom, Inc,* United States Federal Court, Central District of California, April 2012

*John Negovetich v. Central Garden & Pet Company,* Superior Court of California, January 2010

*Ma Laboratories, Inc v. ASI Computer Technologies, Inc,* Superior Court of California, October 2008

*Aon Consulting, Inc and Aon Group, Inc v. Michelle Miears, Shawn Thompson, and Lockton Insurance Agencies*, District Court of Harris County, Texas, March 2008

*Selvin & Weiner P.C. et al v. Bench International Search, Inc., et al,* Superior Court of California, February 2008

*Schwab, et al v. Carter, et al,* United States Federal Court, Northern District of Illinois, February 2006

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)

First Amended Complaint

# EXHIBIT 2

Declaration of Elijah Reinhardt (Sept. 25, 2025)

# EXHIBIT 1

---

## Reinhardt Declaration (Sept. 25, 2025)

**Description**

Signed declaration of Elijah Reinhardt dated September 25, 2025. Establishes the April 2024 Glaser Weil governance transition at Steel Perlot, operational-arm conduct attributable to the Hillspire hub, and Marcus/Harris on-site role within SPM.

**Status**

**ATTACHED — exhibit content follows this cover sheet.**

**Source**

[mounted]/__USE/Y- Signed Decs/2025-09-25 - Signed Decl Eli Reinhardt re GW SP 2024 9.25.25 - signed.pdf

— Cover sheet compiled 2026-04-27 —

MICHELLE RITTER, in pro per
269 S. Beverly Dr. #1315
Beverly Hills, CA 92102
Tel.: (510)-828-7772
Email: ritter_legal@outlook.com

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ________**

**Unlimited Jurisdiction**

| | |
|---|---|
| MICHELLE RITTER,<br>Plaintiff<br>v.<br><br>Defendants. | Case No.: |

CAPTION PAGE

**DECLARATION OF ELIJAH REINHARDT**

I, Elijah Reinhardt, declare as follows:

1. I submit this declaration in support of Plaintiff Michelle Ritter in this matter.

2. I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

3. I have not been paid or coerced by any party to provide this declaration, and I do so voluntarily.

4. I am concerned of retaliation and threats to my livelihood because I have seen firsthand some negative consequences to Michelle Ritter and the threats she has faced, as well as coercion and pressure placed on other parties (former employees), some of whom have signed off on releases under threat of nonpayment of wages. I request if feasible, privacy and identity protection to minimize negative consequences. I will comply with the court's order to provide any further information as needed.

**My Involvement in the Businesses**

5. I joined the Steep Perlot ("SP") core team after it was founded by Michelle Ritter and after Eric Schmidt provided funding in 2021. At the time, I understood that Schmidt was providing capital through his family office, Hillspire LLC or related entities (collectively referred to as "Hillspire entities"), while Ritter was CEO, leading the businesses, setting the strategy, defining the vision and managing day to day operations.

6. Ritter built and ran the companies, day-to-day operations. She hired the employees, defined the business plans, and executed on the incubations and investments. She also worked on external fundraising, and her leadership was central to what we accomplished in developing a successful investment management business.

7. Eric Schmidt's role was primarily providing capital and occasional guidance.

8. Michelle set the vision, strategy, and built the teams I was part of. While she focused on growth and expansion, Eric controlled the money and legal structure. This dynamic undermined her leadership, despite her being the original founder who developed the business models and started the company.

9. I know Eric and Michelle both personally and professionally.

10. Among the businesses Ritter and our teams built were:

**(i)** **Steel Perlot Management (“SPM”)**, the venture studio/incubation arm:

**(ii)** **Steel Perlot Investments (“SPI),** the external venture arm; and

**(iii)** **Quant trading team,** the quantitative trading arm.

11. The market returns have been significant. **Keeta**, for example, in which SP had a 30% stake, was recently valued at over $1 billion;

12. Michelle also brought to the table an opportunity to invest into Anthropic through SP. On information and belief Hillspire entities circumvented SP, and made a large Series A investment into Anthropic ($550M valuation then). The company has recently been valued at $186 billion. It didn’t seem right that SP was sidelined on the deal since Michelle initiated it.

13. The SP market returns were significant, generating 100’s of millions of dollars to billions of dollars depending on the specific investments.

14. On information and belief, part of the Quant trading team**,** was hired by the Hillspire entities.

15. Michelle and I were solely responsible for bringing in the Keeta deal.

16. Michelle was the primary driver of the Anthropic Investment as well.

17. Despite being instrumental in generating these significant returns, I have never been paid for the upside from the business investments which I was promised. I also never received the equity stake in SPM to which I was entitled under my employment agreement.

18. There has been a lot of publicity regarding the alleged losses by SP, construing Michelle as responsible, which is simply not the case. The returns speak for themselves. These alleged losses were seemingly a strategic maneuver by key Hillspire insiders to sabotage the company, throw Michelle under the bus (take the fall), take over the business and assets, while laying off over 100 employees, including me. It seemed the layoffs and siphoning of the assets was a coordinated ploy to take over the business and remove founding team members of their financial stakes to bolster the narrative that the business was failing due to the purported losses. Again, the returns on investments clearly invalidate this misleading public narrative.

19. In hindsight, it is clear the SP businesses and investments have been wildly profitable, blatantly contradicting the claims of alleged losses. The concocted losses seemingly enabled the transfer of assets to Hillspire entities.

**Conduct of Glaser Weil: Witness-Farming and Pressure, quid pro quo**

20. In late June 2024, I as well as many of my former SP colleagues were repeatedly contacted by Glaser Weil, counsel representing Hillspire entities-- specifically, Craig Marcus and Jill Harris.

21. They repeatedly contacted me to set up a meeting to discuss the future of the company. I thought it was strange because at the time, I was no longer a part of the company.

22. I was let go in 2023 by David Charnin and Stephanie Bousley.

23. I was told by Gal Treger, prior to that point, to make a direct ask on funding in "order to save my time" at Steel Perlot.

24. Gal is also a part of First Spark Ventures which was backed by SP, and is also backed by Hillspire entities and Todd Meister.

25. In reality, there was a purge of the original employees as directed by the controlling investor(s) and their attorneys and affiliates. This was odd because the pretext was that there were budget concerns voiced by Hillspire entities.

26. On information and belief, however, the company subsequently hired dozens of new employees after most if not all original employees were laid off. Those who came after in 2023, were also funded by Hillspire, still under Ritter's leadership.

27. When GW was trying to contact me in June 2024, I did not initially understand the purpose of the outreach.

28. Eventually, after conferring with other colleagues, I believe their intention for contacting former employees was to gather negative and falsely derogatory statements regarding Ritter and Steel Perlot businesses. It was strange to me, that (on information and belief) GW was actively incentivizing and grooming witnesses to speak on Michelle's alleged failed leadership and alleged business performance issues to support their narrative.

29. It was troubling to me that GW was orchestrating the collection of witness testimonies and cherry picking "facts" to fit their narrative.

30. On information and belief, they were contacting former employees to spin a narrative which ultimately appeared in a news article in *the Information* on or around August 2, 2024.

31. On information and belief, and as reflected in the article, other employees received payouts for their cooperation in corroborating the narrative put forth by GW (the article) on behalf of the Hillspire group and for signing a required release in order to receive payment after termination.

32. Following the publication of *The Information* article on August 2, 2024, I reached out to Marcus and Harris but they were apparently no longer interested in talking to me, which was strange because prior to the article's release, they had been so persistent in attempting to speak to me. On information and belief, GW seemed to be instrumental in the sourcing of information used in the article.

33. On information and belief, it appeared that Glaser Weil and its attorneys were actively shaping, coordinating, encouraging and promoting a false storyline to harm Ritter and her business. On information and belief, the negative backlash of the article resulted in the transfer of the valuable business assets and investments to the Hillspire entities' control. The original entities were stripped and left with expenses and remaining liabilities.

34. I believe these issues continue today, and former employees, myself included, are still owed compensation. I did not receive my equity or compensation from the investments.

**The Information Article and Its Aftermath**

35. Around this same time or after, I saw emails to my colleagues from Hillspire attorneys or agents directing former employees and founders to not contact or interact any further with Michelle.

**Observations Regarding Ritter**

36. The article cast numerous aspersions as to MR's character and conduct. I believe the article to be misleading or inaccurate in many ways.

37. I knew Michelle Ritter both personally and professionally. I never saw her incapacitated, or unable to perform her work duties for the company. At no point, in or out of the workplace, did I see her behave in a way that justified the negative claims put forth in the article. In all my numerous interactions with her, she was highly dedicated to her work in growing the company and ensuring its success.

38. I observed that Ritter ran day-to-day operations, defined the strategy, and worked on external fundraising. The notion that she "drove the business into the ground" is entirely inconsistent with what I witnessed firsthand; especially seeing how well the businesses and investments performed.

39. On information and belief, the Hillspire entities blocked Ritter's efforts to secure additional investment from multiple external investors, which likely would have sustained SP's financial stability and growth for the foreseeable future, and becoming less reliant on Hillspire's financial backing, and alleviating their "budget issues" which was their purported rationale for laying off over 100 of the original employees.

**Concern re retaliation**

40. Many of my colleagues and I were in fear for our livelihoods (the business was being shut down), being monitored, being smeared in the press, or being dragged into litigation, which I continue to fear.

41. I am concerned by the threat of retaliation for contradicting Hillspire's or GW's narrative, and that individuals who declined to participate in the false storyline faced reputational harm and threats, like I've seen Michelle subjected to.

42. I file this declaration with serious concern for potential retaliation against me. For that reason, I respectfully request that it be filed under seal or with redactions.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 25, 2025

Elijah Reinhardt (Sep 25, 2025 15:00:07 PDT)

Elijah Reinhardt

# Decl ER 9.25.25

Final Audit Report 2025-09-25

| | |
|---|---|
| Created: | 2025-09-25 |
| By: | James Knopf (jsk@knopflaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtd0to5UAQwdek2GgxgFyPGUFMrGf5Yt5 |

## "Decl ER 9.25.25" History

Document created by James Knopf (jsk@knopflaw.com)
2025-09-25 - 5:55:31 PM GMT

Document emailed to Elijah Reinhardt (eli.reinhardt@icloud.com) for signature
2025-09-25 - 5:55:34 PM GMT

Email viewed by Elijah Reinhardt (eli.reinhardt@icloud.com)
2025-09-25 - 9:59:04 PM GMT

Document e-signed by Elijah Reinhardt (eli.reinhardt@icloud.com)
Signature Date: 2025-09-25 - 10:00:07 PM GMT - Time Source: server

Agreement completed.
2025-09-25 - 10:00:07 PM GMT

# EXHIBIT 3

Settlement Agreement dated December 4, 2024, with Schedules A–I (including Schedule B, Schedule C, Schedule D, Schedule H), and the November 20–24, 2024 Glaser Weil drafting redlines

# EXHIBIT 11

## Dec. 4, 2024 Settlement Agreement (FULLY EXECUTED)

**Description**

December 4, 2024 Settlement Agreement (fully executed) — operative settlement instrument under which Plaintiff seeks rescission/cancellation/declaratory invalidity.

**Status**

**ATTACHED — exhibit content follows this cover sheet.**

**Source**

[mounted]/__USE/2024-12 - Agreements + DVRO/2024-12-05 *- agmt fully signed/2024-12-05 - agmt fully signed - SETTLEMENT AGREEMENT - FULLY EXECUTED.pdf

— Cover sheet compiled 2026-04-27 —

From: Elliott Joffe ejoffe@baronsamson.com
Subject: SETTLEMENT AGREEMENT - FULLY EXECUTED
Date: Dec 5, 2024 at 10:33:00 AM
To: ritter.sm@icloud.com, Terry Ritter EMAIL ritter_t2@ymail.com
Cc: Scott Baron sbaron@baronsamson.com

Michelle, Terry and Shamim,

Good morning.

Attached please find the fully executed settlement package. Congratulations, again!

Next step, deal with FTC, which we are already working on.

Let us know if you have any questions.

Best,

Elliott Joffe, Esq., Senior Counsel
BARON SAMSON LLP
**[PLEASE NOTE NEW ADDRESS]**
**330 Passaic Avenue, Suite 105**
**Fairfield, NJ 07004**
(973) 244-0030 x 106 (tel)
(973) 244-0016 (fax)
(201) 452-4319 (cell)
ejoffe@baronsamson.com
www.baronsamson.com

New York Office:
255 West 36th Street, 2nd Floor
New York, NY 10018

PDF
**2024-12-04 ES Certificate of Completio...**
360 KB

PDF
**2024-12-04 Knox Certificate of Completio...**
354 KB

PDF

Tap to Download

**2024-12-04 Settlement Agreement - ES_Ritters Execute...**

9.8 MB

PDF

Tap to Download

**2024-12-04 Settlement Agreement - Knox_Ritters...**

7.4 MB

# EXHIBIT 4

Amendment to Agreement dated December 17, 2024, with the FL-300 dismissal stipulation

# EXHIBIT 13

---

## December 17, 2024 Amendment to Settlement Agreement

**Description**

December 17, 2024 Amendment to the Settlement Agreement — Sections 3(a)(i), 3(a)(iv), Schedule D, and Section 1 are challenged as void and unenforceable.

**Status**

**ATTACHED — exhibit content follows this cover sheet.**

**Source**

[mounted]/__USE/2024-12 - Agreements + DVRO/2024-12-17 *-Amendment + DVRO Stip + Intent of Stip/2024-12-17_Amendment_to_Agreement.pdf

— Cover sheet compiled 2026-04-27 —

# AMENDMENT TO AGREEMENT

THIS AMENDMENT TO AGREEMENT (this "**Amendment**") is made as of December 17, 2024 (the "**Effective Date**"), by and among (i) the following parties on the one hand (each a "**Schmidt Party**" and collectively, the "**Schmidt Parties**"): Eric Schmidt, an individual ("**Mr. Schmidt**"), Hillspire, LLC, a Delaware limited liability company ("**Hillspire**"), and (ii) the following parties on the other hand (each a "**Ritter Party**" and collectively, the "**Ritter Parties**"): Michelle Ritter, an individual ("**Ms. Ritter**"), Terry Ritter and Shamim Ritter, each an individual (collectively, "**Mr. and Mrs. Ritter**"), and Audem Management, LLC, a Delaware limited liability company ("**Audem**"). The Schmidt Parties and the Ritter Parties are each referred to herein as a "**Party**" and collectively as the "**Parties**." As used in this Agreement, "**affiliate**" means, with respect to a specified person or entity, another person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the person specified.

## RECITALS

The Schmidt Parties and the Ritter Parties are parties to an Agreement dated as of December 4, 2024, the provisions of which are incorporated herein by reference (as amended by this Amendment, the "**Agreement**"). All capitalized terms used in this Amendment which are not defined herein shall have the meanings ascribed to them in the Agreement.

NOW, THEREFORE, the Parties, in reliance on the foregoing and in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and respectively expressing the intention to be legally bound hereby, covenant and agree as follows:

**1.** Ms. Ritter hereby irrevocably and forever rescinds, revokes, retracts, and denies that certain Restraining Order filed by Ms. Ritter against Mr. Schmidt on December 12, 2024 in LASC Case No. 24SMRO0044 (the "**DVRO**") and further agrees to duly file within 24 hours the attached FL-300 Form confirming that she has rescinded, revoked, retracted, and denied the same, file any and all applicable paperwork necessary or desirable to dismiss the DVRO against Mr. Schmidt with prejudice and provide evidence of the same (the "**Filing Condition**"). Ms. Ritter, the Schmidt Parties, and the Ritter Parties agree to keep the DVRO confidential subject to the Confidentiality provisions of the Agreement. If ever asked about the filing, Ms. Ritter shall state that, "upon reconsideration, it was filed erroneously against Mr. Schmidt and I do not support or endorse it in anyway as to Mr. Schmidt or his affiliates." If the Ritter Parties comply with their obligations in the Agreement, then (i) the Schmidt Parties waive any right to claim that the filing of the DVRO was a breach of the Agreement, (ii) the dismissal and the retractions herein shall not constitute an admission by Ms. Ritter or otherwise be used as evidence against her in any proceeding.

**2.** Subject to compliance by the Ritter Parties of the Agreement and the Payment Condition, the phrase "fourteen (14) days after the Move Out Date" in Schedule A to the Agreement shall be deleted and replaced with the phrase "72 hours after the Filing Condition."

**3.** Subject to compliance by the Ritter Parties of the Agreement, including the Payment Condition and Filing Condition, and so long as the Ritter Parties evacuate the properties



Initial ES SSR TCR MR.

on the Move Out Date, the Schmidt Parties agree to forego and forbear any claims they have based on items missing, or based on the condition of, such properties after the first and/or second inspections as referenced in Section 1(k) of the Agreement.

**4.** Except as set forth above, the Agreement remains in full force and effect and unmodified. The Schmidt Parties and Ritter Parties hereby reaffirm each of their obligations, representations, warranties and waivers under the Agreement, except as modified hereby.

**5.** All of the provisions of Section 3 (Miscellaneous) of the Agreement, including, without limitation, the Mandatory Arbitration provisions therein, are hereby incorporated into this Amendment and shall apply to this Amendment, *mutatis mutandis*, as if fully set forth therein

*[Remainder of Page Left Intentionally Blank; Signature Page Follows]*

Initial
ES

SSR
TCR
[illegible]

IN WITNESS WHEREOF, the Parties have executed this Amendment as of the Effective Date.

**MR. SCHMIDT**

Signed by:
Eric Schmidt
1AC6122DD6F6462...
Eric Schmidt, an individual

**HILLSPIRE**

Hillspire, LLC

Signed by:
By: Eric Schmidt
1AC6122DD6F6462...
Name: Eric Schmidt
Title: Co-manager

**MR. RITTER**

Terry Ritter, an individual

**MRS. RITTER**

Shamim Ritter, an individual

**MS. RITTER**

Michelle Ritter, an individual

**AUDEM**

Audem Management, LLC

By:
Name: Michelle Ritter
Title: CEO & Manager

SSR

TR

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On December 17, 2024, before me, Tigran Samvelyan, Notary Public, personally appeared , Michelle Shannon Ritter who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ____________________

(seal)

TIGRAN SAMVELYAN
Notary Public - California
Los Angeles County
Commission # 2367376
My Comm. Expires Jul 23, 2025

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On December 17, 2024, before me, Tigran Samvelyan, Notary Public, personally appeared , Terry Lee Ritter who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ____________________

(seal)

TIGRAN SAMVELYAN
Notary Public - California
Los Angeles County
Commission # 2367376
My Comm. Expires Jul 23, 2025

FL-300

PARTY WITHOUT ATTORNEY OR ATTORNEY STATE BAR NUMBER:
NAME: Michelle Ritter
FIRM NAME:
STREET ADDRESS: 1060 Brooklawn Drive
CITY: Los Angeles STATE: CA ZIP CODE: 90077
TELEPHONE NO.: FAX NO.:
E-MAIL ADDRESS: ritter.sm@icloud.com
ATTORNEY FOR (*name*):

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: West Santa Monica

PETITIONER: Michelle Ritter
RESPONDENT: Eric Schmidt
OTHER PARENT/PARTY:

**REQUEST FOR ORDER** ☐ **CHANGE** ☐ **TEMPORARY EMERGENCY ORDERS**

CASE NUMBER: 24SMRO0044

☐ Child Custody ☐ Visitation (Parenting Time) ☐ Spousal or Partner Support
☐ Child Support ☐ Domestic Violence Order ☐ Attorney's Fees and Costs
☐ Property Control ☒ Other *(specify)*: Petitioner Michelle Ritter rescinds, revokes, retracts, and denies previously filed TRO application and requests dismissal of this case with prejudice

## NOTICE OF HEARING

1. TO *(name(s))*: ______
☐ Petitioner ☐ Respondent ☐ Other Parent/Party ☐ Other *(specify)*:

2. **A COURT HEARING WILL BE HELD AS FOLLOWS:**

a. Date: Time: ☐ Dept.: ☐ Room.:
b. Address of court ☐ same as noted above ☐ other *(specify)*:

3. **WARNING to the person served with the *Request for Order*:** The court may make the requested orders without you if you do not file a *Responsive Declaration to Request for Order* (form FL-320), serve a copy on the other parties at least nine court days before the hearing (unless the court has ordered a shorter period of time), and appear at the hearing. *(See form FL-320-INFO for more information.)*

*(Forms FL-300-INFO and DV-400-INFO provide information about completing this form.)*

## COURT ORDER
*(FOR COURT USE ONLY)*

***It is ordered that:***

4. ☐ Time ☐ for service ☐ until the hearing is shortened. Service must be on or before *(date)*:
5. ☐ A *Responsive Declaration to Request for Order* (form FL-320) must be served on or before *(date)*:
6. ☐ The parties must attend an appointment for child custody mediation or child custody recommending counseling as follows *(specify date, time, and location)*:
7. ☐ The orders in *Temporary Emergency (Ex Parte) Orders* (form FL-305) apply to this proceeding and must be personally served with all documents filed with this *Request for Order*.
8. ☐ Other *(specify)*:

Date: ______
JUDICIAL OFFICER

FL-300

| PETITIONER: Michelle Ritter<br>RESPONDENT: Eric Schmidt<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>24SMRO0044 |
|---|---|

## REQUEST FOR ORDER

**Note**: Place a mark [X] in front of the box that applies to your case or to your request. If you need more space, mark the box for "Attachment." For example, mark "Attachment 2a" to indicate that the list of children's names and birth dates continues on a paper attached to this form. Then, on a sheet of paper, list each attachment number followed by your request. At the top of the paper, write your name, case number, and "FL-300" as a title. (You may use *Attached Declaration* (form MC-031) for this purpose.)

1. [ ] RESTRAINING ORDER INFORMATION
One or more domestic violence restraining/protective orders are now in effect between *(specify):*
[ ] Petitioner [ ] Respondent [ ] Other Parent/Party *(Attach a copy of the orders if you have one.)*
The orders are from the following court or courts *(specify county and state):*
a. [ ] Criminal: County/state *(specify):* Case No. *(if known)*:
b. [ ] Family: County/state *(specify):* Case No. *(if known)*:
c. [ ] Juvenile: County/state *(specify):* Case No. *(if known)*:
d. [ ] Other: County/state *(specify):* Case No. *(if known)*:

2. [ ] CHILD CUSTODY [ ] I request temporary emergency orders
[ ] VISITATION (PARENTING TIME)
a. I request that the court make orders about the following children *(specify):*

| Child's Name | Date of Birth | [ ] Legal Custody to *(person who decides: health, education, etc):* | [ ] Physical Custody to *(person with whom child lives):* |
|---|---|---|---|

[ ] Attachment 2a.

b. [ ] The orders I request for [ ] child custody [ ] visitation (parenting time) are:
(1) [ ] Specified in the attached forms:
[ ] Form FL-305 [ ] Form FL-311 [ ] Form FL-312 [ ] Form FL-341(C)
[ ] Form FL-341(D) [ ] Form FL-341(E) [ ] Other *(specify):*
(2) [ ] As follows *(specify):* [ ] Attachment 2b.

c. The orders that I request are in the best interest of the children because *(specify):* [ ] Attachment 2c.

d. [ ] This is a change from the current order for [ ] child custody [ ] visitation (parenting time).
(1) [ ] The order for legal or physical custody was filed on *(date):* . The court ordered *(specify):*

(2) [ ] The visitation (parenting time) order was filed on *(date):* . The court ordered *(specify):*

[ ] Attachment 2d.

| PETITIONER: Michelle Ritter<br>RESPONDENT: Eric Schmidt<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>24SMRO0044 |
|---|---|

3. ☐ CHILD SUPPORT
(Note: An earnings assignment may be issued. See *Income Withholding for Support* (form FL-195)
a. I request that the court order child support as follows:

| Child's name and age | ☐ I request support for each child based on the child support guideline. | Monthly amount ($) requested (if not by guideline) |
|---|---|---|

☐ Attachment 3a.

b. ☐ I want to change a current court order for child support filed on *(date)*:
The court ordered child support as follows *(specify)*:

c. I have completed and filed with this *Request for Order* a current *Income and Expense Declaration* (form FL-150 or I filed a current *Financial Statement (Simplified)* (form FL-155 ) because I meet the requirements to file form FL-155.
d. The court should make or change the support orders because *(specify)*: ☐ Attachment 3d.

4. ☐ SPOUSAL OR DOMESTIC PARTNER SUPPORT
(Note: An *Earnings Assignment Order For Spousal or Partner Support* (form FL-435 ) may be issued.)
a. ☐ Amount requested *(monthly)*: $
b. ☐ I want the court to ☐ change ☐ end the current support order filed on *(date)*:
The court ordered $ per month for support.
c. ☐ This request is to modify (change) spousal or partner support after entry of a judgment.
I have completed and attached *Spousal or Partner Support Declaration Attachment* (form FL-157 ) or a declaration that addresses the same factors covered in form FL-157.
d. I have completed and filed a current *Income and Expense Declaration* (form FL-150) in support of my request.
e. The court should should make, change, or end the support orders because *(specify)*: ☐ Attachment 4e.

5. ☐ PROPERTY CONTROL ☐ I request temporary emergency orders
a. The ☐ petitioner ☐ respondent ☐ other parent/party be given exclusive temporary use, possession, and control of the following property that we ☐ own or are buying ☐ lease or rent *(specify)*:

b. The ☐ petitioner ☐ respondent ☐ other parent/party be ordered to make the following payments on debts and liens coming due while the order is in effect:

Pay to: ______________ For: ______________ Amount: $ ______________ Due date: ______________
Pay to: ______________ For: ______________ Amount: $ ______________ Due date: ______________
Pay to: ______________ For: ______________ Amount: $ ______________ Due date: ______________
Pay to: ______________ For: ______________ Amount: $ ______________ Due date: ______________

c. ☐ This is a change from the current order for property control filed on *(date)*:
d. Specify in Attachment 5d the reasons why the court should make or change the property control orders.

**FL-300**

| PETITIONER: Michelle Ritter<br>RESPONDENT: Eric Schmidt<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>24SMRO0044 |
|---|---|

6. [ ] ATTORNEY'S FEES AND COSTS
I request attorney's fees and costs, which total *(specify amount):* $ . I filed the following to support my request:
   a. A current *Income and Expense Declaration* (form FL-150).
   b. A *Request for Attorney's Fees and Costs Attachment* (form FL-319) or a declaration that addresses the factors covered in that form.
   c. A *Supporting Declaration for Attorney's Fees and Costs Attachment* (form FL-158) or a declaration that addresses the factors covered in that form.

7. [ ] DOMESTIC VIOLENCE ORDER

- Do not use this form to ask for domestic violence restraining orders! Read form DV-505-INFO, *How Do I Ask for a Temporary Restraining Order,* for forms and information you need to ask for domestic violence restraining orders.
- Read form DV-400-INFO, *How to Change or End a Domestic Violence Restraining Order* for more information.

   a. The *Restraining Order After Hearing* (form DV-130) was filed on *(date):*
   b. I request that the court [ ] change [ ] end the personal conduct, stay-away, move-out orders, or other protective orders made in *Restraining Order After Hearing* (form DV-130). *(If you want to change the orders, complete 7c.)*
   c. [ ] I request that the court make the following changes to the restraining orders *(specify):* [ ] Attachment 7c.

   d. I want the court to change or end the orders because (*specify*): [ ] Attachment 7d.

8. [x] OTHER ORDERS REQUESTED *(specify):* [ ] Attachment 8.
Dismiss with prejudice the DV-110 and DV-100 filed on 12/12/24

9. [ ] TIME FOR SERVICE / TIME UNTIL HEARING I urgently need:
   a. [ ] To serve the *Request for Order* no less than (*number*): court days before the hearing.
   b. [ ] The hearing date and service of the the *Request for Order* to be sooner.
   c. I need the order because *(specify):* [ ] Attachment 9c.

10. [ ] FACTS TO SUPPORT the orders I request are listed below. The facts that I write in support and attach to this request cannot be longer than 10 pages, unless the court gives me permission. [ ] Attachment 10.

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: 17 Dec 2024.

Michelle Ritter
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF APPLICANT)

**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civ. Code, § 54.8.)



**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form | Save this form | Clear this form

# Case # 24SMRO00444 - Ritter, Michelle SvsSchmidt, Eric E ((De

## Envelope Information

**Envelope Id**
17723877

**Submitted Date**
12/24/2024 8:45 PM PST

**Submitted User Name**
ritter.sm@icloud.com

## Case Information

**Location**
Los Angeles County - Santa Monica Courthouse - Family

**Category**
Family

**Case Type**
DV Prevention w/o Minor Children

**Case Initiation Date**
12/11/2024

**Case #**
24SMRO00444

**Assigned to Judge**
(Department, SME)

## Party Information

| Party Type | Party Name | Lead Attorney |
|---|---|---|
| Petitioner | Michelle S Ritter | Pro Se |
| Respondent | Eric E Schmidt | |

## Filings

| Filing Code | Client Ref # | Filing Description |
|---|---|---|
| Application - Terminate Restrainin… | | |
| Application - Terminate Restrainin… | | Request for TRO dismissal prepare… |

Support

Filing Details

**Filing Type**
EFile

**Filing Code**
Application - Terminate Restraining Order

**Filing Description**
Request for TRO dismissal prepared by Respondent and his counsel

**Filing on Behalf of**
Michelle S Ritter

**Filing Status**
Rejected

## Lead Document

| File Name | Description | Security | Download |
|---|---|---|---|
| 2024.12.23 Pet. Michelle Riutter Request for Dismissal corrected for filing created by respondent - MR signed 3.pdf *668.38 kB* | Application - Terminate Restraining Order | FL_General Family Law | Original File |

## Rejection Information ☐

**Rejection Reason**
Duplicate document submitted for filing

**Date / Time**
12/26/2024 10:23 AM

**Comment**

## Fees

### ☐Application - Terminate Restraining Order

| Description | Amount |
|---|---|
| Filing Fee | $0.00 |
| **Filing Total:** | $0.00 |

### ☐Application - Terminate Restraining Order

| Description | Amount |
|---|---|
| Filing Fee | $0.00 |
| **Filing Total:** | $0.00 |

| | |
|---|---|
| Total Filing Fee | $0.00 |
| | **Envelope Total:** $0.00 |
| | *Waiver selected* |

| | |
|---|---|
| **Party Responsible for Fees** | Michelle S Ritter |
| **Payment Account** | Waiver Account |

© 2025 Tyler Technologies

Version: 2024.6.2.11418

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)
First Amended Complaint

# EXHIBIT 5

AAA Claimants' Appendix Ex. 8 (Apr. 6, 2026): "Orion Wing Management, LLC (fka Steel Perlot Management, LLC) — Privileged & Confidential — Payments: 12/4/2024 to 3/16/2026" (40 lines; $1,060,943.78)

# EXHIBIT 8

**Orion Wing Management, LLC (fka Steel Perlot Management, LLC)**
Payments: 12/4/2024 to 3/16/2026

***Privileged & Confidential***

| Date Paid | Payor | Ref # | Payee | Original Amount | Settled/Paid Amount | Purpose |
|---|---|---|---|---|---|---|
| 12/12/2024 | Hillspire | 1 | Alexander Paskov | n/a | $ 8,100.00 | Transition Pay to former employee |
| 12/20/2024 | OW | 2 | CGNET | $ 125,376.52 | $ 62,688.26 | IT services |
| 12/20/2024 | OW | 3 | BraunHagey & Borden LLP | $ 55,039.23 | $ 34,291.80 | Legal |
| 12/20/2024 | OW | 4 | Fragomen, Del Rey Bernsen & Loewy | $ 4,920.00 | $ 3,791.00 | Legal |
| 1/1/2025 | Hillspire | 5 | Netsuite | $ 42,323.99 | $ 42,323.99 | Accounting system license fee |
| 01/29/2025 | OW | 6 | KPMG | $ 19,497.00 | $ 19,497.00 | Tax Prep |
| 01/29/2025 | OW | 7 | Ropes & Gray | $ 12,320.00 | $ 12,320.00 | Legal |
| 01/29/2025 | OW | 8 | Pitchbook | $ 12,487.50 | $ 4,995.00 | Market Data |
| 01/29/2025 | OW | 9 | Stephen Geissler | $ 4,018.00 | $ 4,018.00 | Legal |
| 01/29/2025 | OW | 10 | HireRight | $ 298.64 | $ 298.64 | HR Background Check |
| 02/03/2025 | OW | 11 | AH Levy | $ 15,000.00 | $ 13,500.00 | Consulting |
| 2/3/2025 | OW | 12 | Oregon Employment Department | n/a | $ 436.79 | EDD |
| 2/24/2025 | Hillspire | 13 | Tyler Gwinn - Capella University Transition Pay | n/a | $ 6,139.00 | Transition pay - for tuition for former employee |
| 3/21/2025 | OWM | 14 | Fried Frank | $ 98,621.00 | $ 88,758.90 | Legal |
| 3/21/2025 | OWM | 15 | Jacks Groupe (janitor) | $ 13,590.00 | $ 10,192.50 | Janitorial |
| 3/21/2025 | OWM | 16 | Traliant Operating | $ 7,950.00 | $ 3,180.00 | HR Training |
| 6/5/2025 | OWM | 17 | FisherBroyles | $ 9,105.00 | $ 8,378.50 | Legal |
| 3/21/2025 | OWM | 18 | CSC | n/a | $ 1,795.55 | Registration Fee |
| 3/17/2025 | OWM | 19 | Franchise Tax Board | n/a | $ 800.00 | FTB Tax payment |
| 3/18/2025 | OWM | 20 | NY State | n/a | $ 25.00 | NYS Tax payment |
| 7/3/2025 | OWM | 21 | Allen Matkins Leck Gamble Mallory | n/a | $2,727.00 | Legal |
| 7/9/2025 | OWM | 22 | Linkedin | $ 11,070.00 | $5,600.00 | Subscription |
| 7/21/2025 | OWM | 23 | KPMG | n/a | $14,000.00 | Tax preparation for 2025 Tax Returns |
| 7/22/2025 | OWM | 24 | ShotQuality Inc. | $ 15,000.00 | $6,000.00 | Data |
| 7/28/2025 | OWM | 25 | MSCI/Barra LLC | $ 126,000.00 | $63,000.00 | Equity research |
| 7/31/2025 | OWM | 26 | AlgoSeek | $ 170,323.00 | $80,000.00 | Trading desk data |
| 6/26/2025 | Hillspire | 27 | Capella University - Transition Pay | n/a | $6,139.00 | Tuition reimbursement to former employee |
| 5/31/2025 | Hillspire | 28 | 1Password (Anthony Concur expense report) | n/a | $20.15 | SPM Subscription |
| 8/31/2025 | Hillspire | 29 | Kaseya (Anthony Concur Exp Report) | n/a | $468.00 | Monthly Subscription (now cancelled) |
| 4/15/2025 | Hillspire | 30 | Hristo Paskov | n/a | $144,230.00 | Transition Pay to former employee |
| 4/15/2025 | Hillspire | 31 | Spassimir Paskov | n/a | $96,153.85 | Transition Pay to former employee |
| 4/15/2025 | Hillspire | 32 | Ivan Paskov | n/a | $96,153.85 | Transition Pay to former employee |
| 10/2/2025 | Hillspire | 33 | Tyler Gwinn - Capella University (Fall 2025) | n/a | $6,139.00 | Tuition reimbursement to former employee |
| 11/7/2025 | OWM | 34 | Refinitiv/LSEG | $ 237,783.00 | $100,000.00 | Equity data provider |
| 11/12/2025 | Hillspire | 35 | IPG | n/a | $50,000.00 | IPG LA Office Landlord Final Settlement for Unpaid Rent |
| 11/12/2025 | Hillspire | 36 | Kaseya (Anthony Concur Exp Report) | n/a | $234.00 | IT Monthly subscription (now cancelled) |
| 11/12/2025 | OWM | 37 | KPMG | n/a | $57,460.00 | Tax Preparation fees for 2023 and 2024 Tax Returns |
| 10/28/2025 | OW | 38 | NY State Department of Revenue | n/a | $500.00 | NYS Tax payment |
| 11/17/2025 | OW | 39 | Indiana Department of Revenue | n/a | $270.00 | Indiana Tax payment |
| 2/5/2026 | Hillspire | 40 | Tyler Gwinn - Capella University Transition Pay | n/a | $6,319.00 | Tuition reimbursement to former employee |
| | | | Total | | **$1,060,943.78** | |

# EXHIBIT 6

AAA Claimants' Appendix Ex. 9 (Apr. 6, 2026): Written Consent of the Manager of Orion Wing Management, LLC (Dec. 19, 2024), executed by Joon Hur for Hillspire (DocuSign 7A36843B), and the Multi-Draw Loan Agreement as produced

# EXHIBIT 9

**WRITTEN CONSENT OF THE MANAGER OF ORION WING MANAGEMENT, LLC**

December 19, 2024

The undersigned, being the sole manager (the "*Manager*") of Orion Wing Management, LLC, a Delaware limited liability company (the "*Company*"), hereby adopts the following resolutions in accordance with the Second Amended and Restated Limited Liability Company Agreement of the Company dated as of December 16, 2024:

**WHEREAS**, the Company has previously made multiple loans (collectively, the "Loan") to StarX Networks, Inc., a Delaware corporation (the "Borrower"), pursuant to that certain Multi-Draw Loan Agreement dated as of March 15, 2024 by and between the Borrower, as the borrower, and the Company, as the lender;

**WHEREAS**, on November 24, 2024 (the "Effective Date"), the Borrower informed the Company that the Borrower does not have the financial wherewithal and is unable to repay the outstanding principal and any accrued but unpaid interest on the Loan; and

**WHEREAS**, the Manager has reviewed the circumstances surrounding the Borrower's inability to repay the Loan and has determined that it is in the best interests of the Company to forgive the Loan.

**NOW, THEREFORE, BE IT RESOLVED**, that the Manager hereby (i) determines that the Loan is uncollectible and deemed wholly worthless as of the Effective Date; and (ii) approves and authorizes the forgiveness of the Loan in its entirety, including all outstanding principal and any accrued interest as of the Effective Date.

**FURTHER RESOLVED**, that the books and records of the Company shall reflect the forgiveness of the Loan as appropriate, and all rights, obligations and liabilities of the Borrower with respect to the Loan shall be deemed discharged and released.

**FURTHER RESOLVED**, that the authorized persons of the Company or the Manager, as applicable, be, and each of them hereby is, authorized and empowered to take all such further action and to execute, deliver, and file all such further agreements, certificates, instruments, and documents, in the name and on behalf of the Company; to pay or cause to be paid all expenses; to take all such other actions as they or any one of them shall deem necessary, desirable, advisable, or appropriate to carry out the full intent and purposes of the foregoing resolutions.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the Manager has executed this written consent as of the date above first written.

**HILLSPIRE, LLC**, in its capacity as the sole manager of the Company

DocuSigned by:

By: Joon Hur

C5CED1DFAC8C458...

Name: Joon Hur
Title: Senior Legal Director

# EXHIBIT 14

---

## StarX Multi-Draw Loan Agreement (Executed)

**Description**

StarX Multi-Draw Loan Agreement — names Hillspire LLC as lender; states a maximum loan amount of $6,500,000.

**Status**

**ATTACHED — exhibit content follows this cover sheet.**

**Source**

[mounted]/__USE/Intent on bankrupting StarX from Feb 2024/*StarX - Multi-Draw Loan Agreement (Executed).pdf

— Cover sheet compiled 2026-04-27 —

# MULTI-DRAW LOAN AGREEMENT

**by and among**

**StarX Networks, Inc.,**

**as Borrower,**

**and**

**Steel Perlot Management, LLC,**

**as Lender**

# TABLE OF CONTENTS

**Page**


ARTICLE I THE LOANS ........ 1
Section 1.01 Term Loan Facility ........ 1
Section 1.02 Making the Loans ........ 1
Section 1.03 Repayment of Loans; Evidence of Debt ........ 2
Section 1.04 Interest ........ 2
Section 1.05 Prepayment of Loans ........ 2
Section 1.06 Apportionment of Payments ........ 2

ARTICLE II CONDITIONS TO LOANS ........ 3
Section 2.01 Conditions Precedent ........ 3

ARTICLE III REPRESENTATIONS AND WARRANTIES ........ 3
Section 3.01 Representations and Warranties ........ 3

ARTICLE IV COVENANTS OF THE BORROWER ........ 4
Section 4.01 Covenants ........ 4

ARTICLE V EVENTS OF DEFAULT ........ 5
Section 5.01 Events of Default ........ 5

ARTICLE VI MISCELLANEOUS ........ 6
Section 6.01 Notices, Etc. ........ 6
Section 6.02 Amendments, Etc. ........ 7
Section 6.03 No Waiver; Remedies, Etc. ........ 7
Section 6.04 Fees and Expenses ........ 7
Section 6.05 Severability ........ 7
Section 6.06 Counterparts ........ 8
Section 6.07 GOVERNING LAW ........ 8
Section 6.08 Jurisdiction; Court Proceedings; Waiver of Jury Trial ........ 8
Section 6.09 Consent by the Lender ........ 8
Section 6.10 No Party Deemed Drafter ........ 8
Section 6.11 Reinstatement; Certain Payments ........ 8
Section 6.12 Binding Effect ........ 9
Section 6.13 No Assignment ........ 9
Section 6.14 Interest ........ 9
Section 6.15 Entire Agreement ........ 10
Section 6.16 Headings ........ 10

ARTICLE VII DEFINITIONS; CERTAIN TERMS ........ 10
Section 7.01 Definitions ........ 10
Section 7.02 Terms Generally ........ 12

Section 7.03 Accounting and Other Terms....13
Section 7.04 Time References....13

SCHEDULES

Schedule I Issued Loans

# MULTI-DRAW LOAN AGREEMENT

## PREAMBLE

This Multi-Draw Loan Agreement, is dated as of March 15, 2024, but with effect as of December 1, 2021 (the "Effective Date"), by and between StarX Networks, Inc., a Delaware corporation (the "Borrower"), and Steel Perlot Management, LLC, a Delaware limited liability company, as the lender (the "Lender"). Capitalized terms used in this agreement shall have the meaning ascribed to such terms in Article VII.

## RECITALS

WHEREAS, the Borrower previously requested that the Lender extend credit to the Borrower for certain start-up costs, day-to-day operating expenses and general corporate purposes and the Lender previously agreed to extend such credit;

WHEREAS, following the Effective Date the Lender made certain loans to the Borrower pursuant to the forgoing extension of credit that were reflected in the books and records of the Borrower but were not otherwise subject to a written instrument among the Borrower and the Lender; and

WHEREAS, as a matter of administrative practice the Borrower and the Lender desire to enter into this agreement to memorialize a multiple-draw term loan facility on the terms and conditions set forth herein and to otherwise give effect to the agreement among the Borrower and the Lender regarding the foregoing extension of credit as well as to formally document the loans that have been made by the Lender to the Borrower since the Effective Date on Schedule I attached hereto.

NOW THEREFORE, in consideration of the premises and the covenants and agreements contained herein, the parties hereto agree as follows:

## ARTICLE I

## THE LOANS

Section 1.01 Term Loan Facility.

(a) Subject to the terms and conditions and relying upon the representations and warranties herein, at the request of the Borrower, the Lender has established, as of the Effective Date, a delayed draw term loan facility (a portion of which shall be deemed drawn in the amounts set forth on Schedule I hereto), in an aggregate principal amount not to exceed the Maximum Loan Amount, with respect to the Borrower, which shall be governed by the terms of this Agreement.

(b) No principal amount of the Loans which is repaid or prepaid may be reborrowed.

Section 1.02 Making the Loans.

(a) In order to obtain a Loan, the Borrower shall give the Lender prior written notice (a "Borrowing Request") on the date which is at least five (5) Business Days prior to the date of the proposed Loan (or such shorter period as the Lender is willing to accommodate in its discretion from time to time). Such Borrowing Request shall specify (i) the principal amount of the proposed Loan, (ii) the proposed use of proceeds and (iii) the proposed borrowing date. Upon fulfillment of the applicable conditions set forth in Article II, the Lender shall make such Loans available to the Borrower by wire transfer of same day funds, to the account (or accounts) specified in advance by the Borrower.

(b) No Borrowing Request may be made following the Final Maturity Date.

(c) The Loans issued to the Borrower between the Effective Date and the date of this Agreement are listed on Schedule I attached hereto.

Section 1.03 Repayment of Loans; Evidence of Debt. The outstanding principal amount of the Loans and accrued interest thereon not repaid on or prior to such date shall be repaid in full on or before the Final Maturity Date.

Section 1.04 Interest.

(a) Loans. Subject to Section 1.04(b), each Loan shall bear interest on the outstanding principal amount thereof (including any accrued interest that accreted to principal pursuant to this Section 1.04(a)), from the date such Loan is (or was) made until such principal amount is repaid in full, at a rate equal to the then-applicable "applicable federal rate" as determined for U.S. federal income tax purposes, accruing daily and compounded annually, which interest shall be paid by adding the amount thereof to the outstanding principal amount of the Loans.

(b) Default Interest. To the extent permitted by law, upon the occurrence and during the continuance of an Event of Default, the principal of (including any accrued interest that accreted to principal pursuant to Section 1.04(a)), all Loans or any other Obligations of the Borrower under this Agreement, shall bear interest, from the date such Event of Default occurred until the date such Event of Default is cured or waived in writing in accordance herewith, at a rate per annum equal at all times to the Post-Default Rate, which interest shall be paid by adding the amount thereof to the outstanding principal amount of the Loans.

(c) General. All interest shall be computed on the basis of a year of 360 days for the actual number of days, including the first day but excluding the last day, elapsed.

Section 1.05 Prepayment of Loans. The Borrower may, upon at least one (1) Business Day's prior written notice to the Lender, prepay without penalty or premium the outstanding principal amount of the Loans, in part or in full.

Section 1.06 Apportionment of Payments. Subject to the provisions of this Agreement, the Lender may apply any payments in respect of any Obligations under this Agreement, including after the occurrence and during the continuance of an Event of Default,

(i)first, ratably to pay the Obligations in respect of any fees, expense reimbursements, indemnities and other amounts (other than in respect of principal and interest) then due to the Lender until paid in full; (ii) second, ratably to pay interest due in respect of the Loans until paid in full, (iii) third, ratably to pay the principal of the Loans until paid in full, and (iv) fourth, to the ratable payment of all other Obligations then due and payable.

## ARTICLE II

## CONDITIONS TO LOANS

Section 2.01 Conditions Precedent. The Lender shall not be obligated to make any Loans hereunder until the first Business Day after the date when each of the following conditions precedent shall have been satisfied or waived, with respect to each such Loan:

(a) Representations and Warranties; No Event of Default. The following statements shall be true and correct: (i) the representations and warranties contained in Article III are true and correct on and as of the date of this Agreement (in the case of the initial Loan) or the date any subsequent Loan is made (in the case of any Loan made subsequent to the initial Loan) as though made on and as of such date and (ii) no Default or Event of Default shall have occurred and be continuing on the date of this Agreement (in the case of the initial Loan) or the date any subsequent Loan is made (in the case of any Loan made subsequent to the initial Loan) or would result from this Agreement becoming effective in accordance with its terms or the making of any Loans hereunder on the applicable date such Loan is made.

(b) Legality. The making of any Loan shall not contravene any applicable law, rule or regulation applicable to the Lender.

(c) Satisfaction of Conditions. The conditions set forth in this Section 2.01 with respect to any Loan on Schedule I made on or prior to the date hereof shall be deemed to have been satisfied as of the date such Loan was made.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

Section 3.01 Representations and Warranties. The Borrower hereby represents and warrants to the Lender as follows:

(a) Organization, Good Standing, Etc. The Borrower (i) is a corporation duly organized, validly existing and in good standing under the laws of the state or jurisdiction of its organization, (ii) has all requisite power and authority to conduct its business as now conducted and as presently contemplated and to make the borrowings hereunder, and to execute and deliver this Agreement, and to consummate the transactions contemplated thereby, and (iii) is duly qualified to do business and is in good standing in each jurisdiction in which the character of the properties owned or leased by it or in which the transaction of its business makes such qualification necessary.

(b) Authorization, Etc. The execution, delivery and performance by the Borrower of this Agreement, (i) has been duly authorized by all necessary action, (ii) does and will not contravene the Borrower's charter or by-laws, its limited liability company or operating agreement or its certificate of partnership or partnership agreement, as applicable, or any applicable law or any contractual restriction binding on or otherwise affecting it or any of its properties, (iii) does not and will not result in or require the creation of any Lien (other than pursuant to this Agreement) upon or with respect to any of its properties, and (iv) does not and will not result in, with the giving of notice or the lapse of time or both, any default, noncompliance, suspension, revocation, impairment, forfeiture or nonrenewal of any permit, license, authorization or approval applicable to its operations or any of its properties, in each case that would have a material adverse effect on the Borrower's ability to repay the Loans.

(c) Governmental Approvals. No authorization or approval or other action by, and no notice to or filing with, any Governmental Authority is required in connection with the due execution, delivery and performance by the Borrower of this Agreement other than such authorizations, approvals, actions, notices and filings as have already been obtained.

(d) Compliance with Laws. Borrower s not in conflict with, in default of, or, with notice, lapse of time or both, would be in default of, any order, judgment, writ, decree, or injunction issued by any court, agency, or other Governmental Authority applicable to Borrower or by which any property or asset of Borrower is bound or affected.

(e) Intellectual Property. All intellectual property, patents, trademarks, copyrights, technology know-how and processes (collectively, "Intellectual Property") necessary to the business of Borrower as presently conducted are, to the extent of Borrower's actual knowledge, uncontested. To Borrower's actual knowledge, there is no infringement by any third party on any rights of Borrower in any of its Intellectual Property.

(f) No Material Litigation. No litigation, investigation or proceeding of or before any arbitrator or Governmental Authority is pending or, to the knowledge of the Borrower, threatened by or against the Borrower or against any of its properties or revenues.

(g) No Default. No Default or Event of Default has occurred and is continuing and no condition exists which, with the giving of notice or the lapse of time or both, constitutes a Default or an Event of Default.

(h) Solvency. After give effect to the transactions contemplated by this Agreement and before and after giving effect to each Loan issued on or prior to the date this representation and warranty is made or remade, the Borrower is solvent.

## ARTICLE IV

## COVENANTS OF THE BORROWER

Section 4.01 Covenants. So long as any principal amount of any Loan, any interest thereon or any other Obligation shall remain unpaid, the Borrower shall not, unless the Lender shall otherwise consent in writing:

(a) Fundamental Changes. Wind-up, liquidate or dissolve, or merge, consolidate or amalgamate with any Person, or convey, sell, lease or sublease, transfer or otherwise dispose of, whether in one transaction or a series of related transactions, all or any part of its business, property or assets, whether now owned or hereafter acquired, or purchase or otherwise acquire, whether in one transaction or a series of related transactions, all or any of the assets of any Person.

(b) Transactions with Affiliates. Enter into, renew, extend or be a party to any transaction or series of related transactions (including the purchase, sale, lease, transfer or exchange of property or assets of any kind or the rendering of services of any kind) with any Affiliate, except for fair consideration and on terms no less favorable to it than would be obtainable in a comparable arm's length transaction with a Person that is not an Affiliate thereof.

## ARTICLE V

## EVENTS OF DEFAULT

Section 5.01 Events of Default. If any of the following Events of Default shall occur:

(a) the Borrower shall fail to pay any principal of or interest on any Loan;

(b) any representation or warranty made by or on behalf of the Borrower under or in connection with this Agreement shall have been incorrect in any material respect when made;

(c) the Borrower shall fail to perform or comply with any other term, covenant or agreement contained in this Agreement to be performed or observed by it;

(d) the Borrower sells or disposes of all or substantially all of its assets or merges or consolidates with and/or into any other person or entity;

(e) there occurs the entry of any judgment against the Borrower, or attachment by trustee process, or otherwise, of all or substantially all of the property, real or personal, of the Borrower that would reasonably be expected to have a material adverse effect on the Borrower;

(f) any loss of material licenses or material permits necessary for the operation of the business of the Borrower and would reasonably be expected to have a material adverse effect on the Borrower;

(g) the Borrower (i) shall institute any proceeding or voluntary case seeking to adjudicate it a bankrupt or insolvent, or seeking dissolution, liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar

official for any such Person or for any substantial part of its property, (ii) shall make a general assignment for the benefit of creditors, or (iii) shall take any action to authorize or effect any of the actions set forth in this Section 5.01(g); or

(h) any proceeding shall be instituted against the Borrower seeking to adjudicate it a bankrupt or insolvent, or seeking dissolution, liquidation, winding up, reorganization, arrangement, adjustment, protection, relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for any such Person or for any substantial part of its property, and either such proceeding shall remain undismissed or unstayed for a period of 30 days or any of the actions sought in such proceeding (including the entry of an order for relief against any such Person or the appointment of a receiver, trustee, custodian or other similar official for it or for any substantial part of its property) shall occur;

then, and in any such event, the Lender may, by notice to the Borrower, (i) declare all or any portion of the Loans then outstanding to be immediately due and payable, whereupon all or such portion of the aggregate principal of all Loans, all accrued and unpaid interest thereon, all fees and all other amounts payable under this Agreement shall become due and payable immediately, in each case, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower and (ii) exercise any and all of its other rights and remedies under applicable law, hereunder; provided, that upon the occurrence of any Event of Default described in Section 5.01(g) or Section 5.01(h), without any notice to the Borrower or any other Person or any act by the Lender, all Loans then outstanding, together with all accrued and unpaid interest thereon, all fees and all other amounts due under this Agreement shall become due and payable automatically and immediately, without presentment, demand, protest or notice of any kind, all of which are expressly waived by the Borrower.

## ARTICLE VI

## MISCELLANEOUS

Section 6.01 Notices, Etc. All notices, consents, requests, approvals, demands, or other communication by any party to this Agreement must be in writing and shall be deemed to have been validly served, given, or delivered: (a) upon the earlier of actual receipt and three (3) Business Days after deposit in the U.S. mail, first class, registered or certified mail return receipt requested, with proper postage prepaid; (b) upon transmission, when sent by electronic mail or facsimile transmission; (c) one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid; or (d) when delivered, if hand-delivered by messenger, all of which shall be addressed to the party to be notified and sent to the address, facsimile number, or email address indicated below. Lender or Borrower may change its mailing or electronic mail address or facsimile number by giving the other party or parties written notice thereof in accordance with the terms of this Section 6.01.

If to the Borrower:

StarX Networks, Inc.
Zero Bond Street, 4th Floor

New York, NY 10012
Attention: Michelle Ritter, CEO
Telephone: (213) 255-5617
Email: mritter@starx.com

with copy to (which shall not constitute notice hereunder):

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
Attention: Lawrence Barshay
Lawrence Natke
Fax: (212) 859-4000
Email: lawrence.barshay@friedfrank.com
lawrence.natke@friedfrank.com

if to the Lender, to it at the following address:

Steel Perlot Management, LLC
Zero Bond Street, 4th Floor
New York, NY 10012
Attention: Michelle Ritter, CEO
Telephone: (917) 200-0338
Email: mritter@starx.com

Section 6.02 Amendments, Etc. No amendment or waiver of any provision of this Agreement, shall in any event be effective unless the same shall be in writing and signed by the Lender and the Borrower or, in the case of a waiver, by the party against whom the waiver is to be effective, and then such waiver shall be effective only in the specific instance and for the specific purpose for which given.

Section 6.03 No Waiver; Remedies, Etc. No failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of the Lender provided herein are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law.

Section 6.04 Fees and Expenses. Except as otherwise expressly provided in this Agreement, all costs and expenses incurred in connection with this Agreement shall be borne by the party incurring such costs and expenses.

Section 6.05 Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 6.06 Counterparts. This Agreement may be executed and delivered (including by e-mail or other electronic transmission) in one or more counterparts, and by the different parties to this Agreement in separate counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same Agreement.

Section 6.07 GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY PRINCIPAL OR LAW THEREOF THAT WOULD RESULT IN THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.

Section 6.08 Jurisdiction; Court Proceedings; Waiver of Jury Trial. Any litigation against any party to this Agreement arising out of or in any way relating to this Agreement shall be brought in any federal or state court located in the State of New York in New York County and each of the parties hereby submits to the exclusive jurisdiction of such courts for the purpose of any such litigation; provided, that a final judgment in any such litigation shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. **Each party hereto irrevocably and unconditionally agrees not to assert (a) any objection which it may ever have to the laying of venue of any such litigation in any federal or state court located in the State of New York in New York County, (b) any claim that any such litigation brought in any such court has been brought in an inconvenient forum and (c) any claim that such court does not have jurisdiction with respect to such litigation.** To the extent that service of process by mail is permitted by applicable law, each party irrevocably consents to the service of process in any such litigation in such courts by the mailing of such process by registered or certified mail, postage prepaid, at its address for notices as set forth in Section 6.01. **Each party hereto irrevocably and unconditionally waives, to the fullest extent permitted by law, any right to a trial by jury and agrees that any of them may file a copy of this paragraph with any court as written evidence of the knowing, voluntary and bargained-for agreement among the parties irrevocably to waive its right to trial by jury in any litigation.**

Section 6.09 Consent by the Lender. Except as otherwise expressly set forth herein to the contrary, if the consent, approval, satisfaction, determination, judgment, acceptance or similar action (an "Action") of the Lender shall be permitted or required pursuant to any provision of this Agreement, such Action shall be required to be in writing.

Section 6.10 No Party Deemed Drafter. Each of the parties hereto agrees that no party hereto shall be deemed to be the drafter of this Agreement.

Section 6.11 Reinstatement; Certain Payments. If any claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment or on account of any of the Obligations, the Lender shall give prompt notice of such claim to the Borrower, and if the Lender repays all or part of such amount by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (ii) any good faith settlement or compromise of any such claim effected by the Lender with any such claimant, then and in such event the Borrower agrees that

(A) any such judgment, decree, order, settlement or compromise shall be binding upon it notwithstanding the cancellation of any Indebtedness hereunder or the termination of this Agreement, and (B) it shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

Section 6.12 Binding Effect. This Agreement shall become effective when it shall have been executed by the Borrower and the Lender and thereafter shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns.

Section 6.13 No Assignment. This Agreement and each party's respective rights and obligations shall not be directly or indirectly transferred or assigned, by operation of law or otherwise, without the prior written consent of the Borrower (in the case of a proposed assignment by the Lender) or the Lender (in the case of a proposed assignment by the Borrower); provided, that Lender may assign this Agreement to any Affiliate without the prior written consent of the Borrower. Borrower shall maintain a register of the Lender-of-record and the beneficiary of any Obligations, including as a result of any permitted assignment, on its books and records.

Section 6.14 Interest. It is the intention of the parties hereto that the Lender shall conform strictly to usury laws applicable to it. Accordingly, if the transactions contemplated hereby would be usurious as to the Lender under laws applicable to it (including the laws of the United States of America and the State of New York or any other jurisdiction whose laws may be mandatorily applicable to the Lender notwithstanding the other provisions of this Agreement), then, in that event, notwithstanding anything to the contrary in this Agreement or any agreement entered into in connection with or as security for the Obligations, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under law applicable to the Lender that is contracted for, taken, reserved, charged or received by the Lender under this Agreement or agreements or otherwise in connection with the Obligations shall under no circumstances exceed the maximum amount allowed by such applicable law, any excess shall be canceled automatically and if theretofore paid shall be credited by the Lender on the principal amount of the Obligations (or, to the extent that the principal amount of the Obligations shall have been or would thereby be paid in full, refunded by the Lender, as applicable, to the Borrower); and (ii) in the event that the maturity of the Obligations is accelerated by reason of any Event of Default under this Agreement or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest under law applicable to the Lender may never include more than the maximum amount allowed by such applicable law, and excess interest, if any, provided for in this Agreement or otherwise shall be canceled automatically by the Lender, as applicable, as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited by the Lender, as applicable, on the principal amount of the Obligations (or, to the extent that the principal amount of the Obligations shall have been or would thereby be paid in full, refunded by the Lender to the Borrower). All sums paid or agreed to be paid to the Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by law applicable to the Lender, be amortized, prorated, allocated and spread throughout the full term of the Loans until payment in full so that the rate or amount of interest on account of any Loans hereunder does not exceed the maximum amount allowed by such

applicable law. If at any time and from time to time (x) the amount of interest payable to the Lender on any date shall be computed at the Highest Lawful Rate applicable to the Lender pursuant to this Section 6.144 and (y) in respect of any subsequent interest computation period the amount of interest otherwise payable to the Lender would be less than the amount of interest payable to the Lender computed at the Highest Lawful Rate applicable to the Lender, then the amount of interest payable to the Lender in respect of such subsequent interest computation period shall continue to be computed at the Highest Lawful Rate applicable to the Lender until the total amount of interest payable to the Lender shall equal the total amount of interest which would have been payable to the Lender if the total amount of interest had been computed without giving effect to this Section 6.144.

For purposes of this Section 6.144, the term "applicable law" shall mean that law in effect from time to time and applicable to the loan transaction between the Borrower, on the one hand, and the Lender, on the other, that lawfully permits the charging and collection of the highest permissible, lawful non-usurious rate of interest on such loan transaction and this Agreement, including laws of the State of New York and, to the extent controlling, laws of the United States of America.

The right to accelerate the maturity of the Obligations does not include the right to accelerate any interest that has not accrued as of the date of acceleration.

Section 6.15 Entire Agreement. This Agreement reflects the entire understanding of the parties with respect to the transactions contemplated hereby and supersedes any and all existing agreements, oral or written with respect to the transactions contemplated hereby.

Section 6.16 Headings. The descriptive headings contained in this Agreement are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

## ARTICLE VII

## DEFINITIONS; CERTAIN TERMS

Section 7.01 Definitions. As used in this Agreement, the following terms have the meanings set forth below:

"Action" has the meaning specified therefor in Section 6.0909.

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person. The term "control" as used herein (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct the management or policies (or have the ability to exercise approval rights over certain fundamental matters) of such Person by contract or otherwise.

"Agreement" means this Multi-Draw Loan Agreement, including all amendments, modifications and supplements and any exhibits or schedules to any of the foregoing, and shall refer to the Agreement as the same may be in effect at the time such reference becomes operative.

"Bankruptcy Code" means the United States Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended, and any successor statute.

"Borrower" has the meaning specified therefor in the Preamble hereto.

"Borrowing Request" has the meaning specified therefor in Section 1.02(a).

"Business Day" means any day other than a Saturday, Sunday or day on which banks are closed in New York, New York. If any period expires on a day which is not a Business Day or any event or condition is required by the terms of this Agreement to occur or be fulfilled on a day which is not a Business Day, such period shall expire or such event or condition shall occur or be fulfilled, as the case may be, on the next succeeding Business Day.

"Capitalized Lease" means, with respect to any Person, any lease of real or personal property by such Person as lessee which is (i) required under GAAP to be capitalized on the balance sheet of such Person or (ii) a transaction of a type commonly known as a "synthetic lease" (*i.e.*, a lease transaction that is treated as an operating lease for accounting purposes but with respect to which payments of rent are intended to be treated as payments of principal and interest on a loan for federal income tax purposes).

"Default" means a condition or event which, with the giving of notice or the lapse of time or both, would constitute an Event of Default.

"Effective Date" has the meaning specified therefor in the Preamble hereto.

"Event of Default" means any of the conditions or events set forth in Section 5.01.

"Final Maturity Date" means December 31, 2025.

"GAAP" means generally accepted accounting principles in effect from time to time in the United States, applied on a consistent basis.

"Governmental Authority" means any nation or government, any foreign or domestic federal, state, county, municipal or other political instrumentality or subdivision thereof and any foreign or domestic entity or body exercising executive, legislative, judicial, regulatory, administrative or taxing functions of or pertaining to government, including any court.

"Highest Lawful Rate" means, with respect to the Lender, the maximum non-usurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the Obligations under laws applicable to the Lender which are currently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable laws now allow.

"Indebtedness" means, with respect to any Person, without duplication, (i) all indebtedness of such Person for borrowed money; (ii) all obligations of such Person for the deferred purchase price of property or services (other than trade payables or other accounts payable incurred in the ordinary course of such Person's business); and (iii) all obligations of such Person evidenced by bonds, debentures, notes or other similar instruments or upon which interest payments are customarily made.

"Intellectual Property" has the meaning specified therefor in Section 3.01(e).

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended (or any successor statute thereto) and the regulations thereunder.

"Lender" has the meaning specified therefor in the Preamble hereto.

"Lien" means any mortgage, deed of trust, pledge, lien (statutory or otherwise), security interest, charge or other encumbrance or security or preferential arrangement of any nature, including any conditional sale or title retention arrangement, any Capitalized Lease and any assignment, deposit arrangement or financing lease intended as, or having the effect of, security.

"Loan" means any loan made by the Lender to the Borrower pursuant to Article I.

"Maximum Loan Amount" means $6,500,000.

"Obligations" means the outstanding principal amount of the Loans and all interest thereon and all other liabilities of the Borrower to the Lender in respect of this Agreement.

"Person" means any individual, person, entity, general partnership, limited partnership, limited liability partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, foreign trust or foreign business organization and the heirs, executors, administrators, legal representatives, successors and assigns of the "Person" when the context so permits.

"Post-Default Rate" means a rate of interest per annum equal to the rate of interest otherwise in effect from time to time pursuant to the terms of this Agreement *plus* 5%.

"Uniform Commercial Code" has the meaning specified therefor in Section 7.03.

Section 7.02 Terms Generally. Unless the express context otherwise requires:

(a) Common nouns and pronouns and any variations thereof shall be deemed to refer to masculine, feminine, or neuter, singular or plural, as the identity of the Person, Persons or other reference in the context requires.

(b) Any reference to the Internal Revenue Code or other statutes or laws, forms agreements, instruments or other document shall include the amendments,

modifications, or replacements thereof (subject to any restrictions on such amendments, supplements or modifications set forth herein);

(c) the words "hereof," "herein," and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement;

(d) the terms defined in the singular have a comparable meaning when used in the plural, and vice versa;

(e) whenever used herein, "or" shall include both the conjunctive and disjunctive and "any" shall mean "one or more;"

(f) the terms "Dollars" and "$" mean United States Dollars;

(g) references herein to a specific Section, Article, Clause, Exhibit or Schedule shall refer, respectively, to Sections, Articles, Clauses, Exhibits or Schedules;

(h) wherever the word, "include," "includes," or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation";

(i) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any right or interest in or to assets and properties of any kind whatsoever, whether real, personal or mixed and whether tangible or intangible;

(j) the phrase "to the extent" means the extent to which something extends or exists, and not simply "if;" and

(k) references in this Agreement to "determination" by the Lender include good faith estimates by the Lender (in the case of quantitative determinations) and good faith beliefs by the Lender (in the case of qualitative determinations).

Section 7.03 Accounting and Other Terms. Unless otherwise expressly provided herein, each accounting term used herein shall have the meaning given it under GAAP. All terms used in this Agreement and which are not otherwise defined in this Agreement, unless otherwise indicated, shall have the meaning provided by the Uniform Commercial Code as in effect from time to time in the State of New York (the "Uniform Commercial Code") to the extent such terms are defined therein.

Section 7.04 Time References. Unless otherwise indicated herein, all references to time of day refer to Eastern Standard Time or Eastern daylight saving time, as in effect in New York, New York on such day. For purposes of the computation of a period of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; provided, however, that with respect to a computation of fees or interest payable to the Lender, such period shall in any event consist of at least one full day.

[*signature pages follow*]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:

STARX NETWORKS, INC.

DocuSigned by:

By: Michelle Ritter

C1AC1D128ACB45A...

Name: Michelle Ritter
Title: Chief Executive Officer

LENDER:

Steel Perlot Management, LLC

DocuSigned by:

By: Michelle Ritter

Name: Michelle Ritter
Title: Chief Executive Officer

Schedule I

**Issued Loans**

| December 2021 | January 2022 | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **$10,080.00** | **$164,728.31** | **$73,022.72** | **$308,620.17** | **$160,783.28** | **$233,874.10** | **$126,663.68** | **$106,223.63** | **$272,367.41** | **$135,968.92** | **$130,151.56** | **$111,004.18** | **$98,122.26** |

| January 2023 | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **$100,402.01** | **$26,863.41** | **$48,774.82** | **$48,890.62** | **$48,795.39** | **$333,456.85** | **$206,215.21** | **$188,866.80** | **$198,290.16** | **$215,858.47** | **$363,619.50** | **$663,466.12** |

| January 2024 | February 2024 | March 2024 | April 2024 |
|---|---|---|---|
| **$210,914.55** | **$481,186.63** | **$351,750.24** | **$872,668.23** |

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)

First Amended Complaint

# EXHIBIT 7

KPMG Tax Compliance Information Request, FY2023 (SPM / StarX / Knox), including Fed. Request, State Request, KPMG Request, Knox, and Tracker sheets

# EXHIBIT 19

---

## SPM / Audem Tax-Compliance and Employment Records

**Description**

SPM/Audem tax-compliance and employment/engagement records pre- and post-December 2024 (KPMG Tax Compliance Information Request workbook).

**Status**

**ATTACHED — exhibit content follows this cover sheet.**

**Source**

[mounted]/__USE/2024-06 - Tax fraud + liability shifting/Tax Compliance information request(SPM) - NEW.xlsx

— Cover sheet compiled 2026-04-27 —

| | | |
|---|---|---|
| 10101 - Knox Checking 1123 | $561,473.99 | |
| 11502 - Bill.com Money Out Clearing - Knox | $4,395.00 | |
| 12103 - Other Receivable | $24,000.00 | |
| 15006 - Capitalized Labor | $5,382,251.09 | |
| 21000 - Accounts Payable | ($7,759.00) | |
| 22201 - Intercompany Payable | ($20,551.44) | |
| Ramp Card - Knox Networks, Inc. - Ramp Card - Knox Networks, Inc. | ($9,607.46) | |
| 21202 - Accrued Expenses | ($325,936.56) | |
| 21254 - Accrued Payroll | ($21,875.00) | |
| 21255 - Accrued Vacation | ($79,858.75) | |
| 25001 - Income Taxes Payable | $21,350.85 | |
| 26102 - Promissory Note | ($381,262.83) | |
| 26103 - Promissory Note Accrued Interest | ($13,397.75) | |
| 31101 - Preferred Member Contributions | ($13,945,000.00) | |
| 32000 - Common Stock | ($84,647.66) | |
| Retained Earnings | $4,518,365.70 | ties to last year ending |
| 43001 - Sales | (20,000) | |
| 60101 - Salaries | 3,898,461 | |
| 60103 - Stock Comp/Grants | 20,036 | |
| 60104 - Employee Bonus | 43,750 | |
| 60105 - Employee Bonus Accrual | 21,875 | |
| 60106 - Discretionary Benefits - Taxable | 2,304 | |
| 60108 - Home Office Equipment | 3,623 | |
| 60201 - Health Care | 236,381 | |
| 60301 - 401k Match | 58,365 | |
| 60302 - Payroll Processing Fee | 9,169 | |
| 60401 - Vacation/Sick Expense | (50,775) | |
| 60402 - Vacation Expense Accrual | 79,859 | |
| 60501 - Other Benefits | 11,066 | |
| 60502 - FICA/MED | (1,746) | |
| 60504 - State | 1,600 | |
| 60505 - Local | 187,284 | |
| 60507 - Workers Compensation | 9,750 | |
| 60508 - Capitalization of Labor | (2,040,961) | |
| 61103 - Tax | 48,090 | |
| 61201 - Legal Fees | 532,735 | |
| 61203 - Immigration | 5,010 | |
| 61204 - Due Diligence and Fundraising | 4,519 | |
| 61205 - Trademarks, Patents, and IP | 3,840 | |
| 61206 - Litigation | 1,006,968 | |
| 61301 - Consulting Fees - Engineering | 110,520 | |
| 61302 - Consulting Fees - Other | 1,000 | |
| 62001 - Meals - In Office/Non Travel | 1,923 | |
| 62004 - Education & Training | 688 | |
| 62005 - Dues & Subscriptions | 5,000 | |
| 62101 - Company Meetings | 1,401 | |
| 62201 - Employee Cell Phone & Internet | (241) | |
| 62202 - Postage & Freight | 124 | |

| | |
|---|---|
| 64006 - Office Supplies | 9 |
| 64050 - Other Office Expense | 7,018 |
| 64101 - Licenses & Permits | 1,779 |
| 65123 - Freight/Shipping for Equipment/Software | 328 |
| 65201 - Computer Equipment - Hardware | (909) |
| 65202 - Computer Equipment - Software | 47,709 |
| 65203 - Tech Software Service | 101,544 |
| 65204 - Cloud Computing Services | 11,985 |
| 66001 - Airfare | 18,244 |
| 66002 - Lodging & Accomodations | 31,916 |
| 66003 - Travel Registration & Conference Fees | 3,293 |
| 66004 - Ground Transportation | 10,693 |
| 66007 - Meals & Ent - While Traveling | 2,639 |
| 67001 - Bank Fees | 410 |
| 68001 - Outreach & Marketing | 3,500 |
| 71200 - Other Non-Operating Income | (60,000) |
| 80120 - State and Local Income Tax | 1,061 |
| 80200 - Interest Expense | 5,735 |
| 80420 - Realized Gain/Loss | (510) |
| | **4,378,060** |

Open items
174 information

###

| | | |
|---|---|---|
| 14003 - Software | $19,053.10 | $1,267,308.95 |
| 19101 - Intangible Assets | $162,000.00 | |
| 21000 - Accounts Payable | ($1,013,743.29) | |
| 21101 - Corporate Card | ($6,032.06) | |
| Retained Earnings | $108,309.95 | |
| 60101 - Salaries | $828,345.18 | |
| 60106 - Discretionary Benefits - Taxable | $600.00 | |
| 60108 - Home Office Equipment | $1,270.37 | |
| 60201 - Health Care | $60,472.95 | |
| 60301 - 401k Match | $20,191.07 | |
| 60302 - Payroll Processing Fee | $4,609.83 | |
| 60401 - Vacation/Sick Expense | $16,310.98 | |
| 60402 - Vacation Expense Accrual | $39,484.57 | |
| 60501 - Other Benefits | $2,780.92 | |
| 60502 - FICA/MED | $56,672.67 | |
| 60503 - FUTA | $451.62 | |
| 60504 - State | $5,406.06 | |
| 60505 - Local | $41.50 | |
| 60507 - Workers Compensation | $4,158.91 | |
| 61103 - Tax | $15,750.00 | |
| 61201 - Legal Fees | $22,416.64 | |
| 61202 - Contract Review + Authoring | $2,541.00 | |
| 61207 - Entity Formation and Equity Structuring | $86,678.50 | |
| 61301 - Consulting Fees - Engineering | $656,985.00 | |
| 61302 - Consulting Fees - Other | $62,500.00 | |
| 62001 - Meals - In Office/Non Travel | $1,687.57 | |
| 62005 - Dues & Subscriptions | $178.07 | |
| 62101 - Company Meetings | $1,102.78 | |
| 62204 - Website Fees | $2,375.00 | |
| 64006 - Office Supplies | $445.30 | |
| 64050 - Other Office Expense | $663.25 | |
| 64101 - Licenses & Permits | $177.20 | |
| 65123 - Freight/Shipping for Equipment/Software | $1,306.70 | |
| 65202 - Computer Equipment - Software | $19,796.41 | |
| 65203 - Tech Software Service | $10,079.78 | |

| | |
|---|---|
| 66001 - Airfare | $23,722.99 |
| 66002 - Lodging & Accomodations | $30,295.05 |
| 66003 - Travel Registration & Conference Fees | $7,015.40 |
| 66004 - Ground Transportation | $2,599.44 |
| 66007 - Meals & Ent - While Traveling | $6,697.77 |
| 66101 - Other T&E | $214.31 |
| 68007 - Events & Sponsorship | $1,696.46 |

| | | |
|---|---|---|
| | | $0.00 |
| 10001 - SPM Checking 4631 | $2,985,522.22 | |
| 10002 - SPM CD Collateral | $1,145,000.00 | |
| 12000 - Accounts Receivable | $23,805.83 | |
| 12201 - Intercompany Receivable | $20,551.44 | |
| 12111 - Investment In Keeta | $17,086,328.33 | |
| 12112 - Investment In Convergence Labs | $1,670,530.00 | |
| 12113 - Investment In Tristero | $2,300,497.88 | |
| 12114 - Investment In TBD Capital Management | $153,675.77 | |
| 12115 - Investment in Hachi, Corp. | $307,778.09 | |
| 12150 - Trading Accounts | $2,000.00 | |
| 14002 - Insurance | $13,338.56 | |
| 14003 - Software | $144,538.14 | |
| 14005 - Other | $3,492.69 | |
| 14101 - Deposits | $290,058.29 | |
| 15001 - Computer Equipment | $38,276.82 | FA roll |
| 15004 - Leasehold Improvements | $32,776.00 | |
| 15006 - Capitalized Labor | $6,787,807.66 | |
| 16001 - Accumulated Depreciation - Computer Equipment | ($17,011.99) | |
| 16004 - Accumulated Depreciation - Leasehold Improvements | ($8,193.96) | |
| 19101 - Intangible Assets | $283,084.49 | |
| 19601 - Notes Receivable | $2,151,460.81 | |
| 19602 - Notes Receivable Accrued Interest | $33,951.82 | |
| 21000 - Accounts Payable | ($514,634.51) | |
| 21001 - Ramp Card - Steel Perlot Management, LLC | ($40,030.67) | |
| 21202 - Accrued Expenses | ($56,034.72) | |
| 21254 - Accrued Payroll | ($1,219,374.39) | |
| 21255 - Accrued Vacation | ($653,963.66) | |
| 26001 - Other Current Liabilities | ($500.00) | |
| 26101 - Deferred Rent | ($208,974.58) | |
| 27102 - Promissory Note Accrued Interest | ($2,568,528.71) | |
| 31101 - Preferred Member Contributions | ($87,904,000.00) | |
| Retained Earnings | $32,842,057.66 | |
| 41001 - Interest Earned | ($33,951.82) | |
| 43001 - Sales | ($23,805.83) | |

| | |
|---|---|
| 50101 - Guranteed Payments | $999,999.96 |
| 50201 - Preferred Member Interest | $2,036,685.35 |
| 60101 - Salaries | $11,447,713.95 |
| 60102 - Severance | $931,037.74 |
| 60104 - Employee Bonus | $1,290,787.78 |
| 60105 - Employee Bonus Accrual | $1,209,014.00 |
| 60106 - Discretionary Benefits - Taxable | $60,485.76 |
| 60107 - Discretionary Benefits - Non Taxable | $13,857.80 |
| 60108 - Home Office Equipment | $8,306.00 |
| 60201 - Health Care | $630,085.56 |
| 60301 - 401k Match | $186,882.24 |
| 60302 - Payroll Processing Fee | $14,989.07 |
| 60401 - Vacation/Sick Expense | ($144,225.15) |
| 60402 - Vacation Expense Accrual | $653,963.66 |
| 60501 - Other Benefits | $13,087.62 |
| 60502 - FICA/MED | $820,717.38 |
| 60503 - FUTA | $5,605.30 |
| 60504 - State | $58,714.57 |
| 60505 - Local | $27,012.81 |
| 60506 - Payroll Tax Legacy | ($241,154.88) |
| 60507 - Workers Compensation | $60,732.43 |
| 60508 - Capitalization of Labor | ($914,024.17) |
| 61001 - Contractors & Temps | $60,271.88 |
| 61103 - Tax | $52,695.00 |
| 61104 - Compliance | $2,210.00 |
| 61105 - HR | $400.00 |
| 61106 - IT | $240,080.36 |
| 61201 - Legal Fees | $714,361.50 |
| 61202 - Contract Review + Authoring | $65,741.50 |
| 61203 - Immigration | $10,994.26 |
| 61205 - Trademarks, Patents, and IP | $39,655.00 |
| 61206 - Litigation | $19,578.75 |
| 61207 - Entity Formation and Equity Structuring | $200,245.69 |
| 61301 - Consulting Fees - Engineering | $752,915.17 |
| 61302 - Consulting Fees - Other | $200,439.51 |

| | | |
|---|---|---|
| 62001 - Meals - In Office/Non Travel | $12,919.31 | 100% or 50% |
| 62003 - Recruiting Expenses | $170,823.70 | |
| 62004 - Education & Training | ($990.83) | |
| 62005 - Dues & Subscriptions | $5,386.28 | |
| 62101 - Company Meetings | $1,102.78 | |
| 62201 - Employee Cell Phone & Internet | $2,507.93 | |
| 62202 - Postage & Freight | $3,433.06 | |
| 62203 - Printing | $28.36 | |
| 62204 - Website Fees | $8,782.42 | |
| 63001 - General Insurance | $17,798.73 | |
| 64001 - Facilities Rent | $1,965,958.86 | |
| 64004 - Facilities Expense | $24,153.85 | |
| 64005 - Office Setup/Improvement Expenses | $8,747.54 | |
| 64006 - Office Supplies | $11,728.49 | |
| 64009 - Office/Facilities Internet | $30,931.74 | |
| 64010 - Utilities | $72,797.77 | |
| 64050 - Other Office Expense | $15,685.98 | |
| 64101 - Licenses & Permits | $3,431.74 | |
| 64201 - Sales/Use Tax | $170.06 | |
| 65101 - Equipment Purchase | $15.31 | |
| 65111 - Equipment Rental | $14,289.00 | |
| 65121 - Materials & Supplies | $1,558.28 | |
| 65123 - Freight/Shipping for Equipment/Software | $7,534.38 | |
| 65201 - Computer Equipment - Hardware | ($37,279.16) | |
| 65202 - Computer Equipment - Software | $392,233.32 | |
| 65203 - Tech Software Service | $516,215.62 | |
| 65204 - Cloud Computing Services | $12,518.26 | |
| 66001 - Airfare | $59,033.50 | |
| 66002 - Lodging & Accomodations | $75,749.96 | |
| 66003 - Travel Registration & Conference Fees | $17,140.12 | |
| 66004 - Ground Transportation | $17,870.43 | |
| 66005 - Travel Fuel/Mileage | $70.01 | |
| 66007 - Meals & Ent - While Traveling | $7,256.10 | 100% or 50% |
| 66101 - Other T&E | $786.66 | |
| 67001 - Bank Fees | $10,614.31 | |

| | |
|---|---|
| 68002 - Market Research | $72.95 |
| 68007 - Events & Sponsorship | $3,827.08 |
| 68008 - Marketing Materials & Swag | $9,981.47 |
| 69100 - Depreciation Expense | $20,952.96 |
| 80120 - State and Local Income Tax | $50,397.86 |
| 80200 - Interest Expense | $443.84 |
| 80300 - Penalties & Settlements | $19,000.00 |
| 80410 - Rounding Gain/Loss | $541.28 |
| 80420 - Realized Gain/Loss | ($26,355.89) |
| 80421 - Unrealized Gain/Loss | ($127,256.48) |

| | Item Detail | Status | Responsible Party | Date Last Updated | Comment | |
|---|---|---|---|---|---|---|
| **General** | | | | | | |
| 1 | Fixed asset roll-forward schedule as of 12/31/2023 and detailed schedule of fixed asset and intangible asset | Received | SPM | | SPM provided a detail breakdown on 3/8/2024. | |
| 2 | Detailed schedule of fixed asset and intangible asset disposals including date acquired, date sold, original cost, | | SPM | | No dispositions. Although we did have a write-off for Atlas in 2023, and we spun-out the item related to Zo to | |
| 3 | Please confirm that the accrued vacation and accrued payroll balance sheet ending balance represent accrued, but not paid within 2.5 months after 12/31/23. If certain portion of the accrued balance was in fact paid within 2.5 months, please indicate how much of that was paid (and separately between bonus versus vacation). | | SPM | | Refer to tab titled 2023 Accrued Vacation + Bonus in file titled SPM Requests - KPMG.<br><br>Refer to the tab titled Knox Vacation + Bonus in the file titled Knox Requests - KPMG. | SPM: 21254 - Accrued Payroll balance doesn't match with the support. I see it matching on the 2023 Accrued Vacation + Bonus tab along with the Trial Balance tab of the SPM Requests - KPMG file. However, let me know specifically what you are referring to if I am missing something.<br><br>Knox: 21255 - Accrued Vacation support is missing from the Knox requests file. We understand this transaction relates to Canada. Could you please identify all the Canada transactions? SPM added details for this account to the Knox BS Detail tab in the file Knox Requests - KPMG. The full amount of vacation accrual relates to Knox Canada. |
| 4 | Please confirm that the amount of accrued expenses on the balance sheet were fixed as of 12/31/23 and meet the requirements of the general rules of Economic Performance; and/or also relying on the meeting of the Recurring Item Exception. | | SPM | | Yes - all were based on actuals confirmed by Vendors. | Were any payments made within 8.5 months. If yes, how much? I assume you meant 2.5 months - full accrued amount for Knox and SPM were paid within 2.5 months of year-end 12/31/2023. |
| 5 | Provide the breakdown of each accrued liabilities balances as of 12/31/23 and the nature of each accrued expenses(Period of accruals, nature of expense, expected settlement dates, etc). | | SPM | | Refer to tab titled 2023 BS Detail in file titled SPM Requests - KPMG.<br><br>Refer to the tab titled Knox BS Detail in the file titled Knox Requests - KPMG. | Knox - 25001 Income Taxes Payable doesn't match with the support. What support do you need for this amount? The amount per the BS ties to the detail in the Knox Requests - KPMG file.<br><br>And details missing for 26102 - Promissory Note and 26103 - Promissory Note Accrued Interest from the Knox BS Detail tab. SPM added to details for these two accounts to the Knox BS Detail tab in the file Knox Requests - KPMG. |
| 6 | Did the Company make any payment that requires Form 1099 filing? Did the Company file all required Form 1099? | | SPM | | Yes - all Form 1099 filings done in January 2024. | |
| 7 | Please provide detail about the following accounts and identify them by account number if the account description is not clear:<br>a. Meals & Entertainment subject to 50% and 100% disallowance<br>b. Charitable or political Contribution<br>c. Nonbusiness Dues & Subscriptions<br>d. Gifts<br>e. Penalties | | SPM | | A) Meals & Entertainment: LA Office typically does not have on-site lunch events for the employees (maybe 3x in 2023). NY Office has in-office lunches closer to 2-3x per week for employees. We understand entertainment is 100% disallowed, whereas office lunch is 50%. Further breakdown of these accounts are provided on tabs titled 2023 IS Detail in file titled SPM Requests - KPMG & Knox IS Detail tab in the file titled Knox Requests - KPMG. Accounts are as follows: 62001, 66007, and 68007.<br>B) No charitable / political contributions.<br>C) No nonbusiness dues / subscriptions (all business related).<br>D) Gifts - we had Christmas gift, which is in material & swag GL account 68008. Refer to detail on tab titled 2023 IS Detail in file titled SPM Requests - KPMG.<br>E) Penalties - None for Knox. $19,000 for SPM related to a legal settlement payment. | |
| 8 | Please provide us the nondeductible officer's life insurance expense. | | SPM | | Not applicable. Officer benefits are not through SPM. | |
| 9 | Please provide us with nondeductible qualified transportation benefit amount, if any | | SPM | | On the call, KPMG mentioned - the qualified commuter benefits are not allowed for deductions. If it is below $250/month, employees get tax-free benefits and the company cannot deduct. Based on our policy, we do not offer more than $250/month in commuter benefits, so believe this request is N/A. | |
| **Star X** | | | | | | |
| 1 | StarX TB doesn't foot to zero. Please provide us the updated T/B. | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. | |
| 2 | Balance sheet shows retain earning balance of $108K. Per 2022 tax return, the Company didn't have any operations. Can you provide us the nature of this retained earning balance? | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| 3 | Please provide us the amount subject to 174 capitalization.(R&E related expenditure and associated overhead) | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| 4 | Did the Company incurr any legal expenditure subject to capitalization(i.e. trademark, license related professional exp, etc) | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| 5 | Please provide us the nature of following accounts. | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| | 61207 - Entity Formation and Equity Structuring | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | KPMG suggested buying StarX since the cost isn't running through the SPM trial balance. SPM to confirm their decision.<br><br>SPM provided KPMG with the StarX loan agreement & Governance Documents on 3/20/2024. Let us know if there is any further questions here, however, we believe this should assist in the determination. |
| | 61301 - Consulting Fees - Engineering | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| | 65202 - Computer Equipment - Software | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| | 65203 - Tech Software Service | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| 6 | Please describe current status of business. | | SPM | | To discuss w/ KPMG. There are no operations in StarX entity. 100% owned by Michelle Ritter (CEO), not by SPM. KPMG to look into and get back to SPM (i.e. whether this is equity for tax purposes vs debt). KPMG to get back to us potentially on transfer pricing estimate for StarX along with Knox, based on our discussion on 3/6/2024. | |
| **Knox** | | | | | | |
| 1 | please provide us the capital contribution/distribution schedule for 2023. | | SPM | | Refer to tab titled Contributions in file titled Knox Requests - KPMG. | |
| 2 | Please provide us the nature of following accounts. | | SPM | | See descriptions below. | |
| | 71200 - Other Non-Operating Income | | SPM | | Knox won a competition in 2023 for G20 Tech Sprint 2023, awarding them a cash prize of $60K. | |
| | 22201 - Intercompany Payable | | SPM | | $20.5K was the shared software service provided by SPM to Knox, agreed upon with Knox as of 12/31/2023. | KPMG to connect SPM with transfer pricing specialist and let us know what the fee |
| | Ramp Card - Knox Networks, Inc. - Ramp Card - Knox Networks, Inc. | | SPM | | Ramp credit card account, similar to a corporate card. Ramp is the name of the vendor (Ramp.com) | |
| 3 | Please provide us the amount subject to 174 capitalization.(R&E related expenditure and associated overhead)- In | | SPM | | SPM provided a detail breakdown on 3/8/2024. | |
| 4 | Did the Company incurr any legal expenditure subject to capitalization(i.e. trademark, license related professional | | SPM | | Yes. Refer to tab titled Knox IS Detail in file titled Knox Requests - KPMG. | |
| 5 | Please provide us the breakdown of state and local income tax expense and federal and state estimated tax payment | | SPM | | Refer to tabs titled Trinet By State, Trinet General Ledger, and Knox IS Detail in file titled Knox Requests - KPMG. | |
| **Steel Perlot Management, LLC** | | | | | | |
| 1 | Please provide us the capital contribution/distribution schedule for 2023. | | SPM | | Refer to tab titled Contributions in file titled SPM Requests - KPMG. | |
| 2 | Please provide us the breakdown of state and local income tax expense and federal and state estimated tax payment | | SPM | | Refer to tabs titled Trinet By State, Trinet General Ledger, and 2023 IS Detail in file titled SPM Requests - KPMG. | |
| 3 | Please provide us the deferred rent schedule. | | SPM | | Refer to tab titled Deferred Rent LA in file titled SPM Requests - KPMG. | |
| 4 | Please provide us the amount subject to 174 capitalization.(R&E related expenditure and associated overhead) | | SPM | | SPM provided a detail breakdown on 3/8/2024. | |
| 5 | Did the Company incurr any legal expenditure subject to capitalization(i.e. trademark, license related professional | | SPM | | Yes. Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |
| 6 | Please provide us the nature of following accounts. | | SPM | | See descriptions below. | |
| | 21001 - Ramp Card - Steel Perlot Management, LLC | | SPM | | Ramp credit card account, similar to a corporate card. Ramp is the name of the vendor (Ramp.com) | |
| | 60106 - Discretionary Benefits - Taxable | | SPM | | Wellness stipend & fringe benefits. | |
| | 60107 - Discretionary Benefits - Non Taxable | | SPM | | Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |
| | 61207 - Entity Formation and Equity Structuring | | SPM | | Contract review, potential carry interest, costs related to spinning out entities. All legal fee related. | |
| | 61301 - Consulting Fees - Engineering | | SPM | | Engineering consultants working on the development of a product. | |
| | 61302 - Consulting Fees - Other | | SPM | | Non-engineering consultants (communications, PR, etc.) | |
| | 65123 - Freight/Shipping for Equipment/Software | | SPM | | Shipping costs for laptops sent to new employees and/or laptops returned from terminated employees. | |
| | 65201 - Computer Equipment - Hardware | | SPM | | Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |
| | 65202 - Computer Equipment - Software | | SPM | | Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |
| | 65203 - Tech Software Service | | SPM | | Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |
| | 66003 - Travel Registration & Conference Fees | | SPM | | Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |
| | 80300 - Penalties & Settlements | | SPM | | Refer to tab titled 2023 IS Detail in file titled SPM Requests - KPMG. | |

| Item # General |
|---|
| 1 |
| 2 |
| 3 |
| 4 |
| 5 |
| 6 |
| 7 |
| 8 |

| Item Detail |
| --- |
| Please provide a summary of 2022 overpayments and 2023 estimated payments. |
| Please provide state allocation information for sales, payroll, and property owned. |
| Payroll: Please provide breakdown by state and employee headcount by state. |
| Sales: The total sales on report should tie to total sales per Trial Balance. |
| Equipment/Furniture Fixtures/Leasehold Improvements/Intangibles/Transport Delivery Equipment. The total State PPE on report should tie to total per Trial |
| Rent Expense: Please provide breakdown by State of Rent Expense per Trial Balance. |
| Inventory (if applicable): Please provide breakdown by State of ending inventory balance per Trial Balance. |
| Please provide a summary of state Net Operating Losses, Credits, or any other attributes that are being carried over to 2023. |

| Status | Responsible Party | Date Last Updated |
|---|---|---|
| | SPM | |
| | SPM | |
| | SPM | |
| | SPM | |
| | SPM | |
| | SPM | |
| | SPM | |
| | SPM | |

| Comment |
| --- |
| No overpayments, not paying based on estimated payments. Do not have estimated payments for 2023. |
| Do not own any property, see response below for 'sales'. For Payroll refer to the Trinet tabs in both files titled |
| Refer to tab titled State Census SPM in file titled SPM Requests - KPMG.<br><br>Refer to tab titled State Census Knox in file titled Knox Requests - KPMG. |
| Refer to tab titled Sales in file titled SPM Requests - KPMG. |
| SPM provided a detail breakdown on 3/8/2024. |
| Refer to tab titled 2023 Rent By State in file titled SPM Requests - KPMG. |
| Do not have inventory. Not applicable. |
| Based on our discussion with KPMG on 3/6/2024, SPM wants this to be top of mind for KPMG. Nearly all |

| Item # | Date Discussed / Requested | Owner |
|---|---|---|
| 1 | 2/16/2024 | KPMG |
| 2 | 2/16/2024 | KPMG |
| 3 | 2/16/2024 | KPMG |
| 4 | 2/16/2024 | KPMG |
| 5 | 2/16/2024 | KPMG |
| 6 | 2/16/2024 | KPMG |
| 7 | 2/16/2024 | KPMG |
| 8 | 2/16/2024 | KPMG & SPM |
| 9 | 2/16/2024 | SPM |
| 10 | 2/16/2024 | SPM |
| 11 | 2/16/2024 | SPM |
| 12 | 3/6/2024 | KPMG |
| 13 | 3/12/2024 | SPM |
| 14 | 3/13/2024 | SPM |
| 15 | 3/13/2024 | SPM |
| 16 | 3/13/2024 | SPM |

| | | |
|---|---|---|
| **17** | 3/13/2024 | SPM |

| Action Item |
|---|
| KPMG to provide the PBC listing for FY 2023 tax year beginning of week starting 2/19/2024. |
| KPMG to provide SPM an outline on timeline for when we should expect deliverables (both for items discussed in engagement letter, on the planning call, and included below). |
| KPMG to set regular catch-up's with SPM Finance team beginning first week of March 2024. |
| KPMG to provide SPM request list/guidance for what is needed to recognize the loss from a tax perspective on the defunct business in FY 2023 (Tokenalysis, Inc.; fka Atlas) |
| Adjustments to the engagement letter:<br>(1) Steel Perlot Management, LLC<br>- Form FAE-170 Tennessee Franchise and Excise Tax Return<br>- Form 84-105 Mississippi Pass-Through Entity Tax Return<br>- Form D-65 District of Columbia (DC) Partnership Return of Income |
| Adjustments to the engagement letter:<br>(1) Steel Perlot Management, LLC<br>- Previously, we did not include state returns for Washington and Nevada on the EL. However, we had employee's in both states during FY 2023. |
| Adjustments to the engagement letter:<br>(1) Knox Networks, Inc.<br>- Form M4 Minnesota Corporation Franchise Tax Return<br>- Form BT-Summary New Hampshire Business Tax Return<br>- Form CBT-100 New Jersey Corporate Business Tax Return |
| SPM legally closed the following 5 legal entities on 1/18/2024 that were initially included in the EL:<br>- StarX Ecosystem, LLC<br>- Steel Perlot Advisory, LLC<br>- Steel Perlot Holdings, LLC<br>- Steel Perlot Investment Funds, LLC<br>- Steel Perlot Swaps Holdings, LLC |
| SPM Finance to send business overview to KPMG. |
| Please provide KPMG a copy of the partnership agreement for Steel Perlot Management, LLC |
| Please provide KPMG financial data (Trial balance, balance sheet and income statement) as of 12/31/2023 for Steel Perlot Management, LLC, Knox Networks, Inc. and StartX Network, Inc. |
| KPMG to provide SPM a ball-park estimate for Transfer Pricing benchmark for shared services provided by |
| Steel Perlot Ginseng Inc- What is the nature/status of this entity? It was listed as 100% owned US |
| Please provide us the copy of sample SAFE agreement? How does the Company treats the income/gain |
| What is the nature of Knox's actvity in Canada? Are they generating revenue? Please provide us the |
| What is the intended operation of SP foundation- Whether to progress and contine the nonprofit certification or start filing 1120 |

| |
|---|
| Provide KPMG 2022 TB (Balance Sheet & Income Statement). |

| Notes |
|---|
| |
| Priority first will be Partnership extensions & certain states with filings due 3/15. Afterwards, focus on K1 then extension of corporation returns. |
| |
| SPM provided support via email on 3/20/2024. |
| SPM did not have employees in these states in FY 2023, need to confirm whether these filings are necessary or if we can not file for 2023 (i.e. remove from KPMG EL).<br><br>Note: Discussed with KPMG during planning call. |
| Pending - Based on discussion, with KPMG on 2/16/2024, KPMG to investigate whether these are BNO / have gross receipts to determine whether filings are needed for FY 2023. |
| Knox Networks, Inc. did not have employees in these states in FY 2023, need to confirm whether these filings are necessary or if we can not file for 2023 (i.e. remove from KPMG EL).<br><br>Note: Discussed with KPMG during planning call. |
| These 5 legal entities had no activity in FY 2023 and were legally closed on 1/18/2024.<br><br>SPM did not find any 8832 Forms for these five dormant entities that we closed. However, we are checking with legal to confirm. SPM will revert back to KPMG with further updates on this matter. |
| |
| |
| SPM is still investigating the classification of expenses between departments and StarX Networks, Inc. We will let you know if anything transpires from this and will provide further details immediately upon resolution. For the meantime, the 12/31/2023 financials provided should be suitable for your working purposes. |
| |
| Dissloved in 11/14/2024- No activities |
| |
| |
| SPM will let you know within the next month or so about the decision we made on how we would like to deem SP Foundation for filing purposes. |

| SPM Comment |
|---|
| Done - Provided via email 3/4/2024 |
| Pending - KPMG to provide KPMG with overview of timeline expectations for deliverable to discuss on weekly meetings to make sure things are on track and discuss what is falling behind/what SPM can do to alleviate any potential delays. Deliverables to prioritized discussed on the call, are included in the Notes column. |
| Done - Scheduled 12pm PST every Wednesday |
| Pending - KPMG to provide specifically what they need to recognize the loss from a tax perspective from the defunct company in 2023<br><br>Please provide us the copy of SAFE agreement, investment balance and support for zero valuation(i.e. email communication, report, etc)<br><br>SPM provided support via email on 3/20/2024. |
| Discussed with KPMG during planning call. |
| Pending - Based on discussion, with KPMG on 2/16/2024, KPMG to investigate whether these are BNO / have gross receipts to determine whether filings are needed for FY 2023. |
| Discussed with KPMG during planning call. |
| Pending - As discussed, we did not any 8332 Forms for these 5 dormant entities that we closed. KPMG to let SPM know if there are any further items needed here as support or if there are potentially any filings required for FY 2023.<br><br>KPMG note - No further action is needed as these entities are treated as Disregarded entity for federal income tax purpose. |
| Done - Provided via email 2/21/2024 |
| Done - Provided via email 2/21/2024 |
| Done - Provided via email 2/21/2024 |
| Refer to Action Item Column. |
| Done. |
| Provided all SAFE agreements on 3/20/2024. |
| Knox Canada is not generating revenue. Knox as a whole won a competition in |
| SPM will let you know within the next month or so about the decision we made on how we would like to deem SP Foundation for filing purposes. |

Provided via email on 3/20/2024.

| Entity Type | Entity | Jurisdiction | Workpapers to be delivered by | Delivery of first draft of returns |
|---|---|---|---|---|
| Partnership | Steel Perlott Management, LLC | Federal | 10-May | 24-May |
| Corp | StarX Networks, Inc | Federal | 10-May | 24-May |
| Corp | Knox Networks, Inc | Federal | 10-May | 24-May |

| Final delivery | Outstanding Items | Qualification Status signing etc. |
|---|---|---|
| 5/31/2024 | | |
| 5/31/2024 | | |
| 5/31/2024 | | |

| Entity Type | Entity | Jurisdiction | Workbook status | Form status |
|---|---|---|---|---|
| Partnership | Steel Perlott Management, LLC | Federal | Blank | Efiled and accepted |
| Corp | StarX Networks, Inc | Federal | Blank | Under prep |
| Corp | Knox Networks, Inc | Federal | Blank | Under prep |

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)

First Amended Complaint

# EXHIBIT 8

Hillspire "Summary budgeting analysis" and Updated Schedule C (Nov. 18, 2024) (rows 43, 51)

*Cover sheet only — exhibit identified above; native copy to be lodged.*

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)
First Amended Complaint

# EXHIBIT 9

"SPM Scenario Expectations" V1 (July 12, 2024) (rows 21, 34–36, 87)

*Cover sheet only — exhibit identified above; native copy to be lodged.*

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)
First Amended Complaint

# EXHIBIT 10

KPMG (Tahiliani)–Coit email thread (Apr. 9, 2024) with Quach cover page ("our investor")

*Cover sheet only — exhibit identified above; native copy to be lodged.*

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)

First Amended Complaint

# EXHIBIT 11

KPMG–SPM Finance "SPM – additional information request" correspondence (Apr. 9, 2024 et seq.; Tahiliani, Cho, Kierzkowski, Aum, and Auriemma with Coit, Bajema, and Rabinowitch) (excerpts); July 31, 2024 records of the SPM/StarX tax-allocation discrepancies

## SPM - additional information request

**suniltahiliani@kpmg.com Tahiliani, Sunil** Tuesday, April 9, 2024 at 12:55:39 PM Pacific Daylight Time
To: ccoit@steelperlot.com ccoit@steelperlot.com
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Hi Connor,

Hope all is well!

I posted a few questions on the Sharepoint.

In the Tax Compliance information request(SPM).xlsx file:

1. Fed. Request tab: Rows 10 and 35 are updated with requests.
2. KPMG Request tab: Added a note in cell G6 for information regarding Token analysis.

We can connect tomorrow for any discussion pertaining to these.

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*****************************************************************************

---

**ccoit@steelperlot.com Connor Coit** Monday, April 15, 2024 at 3:20:20 PM Pacific Daylight Time
To: suniltahiliani@kpmg.com Tahiliani, Sunil
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Hi Sunil -

Please see the responses below in red along with the attachments.

Thank you,

On Tue, Apr 9, 2024 at 12:55 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

Hi Connor,

Hope all is well!

I posted a few questions on the Sharepoint.

In the Tax Compliance information request(SPM).xlsx file:

1. Fed. Request tab: Rows 10 and 35 are updated with requests. See responses in green on the respective tab.
2. KPMG Request tab: Added a note in cell G6 for information regarding Token analysis. See response in green on the respective tab.

We can connect tomorrow for any discussion pertaining to these.

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***********************************************************************

---

**Attachments:**

**Knox Networks Inc 2021 Federal Return.pdf** 760k

**Atlas_ITD.xlsx** 13k

**Atlas Write Off.xlsx** 62k

---

**suniltahiliani@kpmg.com Tahiliani, Sunil** Monday, April 15, 2024 at 5:29:29 PM Pacific Daylight Time
To: ccoit@steelperlot.com ccoit@steelperlot.com
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Thank you, Connor!

I will go over these and let you know if anything else is required. Some of us will be out of office tomorrow, do you think it is okay to meet next week?

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

---

**From:** Connor Coit <ccoit@steelperlot.com>
**Sent:** Monday, April 15, 2024 6:20 PM
**To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>
**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** [EXTERNAL] Re: SPM - additional information request

Hi Sunil -

Please see the responses below in red along with the attachments.

Thank you,

On Tue, Apr 9, 2024 at 12:55 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Hi Connor,
>
> Hope all is well!
>
> I posted a few questions on the Sharepoint.
>
> In the Tax Compliance information request(SPM).xlsx file:
>
> 1. Fed. Request tab: Rows 10 and 35 are updated with requests. See responses in green on the respective tab.
> 2. KPMG Request tab: Added a note in cell G6 for information regarding Token analysis. See response in green on the respective tab.
>
> We can connect tomorrow for any discussion pertaining to these.

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*****************************************************************************

**CAUTION:** This email originated from outside KPMG. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Please report suspicious emails using the "Report Suspicious" button at the top right corner of the email in Outlook or forward as an attachment to US-KPMG SPAM Collection Mailbox (spam@KPMG.com).

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*****************************************************************************

---

**ccoit@steelperlot.com Connor Coit** Tuesday, April 16, 2024 at 1:31:01 PM Pacific Daylight Time
To: suniltahiliani@kpmg.com Tahiliani, Sunil
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Hi Sunil -

I am fine with us meeting next week. However, can you please respond to the following:

1. Is there anything else needed from our end that is holding you up (aside from the revised TB for SPM and Knox, which we will send end of week)?
2. How are we looking on timing? Are you guys falling behind on anything that we should be aware of? If so, what?
3. When should we expect partnership returns in our court for review?
4. Anything else needed from us as you are investigating the prior year capitalization amounts? As mentioned before, this is a big ticket item for our investor that we want to make sure is done appropriately in the current year.

Thank you,

On Mon, Apr 15, 2024 at 5:29 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

Thank you, Connor!

I will go over these and let you know if anything else is required. Some of us will be out of office tomorrow, do you think it is okay to meet next week?

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

*Please consider the environment before printing this email.*

---

**From:** Connor Coit <ccoit@steelperlot.com>
**Sent:** Monday, April 15, 2024 6:20 PM
**To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>
**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** [EXTERNAL] Re: SPM - additional information request

Hi Sunil -

Please see the responses below in red along with the attachments.

Thank you,

On Tue, Apr 9, 2024 at 12:55 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Hi Connor,
>
> Hope all is well!
>
> I posted a few questions on the Sharepoint.
>
> In the Tax Compliance information request(SPM).xlsx file:
>
> 1. Fed. Request tab: Rows 10 and 35 are updated with requests. See responses in green on the respective tab.
> 2. KPMG Request tab: Added a note in cell G6 for information regarding Token analysis. See response in green on the respective tab.
>
> We can connect tomorrow for any discussion pertaining to these.
>
> Regards,
>
> **Sunil Tahiliani (he/him) | Tax Manager**
>
> **KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***********************************************************************

---

**CAUTION:** This email originated from outside KPMG. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Please report suspicious emails using the "Report Suspicious" button at the top right corner of the email in Outlook or forward as an attachment to US-KPMG SPAM Collection Mailbox (spam@KPMG.com).

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***********************************************************************

---

**suniltahiliani@kpmg.com Tahiliani, Sunil** Tuesday, April 16, 2024 at 6:06:52 PM Pacific Daylight Time
To: ccoit@steelperlot.com ccoit@steelperlot.com
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Hi Connor,

We are on track and should have returns over to you as indicated on the tracker. The state returns will be delivered shortly after Federal is finalized as they are reliant on final federal taxable income or loss. We will reach out with any questions that might come up during out teams' review of various components.

| Entity Type | Entity | Jurisdiction | Workpapers to be delivered by | Delivery of first draft of returns | Final delivery |
|---|---|---|---|---|---|
| Partnership | Steel Perlott Management, LLC | Federal | 10-May | 24-May | 5/31/2024 |
| Corp | StarX Networks, Inc | Federal | 10-May | 24-May | 5/31/2024 |
| Corp | Knox Networks, Inc | Federal | 10-May | 24-May | 5/31/2024 |

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

*Please consider the environment before printing this email.*

---

**From:** Connor Coit <ccoit@steelperlot.com>
**Sent:** Tuesday, April 16, 2024 4:31 PM
**To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>
**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** [EXTERNAL] Re: SPM - additional information request

Hi Sunil -

I am fine with us meeting next week. However, can you please respond to the following:

1. Is there anything else needed from our end that is holding you up (aside from the revised TB for SPM and Knox, which we will send end of week)?

2. How are we looking on timing? Are you guys falling behind on anything that we should be aware of? If so, what?

3. When should we expect partnership returns in our court for review?

4. Anything else needed from us as you are investigating the prior year capitalization amounts? As mentioned before, this is a big ticket item for our investor that we want to make sure is done appropriately in the current year.

Thank you,

On Mon, Apr 15, 2024 at 5:29 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Thank you, Connor!
>
> I will go over these and let you know if anything else is required. Some of us will be out of office tomorrow, do you think it is okay to meet next week?
>
> Regards,
>
> **Sunil Tahiliani (he/him) | Tax Manager**
>
> **KPMG LLP** | 345 Park Avenue | New York, NY 10154
>
> email: suniltahiliani@kpmg.com
>
> *Please consider the environment before printing this email.*
>
> ---
>
> **From:** Connor Coit <ccoit@steelperlot.com>
> **Sent:** Monday, April 15, 2024 6:20 PM
> **To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>

**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** [EXTERNAL] Re: SPM - additional information request

Hi Sunil -

Please see the responses below in red along with the attachments.

Thank you,

On Tue, Apr 9, 2024 at 12:55 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Hi Connor,
>
> Hope all is well!
>
> I posted a few questions on the Sharepoint.
>
> In the Tax Compliance information request(SPM).xlsx file:
>
> 1. Fed. Request tab: Rows 10 and 35 are updated with requests. See responses in green on the respective tab.
> 2. KPMG Request tab: Added a note in cell G6 for information regarding Token analysis. See response in green on the respective tab.
>
> We can connect tomorrow for any discussion pertaining to these.
>
> Regards,
>
> **Sunil Tahiliani (he/him) | Tax Manager**
>
> **KPMG LLP** | 345 Park Avenue | New York, NY 10154
>
> email: suniltahiliani@kpmg.com
>
> ***Please consider the environment before printing this email.***
>
> Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.
>
> ---
>
> The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client

engagement letter.
*************************************************************************

**CAUTION:** This email originated from outside KPMG. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Please report suspicious emails using the "Report Suspicious" button at the top right corner of the email in Outlook or forward as an attachment to US-KPMG SPAM Collection Mailbox (spam@KPMG.com).

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*************************************************************************

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*************************************************************************

**suniltahiliani@kpmg.com Tahiliani, Sunil** Monday, April 29, 2024 at 7:59:06 AM Pacific Daylight Time
To: ccoit@steelperlot.com ccoit@steelperlot.com
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Hi Connor!

Happy Monday,

I added a few questions in cell F35 of Fed. Req tab. Additionally, could you please provide us with the separate TBs for SPM and StarX to book their activities accurately?

Please also provide us with SPM's 2021 tax return.

Wanted to note that Minyong and I will be out this Wednesday for training. We will be able to connect next week and reach out with any additional requests we have in the interim.

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

**From:** Tahiliani, Sunil
**Sent:** Tuesday, April 16, 2024 9:07 PM
**To:** Connor Coit <ccoit@steelperlot.com>
**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** RE: [EXTERNAL] Re: SPM - additional information request

Hi Connor,

We are on track and should have returns over to you as indicated on the tracker. The state returns will be delivered shortly after Federal is finalized as they are reliant on final federal taxable income or loss. We will reach out with any questions that might come up during out teams' review of various components.

| Entity Type | Entity | Jurisdiction | Workpapers to be delivered by | Delivery of first draft of returns | Final delivery |
|---|---|---|---|---|---|
| Partnership | Steel Perlott Management, LLC | Federal | 10-May | 24-May | 5/31/2024 |
| Corp | StarX Networks, Inc | Federal | 10-May | 24-May | 5/31/2024 |
| Corp | Knox Networks, Inc | Federal | 10-May | 24-May | 5/31/2024 |

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

---

**From:** Connor Coit <ccoit@steelperlot.com>
**Sent:** Tuesday, April 16, 2024 4:31 PM
**To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>
**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** [EXTERNAL] Re: SPM - additional information request

Hi Sunil -

I am fine with us meeting next week. However, can you please respond to the following:

1. Is there anything else needed from our end that is holding you up (aside from the revised TB for SPM and Knox, which we will send end of week)?

2. How are we looking on timing? Are you guys falling behind on anything that we should be aware of? If so, what?

3. When should we expect partnership returns in our court for review?

4. Anything else needed from us as you are investigating the prior year capitalization amounts? As mentioned before, this is a big ticket item for our investor that we want to make sure is done appropriately in the current year.

Thank you,

On Mon, Apr 15, 2024 at 5:29 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Thank you, Connor!
>
> I will go over these and let you know if anything else is required. Some of us will be out of office tomorrow, do you think it is okay to meet next week?
>
> Regards,
>
> **Sunil Tahiliani (he/him) | Tax Manager**
>
> **KPMG LLP** | 345 Park Avenue | New York, NY 10154
>
> email: suniltahiliani@kpmg.com
>
> ***Please consider the environment before printing this email.***
>
> ---
>
> **From:** Connor Coit <ccoit@steelperlot.com>
> **Sent:** Monday, April 15, 2024 6:20 PM
> **To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>
> **Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
> **Subject:** [EXTERNAL] Re: SPM - additional information request
>
> Hi Sunil -
>
> Please see the responses below in red along with the attachments.
>
> Thank you,
>
> On Tue, Apr 9, 2024 at 12:55 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:
>
>> Hi Connor,
>>
>> Hope all is well!
>>
>> I posted a few questions on the Sharepoint.
>>
>> In the Tax Compliance information request(SPM).xlsx file:
>>
>> 1. Fed. Request tab: Rows 10 and 35 are updated with requests. See responses in green on the respective tab.
>> 2. KPMG Request tab: Added a note in cell G6 for information regarding Token analysis. See response in green on the respective tab.
>>
>> We can connect tomorrow for any discussion pertaining to these.

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***************************************************************************

---

**CAUTION:** This email originated from outside KPMG. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Please report suspicious emails using the "Report Suspicious" button at the top right corner of the email in Outlook or forward as an attachment to US-KPMG SPAM Collection Mailbox (spam@KPMG.com).

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***************************************************************************

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***************************************************************************

---

**ccoit@steelperlot.com Connor Coit** Monday, April 29, 2024 at 9:06:46 PM Pacific Daylight Time
To: suniltahiliani@kpmg.com Tahiliani, Sunil
Cc: maum@kpmg.com Aum, Minyong, mbajema@steelperlot.com mbajema@steelperlot.com, rrabinowitch@steelperlot.com rrabinowitch@steelperlot.com, ccho@kpmg.com Cho, Chun K, aauriemma@kpmg.com Auriemma, Anthony, rkierzkowski@kpmg.com Kierzkowski, Robert

Hi Sunil -

Attached you will find the following:

1. FY2021 SPM BS/IS
2. FY2023 SPM BS/IS
3. FY2023 StarX BS/IS
4. FY2021 SPM Tax Returns that we have on file.

Additionally, I see you input a few follow-up questions on Knox in the Fed Request tab of the shared drive. We are acknowledging receipt and are working internally to get you an appropriate response. We will provide you with an update later this week.

I believe we are all up to speed on providing you with deliverables/requests (aside from the few Knox questions recently received). However, please let us know if there is anything else needed from our end.

Thank you,

On Mon, Apr 29, 2024 at 7:59 AM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Hi Connor!
>
> Happy Monday,
>
> I added a few questions in cell F35 of Fed. Req tab. Additionally, could you please provide us with the separate TBs for SPM and StarX to book their activities accurately?
>
> Please also provide us with SPM's 2021 tax return.
>
> Wanted to note that Minyong and I will be out this Wednesday for training. We will be able to connect next week and reach out with any additional requests we have in the interim.
>
> Regards,
>
> **Sunil Tahiliani (he/him) | Tax Manager**
>
> **KPMG LLP** | 345 Park Avenue | New York, NY 10154
>
> email: suniltahiliani@kpmg.com
>
> ***Please consider the environment before printing this email.***
>
> ---
>
> **From:** Tahiliani, Sunil
> **Sent:** Tuesday, April 16, 2024 9:07 PM
> **To:** Connor Coit <ccoit@steelperlot.com>
> **Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
> **Subject:** RE: [EXTERNAL] Re: SPM - additional information request
>
> Hi Connor,
>
> We are on track and should have returns over to you as indicated on the tracker. The state returns will be delivered shortly after Federal is finalized as they are reliant on final federal taxable income or loss. We will reach out with any questions that might come up during out teams' review of various components.

| Entity Type | Entity | Jurisdiction | Workpapers to be delivered by | Delivery of first draft of returns | Final delivery |
|---|---|---|---|---|---|
| Partnership | Steel Perlott Management, LLC | Federal | 10-May | 24-May | 5/31/2024 |
| Corp | StarX Networks, Inc | Federal | 10-May | 24-May | 5/31/2024 |
| Corp | Knox Networks, Inc | Federal | 10-May | 24-May | 5/31/2024 |

Regards,

**Sunil Tahiliani (he/him) | Tax Manager**

**KPMG LLP** | 345 Park Avenue | New York, NY 10154

email: suniltahiliani@kpmg.com

***Please consider the environment before printing this email.***

---

**From:** Connor Coit <ccoit@steelperlot.com>
**Sent:** Tuesday, April 16, 2024 4:31 PM
**To:** Tahiliani, Sunil <suniltahiliani@KPMG.com>
**Cc:** Aum, Minyong <maum@KPMG.com>; mbajema@steelperlot.com; rrabinowitch@steelperlot.com; Cho, Chun K <ccho@kpmg.com>; Auriemma, Anthony <aauriemma@kpmg.com>; Kierzkowski, Robert <rkierzkowski@kpmg.com>
**Subject:** [EXTERNAL] Re: SPM - additional information request

Hi Sunil -

I am fine with us meeting next week. However, can you please respond to the following:

1. Is there anything else needed from our end that is holding you up (aside from the revised TB for SPM and Knox, which we will send end of week)?

2. How are we looking on timing? Are you guys falling behind on anything that we should be aware of? If so, what?

3. When should we expect partnership returns in our court for review?

4. Anything else needed from us as you are investigating the prior year capitalization amounts? As mentioned before, this is a big ticket item for our investor that we want to make sure is done appropriately in the current year.

Thank you,

On Mon, Apr 15, 2024 at 5:29 PM Tahiliani, Sunil <suniltahiliani@kpmg.com> wrote:

> Thank you, Connor!
>
> I will go over these and let you know if anything else is required. Some of us will be out of office tomorrow, do you think it is okay to meet next week?
>
> Regards,
>
> **Sunil Tahiliani (he/him) | Tax Manager**
>
> **KPMG LLP** | 345 Park Avenue | New York, NY 10154
>
> email: suniltahiliani@kpmg.com
>
> ***Please consider the environment before printing this email.***

EXHIBIT 15




**Subject: Fwd: SPM 2023 and starX compliance invoice**

**Michelle Ritter** <mritter@steelperlot.com> Tue, Jul 16, 2:08 PM
to Michelle Ritter

—
**Michelle Ritter**
Steel Perlot
mritter@steelperlot.com
(o) +1 917-200-0338

Begin forwarded message:

**From:** Michelle Ritter <mritter@steelperlot.com>
**Date:** July 14, 2024 at 10:13:58 PM PDT
**To:** jsk@knopflaw.com, Michelle Ritter <mritter@starx.com>
**Cc:** Michelle Ritter <michelleritter929@gmail.com>
**Subject: Fwd: SPM 2023 and starX compliance invoice**

Please see attached.

---------- Forwarded message ---------
From: **Aum, Minyong** <maum@kpmg.com>
Date: Thu, Jun 27, 2024 at 2:34 PM
Subject: RE: SPM 2023 and starX compliance invoice
To: Connor Coit <ccoit@steelperlot.com>
Cc: Kierzkowski, Robert <rkierzkowski@kpmg.com>, Tahiliani, Sunil <suniltahiliani@kpmg.com>, Michelle Ritter <mritter@steelperlot.com>, Kolcun, Michael <mkolcun@sgrlaw.com>

Hi Connor,

The charges are relate to review of draft loan agreement between StarX and SPM and whether to consider loan as a debt or preferred equity for tax purpose.
Given the background and nature of the arrangement, we have concluded it to treat the loan as preferred equity for tax purpose.
See attached for our original communication.
Let us know, if you have any questions.
Thank you.

Regards,

Minyong

EXHIBIT 16




**From:** Connor Coit <ccoit@steelperlot.com>
**Sent:** Thursday, June 27, 2024 5:07 PM
**To:** Aum, Minyong <maum@KPMG.com>
**Cc:** Kierzkowski, Robert <rkierzkowski@kpmg.com>; Tahiliani, Sunil <suniltahiliani@KPMG.com>; Michelle Ritter <mritter@steelperlot.com>; Kolcun, Michael <mkolcun@sgrlaw.com>
**Subject:** [EXTERNAL] Re: SPM 2023 and starX compliance invoice

Thanks, Minyong. For the loan agreement review charge, will you please provide an overview of the services performed regarding this matter/charge? Once provided, I will defer to @Michelle Ritter where this charge should flow through (i.e. whether on the Steel Perlot Management, LLC or StarX Networks, Inc. invoice).

On Thu, Jun 27, 2024 at 1:29 PM Aum, Minyong <maum@kpmg.com> wrote:

> I can do that.
> For loan agreement review, do you need that to be included in StarX invoice or SPM invoice?
> Please let me know.
>
> Regards,
>
> Minyong
>
> **From:** Connor Coit <ccoit@steelperlot.com>
> **Sent:** Thursday, June 27, 2024 3:22 PM
> **To:** Aum, Minyong <maum@KPMG.com>
> **Cc:** Kierzkowski, Robert <rkierzkowski@kpmg.com>; Tahiliani, Sunil <suniltahiliani@KPMG.com>; Michelle Ritter <mritter@steelperlot.com>; Kolcun, Michael <mkolcun@sgrlaw.com>
> **Subject:** [EXTERNAL] Re: SPM 2023 and starX compliance invoice
>
> Thanks for providing this Minyong. Are you able to separate the invoice so there is one invoice to Steel Perlot Management, LLC and a separate invoice for StarX Networks, Inc.? The address for both invoices can remain the same, just the legal entity on the invoice would need to change, along with the respective invoiced amounts.
>
> Please let me know if you have any questions.
>
> Thank you,
>
> On Thu, Jun 27, 2024 at 11:11 AM Aum, Minyong <maum@kpmg.com> wrote:
>
> > Hi Connor,
> >
> > Please see attached for our 2023 tax compliance invoice for SPM and StarX.
> > Let us know, if you have any questions.
> >
> > As previously requested, we will issue invoice to Knox directly once we deliver the state returns.
> > Thank you.

EXHIBIT 17




Hi Connor,

Please see attached for our 2023 tax compliance invoice for SPM and StarX.
Let us know, if you have any questions.

As previously requested, we will issue invoice to Knox directly once we deliver the state returns.
Thank you.

*Regards,*

*Minyong Aum*
*Managing Director-Business Tax Service*
*KPMG | 345 Park Avenue | New York, NY 10154*
*Direct 212-954-8225 | eFax 212-202-7577*
*maum@kpmg.com*

Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***************************************************************

**CAUTION:** This email originated from outside KPMG. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Please report suspicious emails using the "Report Suspicious" button at the top right corner of the email in Outlook or forward as an attachment to US-KPMG SPAM Collection Mailbox (spam@KPMG.com).

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***************************************************************

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
***************************************************************

EXHIBIT 18




Any advice in this communication is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included. In rendering our advice, we may consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of our advice. We will not update our advice for subsequent changes or modifications to the laws and regulations, or to the judicial and administrative interpretations thereof. The advice or other information in this document was prepared for the sole benefit of KPMG's client and may not be relied upon by any other person or organization. KPMG accepts no responsibility or liability in respect of this document to any person or organization other than KPMG's client.

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*****************************************************************

**CAUTION:** This email originated from outside KPMG. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Please report suspicious emails using the "Report Suspicious" button at the top right corner of the email in Outlook or forward as an attachment to US-KPMG SPAM Collection Mailbox (spam@KPMG.com).

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*****************************************************************

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*****************************************************************

--
Michelle Ritter
mritter@steelperlot.com

**One attachment** • Scanned by Gmail

StarX loan agreement.eml
10 KB

# EXHIBIT 12

Audem Employment Development Department notices and Marcus's transmittals of them to Ritter (Apr. 21, May 15, and July 6, 2026), including Marcus's July 6, 2026 email ("Attached is an EDD Notice of Form Delinquency for Audem Management … that was sent to Hillspire")

**From:** **Craig H. Marcus** cmarcus@glaserweil.com
**Subject:** RE: EDD Notice and Statement for Audem Management
**Date:** July 6, 2026 at 5:23 PM
**To:** ritter.sm@icloud.com
**Cc:** Michelle Ritter ritter_legal@outlook.com, Jill Harris jharris@glaserweil.com, Allison Gipson agipson@glaserweil.com, Patricia L. Glaser pglaser@glaserweil.com, Marinna Chang Radloff mradloff@glaserweil.com, Celia H. Spalding cspalding@glaserweil.com, Simon K. Moradzadeh smoradzadeh@glaserweil.com, Rob C. Arbulu rarbulu@glaserweil.com

CM

Ms. Ritter,

Attached is an EDD Notice of Form Delinquency for Audem Management, Inc. that was sent to Hillspire. As previously requested, please update Audem's contact information with the EDD.

Glaser Weil

**Craig H. Marcus**
PARTNER

Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
glaserweil.com

cmarcus@glaserweil.com
**T** 310.556.7891

This message and any attached documents may contain information from the law firm of Glaser Weil Fink Howard Jordan & Shapiro LLP that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

---

**From:** Craig H. Marcus <cmarcus@glaserweil.com>
**Sent:** Friday, May 15, 2026 1:08 PM
**To:** ritter.sm@icloud.com
**Cc:** Michelle Ritter <ritter_legal@outlook.com>; Jill Harris <jharris@glaserweil.com>; Allison Gipson <agipson@glaserweil.com>; Patricia L. Glaser <pglaser@glaserweil.com>; Marinna Chang Radloff <mradloff@glaserweil.com>; Celia H. Spalding <cspalding@glaserweil.com>
**Subject:** RE: EDD Notice and Statement for Audem Management

Ms. Ritter,

Attached is a statement of account and notice for Audem Management, Inc. that was sent to Hillspire. As previously requested, please update Audem's contact information with the EDD.

Glaser Weil

**Craig H. Marcus**
PARTNER

Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
glaserweil.com

cmarcus@glaserweil.com
**T** 310.556.7891

This message and any attached documents may contain information from the law firm of Glaser Weil Fink Howard Jordan & Shapiro LLP that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

---

**From:** ritter.sm@icloud.com <ritter.sm@icloud.com>
**Sent:** Tuesday, April 21, 2026 9:02 PM
**To:** Craig H. Marcus <cmarcus@glaserweil.com>; Patricia L. Glaser <pglaser@glaserweil.com>
**Cc:** Michelle Ritter <ritter_legal@outlook.com>; Jill Harris <jharris@glaserweil.com>; Celia H. Spalding <cspalding@glaserweil.com>; Allison Gipson <agipson@glaserweil.com>
**Subject:** Re: EDD Notice and Statement for Audem Management

Please keep it for your records

Please keep it for your records.

On Apr 21, 2026, at 8:55 PM, Craig H. Marcus <cmarcus@glaserweil.com> wrote:

Ms. Ritter,

Attached is a statement of account and notice for Audem Management, Inc. that was sent to Hillspire. As previously requested, please update Audem's contact information with the EDD.

Glaser Weil

**Craig H. Marcus**
PARTNER

Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
glaserweil.com

cmarcus@glaserweil.com
**T** 310.556.7891

This message and any attached documents may contain information from the law firm of Glaser Weil Fink Howard Jordan & Shapiro LLP that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

External email

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**SKM_C451i26070613130.pdf**
56 KB

EDD DE 6694

PO BOX 826805
SACRAMENTO, CA 94205-0001

Employment Development Department
State of California

| | |
|---|---|
| Letter ID: | L1825766960 |
| Issued Date: | June 22, 2026 |
| Mail Date: | June 29, 2026 |
| Account ID: | 164-0042-6 |
| | 317555712_P2491_E2491 |

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

# NOTICE OF FORM DELINQUENCY

**Why you are being contacted:**
You are being contacted because the Employment Development Department (EDD) records show you have not filed the following return(s)/report(s) for the period ending March 31, 2026:

*Quarterly Contribution Return and Report of Wages (Continuation),* DE 9C
*Quarterly Contribution Return and Report of Wages,* DE 9

**What you must do:**
You must electronically file these return(s)/report(s) even if you did not employ any persons during that time to comply with the e-file and e-pay mandate. You can file online using e-Services for Business at **edd.ca.gov/e-Services_for_Business**. For more information on this mandate, visit **edd.ca.gov/EfileMandate**. You may disregard this notice if you have recently complied with this written demand.

**What will happen if you do not comply:**
This is a written demand for the quarterly report of wages pursuant to Section 1114 of the California Unemployment Insurance Code. You may be charged a penalty of $20 for each unreported employee unless this report is filed within 15 days from the mail date of this demand notice.

You may be charged a penalty of 15 percent on total unpaid employer contributions and withholdings unless the return/report is filed pursuant to Section 1112.5 of the California Unemployment Insurance Code within 60 days from the original due date of the return/report.

You may contact the EDD at 1-855-866-2656 if you have questions.

EDD DE 2176

BAY AREA COLLECTION OFFICE
7677 OAKPORT STREET STE. 400
OAKLAND, CA 94621-1933

Employment Development Department
State of California

Letter ID: L0423700016
Issued Date: April 29, 2026
Mail Date: May 6, 2026
Account ID: 164-0042-6
81298432_P3740_E752

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

## Statement of Account

This is a summary of your liability for each period, along with the balance owed on your account. The daily interest for these liabilities has been calculated through May 14, 2026. Payment may be submitted online through our secure Web site or by mail using the attached payment voucher at the bottom of the page.

**Account ID: 164-0042-6 Account Type: Employment Tax**

| Period Ending | Tax | Penalty | Interest | Credit | Balance |
|---|---|---|---|---|---|
| 31-Dec-2024 | $4,615.63 | $2,134.41 | $617.58 | $5.78 | $7,361.84 |
| 31-Mar-2025 | $5,623.44 | $2,590.56 | $581.03 | $0.00 | $8,795.03 |
| 30-Jun-2025 | $5,030.75 | $2,323.86 | $372.15 | $0.00 | $7,726.76 |
| 30-Sep-2025 | $5,136.95 | $1,601.08 | $246.23 | $0.00 | $6,984.26 |
| **Total:** | | | | | **$30,867.89** |

If you have any questions regarding this statement, you can review your employer account on the Employment Development Department's e-Services for Business at **edd.ca.gov/e-Services_for_Business** or call 1-510-877-4800.



**Detach and return this portion with payment**

| Account ID | Amount Due |
|---|---|
| 164-0042-6 | $30,867.89 |
| **Letter ID** | **Issue Date** |
| L0423700016 | April 29, 2026 |
| **Media Number** | |
| 16837461961 | |

Make remittances payable to Employment Development Department. Include Account ID on all checks and inquiries.

Employment Development Department
State of California

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

EMPLOYMENT DEVELOPMENT DEPT
PO BOX 989061
WEST SACRAMENTO, CA 95798-9061

DE 2176 Rev. 14 (2-18)

164004262991231000003086789840016837461961123199991 8

EDD DE 6601

BAY AREA COLLECTION OFFICE
7677 OAKPORT STREET STE. 400
OAKLAND, CA 94621-1933

Employment Development Department
State of California

| | |
|---|---|
| Letter ID: | L1020274224 |
| Issued Date: | April 29, 2026 |
| Mail Date: | May 6, 2026 |
| Account ID: | 164-0042-6 |

81298432_P3738_E752

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

## NOTICE OF ASSESSMENT

This Notice of Assessment (Assessment #4) is for the period beginning July 1, 2025, and ending September 30, 2025. The daily interest for this liability has been calculated through May 14, 2026. This notice only reflects the liability for this period; any other unpaid existing liability is reflected on the enclosed *Statement of Account,* DE 2176.

| Liability: | Wages: | Rate: | Amount: |
|---|---|---|---|
| Unemployment Insurance (UI) | $13,251.00 | 6.2% | $821.56 |
| State Disability Insurance (SDI) | $60,020.00 | 1.2% | $720.24 |
| Personal Income Tax (PIT) | | | $3,595.15 |
| **Sub Total:** | | | **$5,136.95** |
| Less Credits and Payments | | | $0.00 |
| **Sub Total:** | | | **$5,136.95** |
| 1126 Assessment Penalty | | | $770.54 |
| Late Report Penalty | | | $770.54 |
| Wage Item Penalty | | | $60.00 |
| Interest | | | $246.23 |
| **Total Amount Due:** | | | **$6,984.26** |

For more information regarding the e-file and e-pay mandate and approved electronic filing and payment options, visit **edd.ca.gov/EfileMandate**.

If you have any questions regarding this Notice of Assessment, you can review your employer account on the Employment Development Department's (EDD) e-Services for Business at **edd.ca.gov/e-Services_for_Business** or call 1-888-745-3886.

**California Unemployment Insurance Code (CUIC) Explanation**

- Assessment: The estimated assessment was established for the period because you failed to file a return and/or report pursuant to Section 1126 of the CUIC.
- Assessment Penalty: A penalty of 15 percent plus interest on the balance of contributions due was charged pursuant to Section 1126 of the CUIC.
- Late Report Penalty: A 15 percent penalty plus interest has been charged for failure to file the return within 60 days of the due date pursuant to section 1112.5 of the CUIC.
- Wage Item Penalty: A penalty of $20 plus interest for each unreported employee has been charged for failure to file the quarterly wage report within 15 days after the demand notice pursuant to section 1114 of the CUIC.

**Important Information Regarding Assessments**

- An additional penalty amounting to 15 percent of any unpaid assessed contributions will be added to your account if payment is not postmarked or received within 30 days from the mail date of this notice pursuant to Section 1135 of the CUIC.

EDD Employment Development Department
State of California

# NOTICE OF PETITION RIGHTS

## QUESTIONS CONCERNING YOUR ACCOUNT STATEMENT

If you have questions concerning the enclosed notice, you should contact the Employment Development Department (EDD) office at the phone number printed on the notice. If you disagree with the assessment in the notice, you have a right to file a Petition for Reassessment.

## LAST DAY TO FILE A PETITION

Your petition must be mailed or delivered to the office shown below within **30 days from the date of assessment**. This time can be extended by an Administrative Law Judge for not more than 30 days but only upon a showing of "good cause" for the delay.

## WHO WILL BE HEARING YOUR PETITION?

An Administrative Law Judge (ALJ) of the California Unemployment Insurance Appeals Board (CUIAB), which is separate and apart from the EDD, will review, hear, and render impartial and independent decisions in tax and benefit matters related to the California Unemployment Insurance Code (CUIC).

## HOW TO PREPARE YOUR PETITION

Your petition may be informal but must be in writing, signed, and dated by you or your authorized agent, and should:

- Include your account number an the date of the assessment. (Please include a copy of each Notice of Assessment with your petition.)
- Clearly indicate that it is a Petition for Reassessment.
- Describe your complaint and specify the facts or grounds on which the reassessment is sought.
- Include your address and phone number and that of your agent, if any.

## MAIL OR DELIVER THE ORIGINAL AND A COPY OF YOUR PETITION FOR REASSESSMENT TO:

Office of the Chief Administrative Law Judge
California Unemployment Insurance Appeals Board
2400 Venture Oaks Way, Suite 150
Sacramento, CA 95833-4224

- If you change your address before receiving your Notice of Hearing, please notify the CUIAB and the EDD to ensure that you receive all notices and correspondence.
- You are encouraged to contact the EDD office at the phone number printed on the notice and speak with the EDD representative, supervisor, or hearing representative prior to the hearing date to resolve the matter.
- You may withdraw your petition at any time before a decision is issued by sending a withdrawal letter to the Chief ALJ at the address shown, or by contacting the EDD office at the phone number printed on the notice.

## SHOULD YOU PAY THE ASSESSMENT NOW?

- **Interest under Section 1129 of the CUIC continues to accrue on the unpaid balance while your hearing and the decision are pending. *If your petition is ultimately denied, you will owe all tax and accumulated interest within 30 days of the decision and a 15% (10% for periods prior to the 3rd quarter 2014) penalty under Section 1135 of the CUIC will be added on the unpaid balance 30 days from the date of the decision.***
- Your payment of the total amount of the assessment, including penalties and interest, before the issuance of a decision on a Petition for Reassessment will ***automatically*** convert the proceeding to a petition to review the denial of the claim for refund. (Section 1179.5 of the CUIC)

If the decision to be rendered by the CUIAB is still pending on either July 31 or January 31 of any year, it may be to your advantage to pay the assessment. You may gain an advantage because:

- Employers' Unemployment Insurance contributions under Section 976 of the CUIC paid after **July 31** cannot be considered in computing your contribution rate for the next calendar year.
- Employers subject to Federal Unemployment Tax Act cannot receive maximum allowable credit against their federal excise tax for a particular year for contributions under Section 976 of the CUIC paid to the EDD after **January 31** of the following year.

EDD DE 2176

BAY AREA COLLECTION OFFICE
7677 OAKPORT STREET STE. 400
OAKLAND, CA 94621-1933

Employment Development Department
State of California

| | |
|---|---|
| Letter ID: | L1110415920 |
| Issued Date: | March 30, 2026 |
| Mail Date: | April 8, 2026 |
| Account ID: | 164-0042-6 |
| | 37766144_P2317_E2015 |

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

## Statement of Account

This is a summary of your liability for each period, along with the balance owed on your account. The daily interest for these liabilities has been calculated through April 14, 2026. Payment may be submitted online through our secure Web site or by mail using the attached payment voucher at the bottom of the page.

**Account ID: 164-0042-6 Account Type: Employment Tax**

| Period Ending | Tax | Penalty | Interest | Credit | Balance |
|---|---|---|---|---|---|
| 31-Dec-2024 | $4,615.63 | $2,134.41 | $575.37 | $5.78 | $7,319.63 |
| 31-Mar-2025 | $5,623.44 | $2,590.56 | $530.59 | $0.00 | $8,744.59 |
| 30-Jun-2025 | $5,030.75 | $2,323.86 | $327.83 | $0.00 | $7,682.44 |
| **Total:** | | | | | **$23,746.66** |

If you have any questions regarding this statement, you can review your employer account on the Employment Development Department's e-Services for Business at **edd.ca.gov/e-Services_for_Business** or call 1-510-877-4800.



**Detach and return this portion with payment**

| **Account ID** | **Amount Due** |
|---|---|
| 164-0042-6 | $23,746.66 |
| **Letter ID** L1110415920 | **Issue Date** March 30, 2026 |
| **Media Number** 19130349004 | |

Make remittances payable to Employment Development Department. Include Account ID on all checks and inquiries.

Employment Development Department
State of California

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

EMPLOYMENT DEVELOPMENT DEPT
PO BOX 989061
WEST SACRAMENTO, CA 95798-9061



164004262991231000002374666540019130349004123199991 8

EDD DE 6694

PO BOX 826805
SACRAMENTO, CA 94205-0001

Employment Development Department
State of California

| | |
|---|---|
| Letter ID: | L0809605680 |
| Issued Date: | March 30, 2026 |
| Mail Date: | April 8, 2026 |
| Account ID: | 164-0042-6 |
| | 1631582208_P2422_E2417 |

AUDEM MANAGEMENT, LLC
555 BRYANT ST # 347
PALO ALTO CA 94301-1704

# NOTICE OF FORM DELINQUENCY

**Why you are being contacted:**
You are being contacted because the Employment Development Department (EDD) records show you have not filed the following return(s)/report(s) for the period ending December 31, 2025:

*Quarterly Contribution Return and Report of Wages (Continuation),* DE 9C
*Quarterly Contribution Return and Report of Wages,* DE 9

**What you must do:**
You must electronically file these return(s)/report(s) even if you did not employ any persons during that time to comply with the e-file and e-pay mandate. You can file online using e-Services for Business at **edd.ca.gov/e-Services_for_Business**. For more information on this mandate, visit **edd.ca.gov/EfileMandate**. You may disregard this notice if you have recently complied with this written demand.

**What will happen if you do not comply:**
This is a written demand for the quarterly report of wages pursuant to Section 1114 of the California Unemployment Insurance Code. You may be charged a penalty of $20 for each unreported employee unless this report is filed within 15 days from the mail date of this demand notice.

You may be charged a penalty of 15 percent on total unpaid employer contributions and withholdings unless the return/report is filed pursuant to Section 1112.5 of the California Unemployment Insurance Code within 60 days from the original due date of the return/report.

You may contact the EDD at 1-855-866-2656 if you have questions.

# EXHIBIT 13

StarX Networks, Inc. Idaho Department of Labor Power of Attorney and cover letter transmitted through TriNet (June 2024), with DocuSign signing log; Apr. 1, 2024 DocuSign package of California EDD and Idaho employment-tax forms executed in Ritter's name

trinet

# Request for State Tax Accounts Information Guide: Idaho

The information you provided to TriNet indicates you have worksite employees in ID. To process and remit your ID unemployment taxes, the following must be executed and returned to TriNet **within three business days** of receipt of this notification to avoid any late filings and penalties:

| Document | Description |
|---|---|
| Power of Attorney (POA) | Authorizes TriNet to handle unemployment tax matters on your company's behalf. |
| POA | Appoints TALX to handle unemployment claims and benefits on your company's behalf. |
| Completed state registration forms | Allows TriNet to register your company for a state unemployment tax account. |
| Request for Company Demographic Information | • **Business structure and substructure**: Describe your company's business structure and substructure, which is required for some state registrations, using this form.<br>• **If your company is a 501(c)(3) non-profit**, please provide your unemployment tax reporting election:<br>o Contributory: TriNet files and pays unemployment taxes on your company's behalf<br>o Reimbursable: Your company only pays unemployment taxes when a worksite employee submits an unemployment claim. Your company will reimburse the state directly for the amount of the claim. If your company participates in a non-profit trust, reimbursement to the state will come from the trust.<br>• **Owner/Officer information**: Total ownership percentages provided must equal 100%. You can add this information to TriNet (login.TriNet.com) using these instructions. |
| Request for Third-Party Access | • If you have an existing unemployment tax account affiliated with your company federal employer identification number (FEIN), please provide the following so TriNet can establish third-party access:<br>o State unemployment tax account number.<br>• If you don't know your ID unemployment tax account information, please call the ID unemployment tax helpline at **208-332-8942**. TriNet cannot contact the helpline for you as they only assist employers with recovering this information. |

Please note, the above documents that require your execution are provided in the pages that follow.

If you have any questions, log in to TriNet (login.TriNet.com) and click Contact TriNet. If you are unable to log in, go to TriNet (login.TriNet.com) and select one of the following options: Forgot Password, Forgot ID, Unlock Account, Login Help.

© 2023 TriNet Group, Inc. All rights reserved. This communication is for informational purposes only, is not legal, tax or accounting advice, is not an offer to sell, buy or procure insurance. TriNet is the single-employer sponsor of all its benefit plans, which does not include benefits that are not ERISA-covered group health insurance plans and enrollment is voluntary. Official plan documents always control and TriNet reserves the right to amend the benefit plans or change the offerings and deadlines.

# Employer Portal

**(208) 332-3576 or (800) 448-2977**

IDAHO
DEPARTMENT OF LABOR
BRAD LITTLE, GOVERNOR
JANI REVIER, DIRECTOR

## Designation of Authorized Agent for Unemployment Insurance Tax and Benefits

This form must be completed, signed and returned to Idaho Department of Labor to get access to Employer Account information for the Account listed below. This completed Authorization Form may be returned as an attachment using the Employer Portal messaging system or FAXED to 208-334-6301.

## Employer Information

State Employer Account # ____________________

Federal Employer Identification #: 931457487

Legal Business Name: StarX Networks, Inc.

Doing Business As: StarX Networks, Inc.

## Employer Portal User Information

User's email: ____________________ Name: TALX UCM SERVICES INC.

Address & Phone # PO BOX 283, St.Louis, MO 63166. (800) 366-6660 Broker ID BR000000003

User's Signature ____________________

Check all that apply:

____Administrator - Controls user access to the employer account and has all the permissions listed below.

____Manage UI Tax Filing - Report and pay UI taxes on line.

____Manage Tax Addresses - Maintains the address for tax notices.

_✔_Manage Benefit Addresses - Maintains benefit addresses for separation statements.

_✔_Manage Also Known As - Maintains employer names for use with benefit claims.

_✔_Manage Separations - Reports employee separations to the department.

____View Benefit Charge Statements - View current and past Benefit Charge Statements.

_✔_Manage Contacts - Keep Tax and Benefit contacts current.



| Michelle Ritter | CEO | 6504681552 |
|---|---|---|
| **Sign & print name of Owner/Officer/Employer** | **Title** | **Phone** |

Idaho Department of Labor - UI Compliance Bureau **PEOEX**

PEO Letter of Intent

| **PEO** | | **CLIENT** | |
|---|---|---|---|
| Name: TriNet HR III Inc | | Name: StarX Networks, Inc. | |
| DBA: | | DBA: StarX Networks, Inc. | |
| Address: 9000 Town Center Pkwy | | Address: 0 Bond St Fl 4 | |
| City, State, Zip: Bradenton, FL, 34202 | | City, State, Zip: New York , NY , 10012 | |
| FEIN: 481304650 | SUTA: | FEIN: 931457487 | SUTA: |

This is to inform the Idaho Department of Labor that the PEO and the above-named client have signed an agreement to enter into a co-employer relationship effective ____________________________.

| Idaho Employee Start Date with PEO Date: ___________________________ | First Idaho Employee Paycheck Issue Date Date: ________________________________ | # of Idaho Employees: |
|---|---|---|

Does the client have employees excluded from the PEO arrangement? ☐ Yes ☐ No

NOTE: Any employees excluded from the PEO arrangement or hired by the client external to the PEO arrangement are covered for unemployment insurance tax purposes and must be reported under the client's SUTA account.

PLEASE CHOOSE ONE OF THE FOLLOWING:

| | |
|---|---|
| ☐ | 1. Report the client **under the PEO's SUTA account** and transfer the client's experience rate. |
| ☑ | 2. Report the client **under the client's SUTA account**. |

## CLIENT INFORMATION

| Type of Business: | ☐ Sole Proprietorship | ☐ Partnership | ☐ Corporation |
|---|---|---|---|
| | ☐ Limited Liability Company | ☐ Non-Profit | ☐ S Corporation |
| If an LLC, how have you chosen to be taxed for income tax purposes? | ☐ Sole Proprietorship | ☐ Partnership | ☐ Corporation |
| Physical Address (in Idaho): ID,USA. | | | |
| Business Phone: 6504681552 | | Fax: | |
| Contact Name: Michelle Ritter | | Contact Title: CEO | |
| Contact Phone: 6504681552 | | Contact Email: mritter@starx.com | |

| Owner/Officer Name | Title | % Owned | Address of Residence | SSN and Phone |
|---|---|---|---|---|
| Michelle Ritter | CEO | 100 | 1060 Brooklawn Dr, Los Angeles, CA | 609824772<br>5108287772 |
| | | | | |
| | | | | |
| | | | | |

| | | | |
|---|---|---|---|
| | | [signature] | Jun 25, 2024 |
| PEO Signature | Date | Client Signature | Date |

box SIGN

# Signing Log

Document ID: 4YZW759Y

| | |
|---|---|
| Disclosure: | Disclosure document (attached) has been presented to and accepted by all signers indicated below. |

**Sender: portalprod-24S3 (appuser_1426652_b3doz8sikg@boxdevedition.com)**

**ID_Cover_Letter-1716479163.pdf**
SHA256 security hash:
9bdea41197092d88f38f6f7ea0bb4bba6e8e7a5a07eb2621fc97129344d8de70
Uploaded on Jun 25, 2024, 09:41:39:146 p.m. by portalprod-24S3 (appuser_1426652_b3doz8sikg@boxdevedition.com) )

**ID_POA-1716479161.pdf**
SHA256 security hash:
81ac33bc0ed2a976e5850f14511dc4fa3a292a4c996ee3f47f2ee650f1c15657
Uploaded on Jun 25, 2024, 09:41:39:214 p.m. by portalprod-24S3 (appuser_1426652_b3doz8sikg@boxdevedition.com) )

**ID_POA_LOI-1716479159.pdf**
SHA256 security hash:
db3b41295bd9ede4e01ff8f8256a1e10fef61d7535d90d44a5b50e6d07d33687
Uploaded on Jun 25, 2024, 09:41:39:259 p.m. by portalprod-24S3 (appuser_1426652_b3doz8sikg@boxdevedition.com) )

**ID_POA_TALX-1716479156.pdf**
SHA256 security hash:
8fdbb215baa178fa0f5703b56f9acd19357a18e575cc53a51b2fa6ade0226c03
Uploaded on Jun 25, 2024, 09:41:39:301 p.m. by portalprod-24S3 (appuser_1426652_b3doz8sikg@boxdevedition.com) )

Created on: Jun 25, 2024, 09:41:38:989 p.m. (UTC)

**In-Person signer: mritter@starx.com**

| | |
|---|---|
| Sender provided system name: | Not provided by Sender |
| Sender provided user id: | 00010343147 |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | Michelle Ritter |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | CEO |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | mritter@starx.com |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | 609824772 |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | CEO |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | 100 |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | 1060 Brooklawn Dr, Los Angeles, CA |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | Michelle Ritter |
| Text added, ID_POA_LOI-1716479159.pdf, page 1: | 5108287772 |

box SIGN

# Signing Log

Signature added, ID_POA-1716479161.pdf, page 1:




Text added, ID_POA-1716479161.pdf, page 1: CEO

Signature added, ID_POA_TALX-1716479156.pdf, page 1:




Text added, ID_POA_TALX-1716479156.pdf, page 1: Michelle Ritter

Text added, ID_POA_TALX-1716479156.pdf, page 1: CEO

Signature added, ID_POA_LOI-1716479159.pdf, page 1:




Text added, ID_POA_LOI-1716479159.pdf, page 1: Jun 25, 2024

IP address: 76.53.8.234

User agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/125.0.0.0 Safari/537.36

Document signed in person: Jun 25, 2024, 09:43:15:634 p.m. (UTC)

Signature frame id: 13KR83PV-4YZW759Y

---

**Gets a copy: portalprod-24S3 (appuser_1426652_b3doz8sikg@boxdevedition.com)**

box SIGN

Attachment

**Disclosure**

Please read this *Electronic Record and Signature Disclosure* ("Disclosure") carefully. It contains important information.

In this Disclosure:

- "We," "us," and "our" means the person or organization using the Box Sign Service to present you with Communications to review and/or sign, and our current and future affiliates and assignees (if any). Box, Inc., and its affiliates are not parties to this Disclosure unless Box, Inc., or one of its affiliates is the party using the Box Sign Service to present these Communications to you.
- "You" and "your" means to the person giving consent to the use of electronic signatures and records.
- "Communications" mean all the documents and information we provide to you through the Box Sign Service to review, or that you use the Box Sign Service to sign or submit or agree to at our request, which are related to your Transaction. Communications include but are not limited to disclosures, notices, agreements, promissory notes, statements, undertakings, and other information.
- "Box Sign Service" means the Box electronic signing platform you are using to electronically review and sign Communications.
- "Transaction" means the consumer or business transaction for which you are reviewing and signing Communications using the Box Sign Service.

From time to time, we may be required by law to provide you with certain information related to the Transaction "in writing" – which means you have a right to receive that information on paper. However, with your consent, we may provide this information to you electronically instead. We also need your general consent to use electronic records and signatures.

Your electronic signature on Communications presented and signed through the Box Sign Service will be just as enforceable as a handwritten signature on a paper document.

## 1. Scope of Your Consent

This Disclosure applies to all Communications that we may provide to you through the Box Sign Service. Your consent to the use of electronic signatures and records does not mean that we are required to complete any Transaction or provide any Communication to you electronically. We may, at our option, complete any Transaction and deliver any Communication to you on paper, and require you to execute any Communication manually, should we choose to do so.

## 2. Keeping and Obtaining Paper Copies

You will have the opportunity to print out and retain a copy of all the Communications you review or sign at our request through the Box Sign Service. You have a right to obtain paper copies of any information we are required to provide you "in writing." The Box Sign Service gives you the opportunity to print copies of Communications you review and/or sign. You may also request a paper copy of any Communication by contacting us at the customer service contact information associated with the Transaction, provided that you provide us with sufficient information to identify the Transaction and the Communications you are requesting. We may charge you a service fee for any paper copies that you request. Any service fee for paper copies you request will be disclosed to you before you are charged.

## 3. System Requirements

To review and sign Communications electronically using the Box Sign Service, you must have:

- An Up-to-Date Version (defined below) of an Internet browser we support (more information about the browsers we support can be found at: https://support.box.com/hc/en-us/articles/360043696234-Understand-the-Box-Policy-For-Browser-And-OS-Support,
- A connection to the Internet,
- An Up-to-Date Version of an email management program, and
- A computer and an operating system capable of supporting all of the above. You will also need a printer if you wish to print out and retain records on paper, and electronic storage and an Up-to-Date Version of a program that accurately reads and displays PDF files (such as Adobe Acrobat Reader) if you wish to retain and later view records in electronic form.

You must also have an active email address.

In some cases, you may also need a specific brand or type of device that can support a particular software application, including an application intended for particular mobile or handheld devices.

By "Up-to-Date Version," we mean a version of the software that is being supported by its publisher on the date of your Transaction. Beta versions of software are not supported.

## 4. How to Withdraw Your Consent

If you decide to withdraw your consent to the use of electronic signatures and records before you complete the Transaction, you may do so by:

- Selecting "*Decline Request*" in the Box Sign Service in the menu under the ellipsis displayed in the upper right corner of the screen presenting the Communication to you for signing, or by
- Contacting our customer representative assisting you with this Transaction before finishing the signing process.

If you withdraw your consent before your Transaction is complete, you will be unable to proceed electronically. You may be required to restart the Transaction via paper, or you may be unable to complete the Transaction at all.

Your withdrawal of consent does not affect any other consent you give us at any other time to use electronic records and signatures. Withdrawing consent also does not affect any agreement you make in the Communications, or any other agreement with us, to use electronic records and signatures in the future.

## 5. Updating Contact Information

You may update your contact information with us at any time by:

- Notifying our customer service representative assisting you,
- Calling us at the customer service contact information associated with your Transaction, or
- Using any online process we make available to you for updating contact information.

## 6. Consent and Acknowledgment

By checking the box indicating your agreement to use electronic records and signatures, you are:

- Acknowledging that you have read and understand this Disclosure;
- Consenting to use electronic signatures and records in connection with communications we provide to you through the Box Sign Service;
- Representing and warranting that you are authorized to give consent on behalf of both yourself and any other person entering into the Transaction along with you or on your behalf; and
- Confirming that you are able to receive, access, and view the information presented electronically via the methods described above.

(1) DocuSign (4-19-24)

(2) Starx Unemployment Tax (7-1-24)

(3) EDD (CA)

(4) Employer IDAHO

(5) Box Sign (Fraud)

(6) Fragomen (Mitch Bajema)
NY
4-23-24

1) DocuSign (4-19-24)

2) Start Unemployment Tax (7-1-24)

3) EDD (CA)

4) Employer IDAHO

5) Bot Sign (Fraud)

6) [illegible] (Mitch Bajema)
NY
4-23-24

DocuSign

## Certificate Of Completion

Envelope Id: 46F08B4B48CF4900B5519E34A31AF373 | Status: Completed

Subject: Document to Sign:StarX Networks, Inc.- Spin Off

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 10 | Signatures: 5 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Stephanie Lopez |
| AutoNav: Enabled | | One Park Place Suite 600 |
| EnvelopeId Stamping: Enabled | | Dublin, CA 94568 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | stephanie.lopez@trinet.com |
| | | IP Address: 44.241.73.113 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>4/19/2024 4:38:33 PM | Holder: Stephanie Lopez<br>stephanie.lopez@trinet.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Michelle Ritter<br>mritter@starx.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Michelle Ritter<br>A7CB1D3588A3464...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 76.53.8.234 | Sent: 4/19/2024 4:42:20 PM<br>Resent: 4/22/2024 7:37:38 AM<br>Resent: 4/23/2024 9:44:57 AM<br>Viewed: 4/23/2024 10:08:14 AM<br>Signed: 4/23/2024 10:08:34 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 4/22/2024 7:51:20 AM<br>ID: f44d7157-8ea6-45f9-b10a-4c949658fccd | | |
| Mitchell Bajema<br>mbajema@starx.com<br>Security Level: Email, Account Authentication (None) | **Completed**<br><br>Using IP Address: 47.144.155.179 | Sent: 4/23/2024 10:08:36 AM<br>Viewed: 4/23/2024 10:36:02 AM<br>Signed: 4/23/2024 11:54:05 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 4/23/2024 10:36:02 AM<br>ID: b6326734-4adf-40fc-8671-0b9701e51bf4 | | |
| Beth Foland<br>beth.foland@trinet.com<br>Manager, Legal Operations<br>TriNet USA, Inc.<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Beth Foland<br>18B0E65EF2C6482...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.225.173.57 | Sent: 4/23/2024 11:54:07 AM<br>Viewed: 4/24/2024 5:27:17 AM<br>Signed: 4/24/2024 5:27:37 AM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |
| Adriana Rosales<br>adriana.rosales@trinet.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | COPIED | Sent: 4/19/2024 4:42:20 PM<br>Viewed: 4/19/2024 4:42:51 PM |
| Contracts<br>contracts@trinet.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Accepted: 9/11/2018 1:56:14 PM<br>ID: 7a4c711d-2015-40bc-96eb-8f4e4e6a815d | COPIED | Sent: 4/24/2024 5:27:39 AM |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 4/19/2024 4:42:20 PM |
| Envelope Updated | Security Checked | 4/23/2024 9:42:30 AM |
| Envelope Updated | Security Checked | 4/23/2024 9:42:30 AM |
| Certified Delivered | Security Checked | 4/24/2024 5:27:17 AM |
| Signing Complete | Security Checked | 4/24/2024 5:27:37 AM |
| Completed | Security Checked | 4/24/2024 5:27:39 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, TriNet HR Corporation (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the Ã¦I agreeÃ† button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign Ã´Withdraw ConsentÃ¶ form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact TriNet HR Corporation:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: jennifer.knights@trinet.com

**To advise TriNet HR Corporation of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at jennifer.knights@trinet.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.
**To request paper copies from TriNet HR Corporation**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to jennifer.knights@trinet.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.
**To withdraw your consent with TriNet HR Corporation**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to jennifer.knights@trinet.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| | |
|---|---|
| Operating Systems: | Windows2000Â¬ or WindowsXPÂ¬ |
| Browsers (for SENDERS): | Internet Explorer 6.0Â¬ or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0Â¬, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Ã² Allow per session cookies<br>Ã² Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.
**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to

other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the Ã¦I agreeÃ† button below.
By checking the Ã¦I AgreeÃ† box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify TriNet HR Corporation as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by TriNet HR Corporation during the course of my relationship with you.

Gmail Michelle Ritter <michelleritter929@gmail.com>

# Re: [EXT] Re: 24S3, StarX Networks, Inc., Unemployment Tax Documents -CA + TSR Docusign Signor

1 message

**Michelle Ritter** <mritter@starx.com> Mon, Jul 1, 2024 at 3:02 PM
To: Adriana Rosales <adriana.rosales@trinet.com>
Cc: Michelle Ritter <michelleritter929@gmail.com>, Lisa Coyle <lisa.coyle@blankrome.com>

Thank you very much. I'm looking at these dates and I was not at that IP address on that date.

—
**Michelle Ritter**
StarX, CEO and Founder
mritter@starx.com
(o) +1 917-200-0338

On Jul 1, 2024, at 2:20 PM, Adriana Rosales <adriana.rosales@trinet.com> wrote:

Hi Michelle,

Hope you are doing well. I am sharing here the certificate that is attached to the Docusign you signed related to your TriNet Service Agreement. I was advised that in the Docusign you received as completed, you will also be able to view the history there.

As you can see, they all have your name including the tax packet as noted below. The tax packet cannot be accessed outside of the platform. Only you would have access to that using your user and password.

Hope this helps you.

Sincerely,

**Adriana Rosales, SPHR**

Enterprise Account Executive

+1.714.258.6270

HR SOLUTIONS FOR THE PEOPLE THAT MATTER

TriNet.com I Twitter I Instagram_I Facebook_I LinkedIn

The greatest accolade is a referral from our customers. Allow us to reward you for your promotion by using this link to refer your friends: **https://referrals.trinet.com/AdrianaRosales**

TriNet does not provide legal, accounting, or tax advice. This message is confidential and solely for the intended recipient. Any other use is prohibited.

**From:** Payroll Tax Compliance <payrolltax-compliance@trinet.com>
**Sent:** Monday, July 1, 2024 2:13 PM
**To:** mritter@starx.com; rdomingos@starx.com
**Cc:** Adriana Rosales <adriana.rosales@trinet.com>
**Subject:** RE: [EXT] Re: 24S3, StarX Networks, Inc., Unemployment Tax Documents -CA

Hi Michelle,

Currently, you are the only designated Authorized Signer role holder which means when you log into the platform, you would find a pending inbox task with any outstanding state tax registration documents requiring your signature. Most state tax packets can be electronically signed and returned directly through the portal, similar to DocuSign functionally however the system knows which documents can be electronically signed verse which have special notary or wet signature requirements. This Auth Signer role should be reserved for individuals with the proper authority to sign legal documents on behalf of the company.

Rustin and yourself are both currently HR Security role holders. This permission set allows you to maintain (add/remove/change) whoever is designated as an Authorized Signer.

To clarify, the CA and ID documents received on June 25th were signed by Michelle Ritter. I don't see state tax packets pending at this time.

Thank you,
Katie

--------------- Original Message ---------------
**From:** Michelle Ritter [mritter@starx.com]
**Sent:** 6/25/2024 11:10 AM
**To:** adriana.rosales@trinet.com
**Cc:** mbajema@starx.com; ato@starx.com; leslie.williams@trinet.com; steven.gazza@trinet.com; ric.tran@trinet.com
**Subject:** [EXT] Re: 24S3, StarX Networks, Inc., Unemployment Tax Documents -CA

WARNING: Do not click links or open attachments unless you recognize the source of the email and know the contents are safe.

Hi Adriana,

Thank you for following up here. I do not have access to the Docusign, which is in part the problem.

Can you please give me a call if you get a break regardless? 310-945-7922

Thank you

—

**Michelle Ritter**

StarX, CEO and Founder

mritter@starx.com

(o) +1 917-200-0338

On Jun 25, 2024, at 11:07 AM, Adriana Rosales <adriana.rosales@trinet.com> wrote:

Mitch, Michelle and Ato,

Prior to recent events departure Ran and Connor were working with Leslie in our tax team to ensure we had the appropriate California State Tax reporting. As of today it seems there is still an outstanding matter of obtaining signed documents as Leslie notes below. This matter is quite sensitive and we need to ensure we get it accomplished prior to the quarterly tax filing deadline.

Michelle the documents have been sent to you on June 21st, 2024, I realize you are tremendously busy but can you log in and complete the DocuSign for the tax team? The quarter is closing out on June 30th and we are running up against the deadline.

I appreciate you all and hope we can get this completed for our team today.

Sincerely,

Adriana Rosales, SPHR

Enterprise Account Executive
Direct Office 714.258.6270

HR SOLUTIONS FOR THE PEOPLE THAT MATTER
TriNet.com | Twitter | Instagram | Facebook

TriNet does not provide legal, accounting, or tax advice. This message is confidential and solely for the intended recipient.
Any other use is prohibited.
---------------------------------------------------

--------------- Original Message ---------------
**From:** Payroll Tax Compliance [payrolltax-compliance@trinet.com]
**Sent:** 6/21/2024 1:23 PM
**To:** mbajema@starx.com; rrabinowitch@starx.com; ccoit@starx.com
**Cc:** leslie.williams@trinet.com
**Subject:** RE: 24S3, StarX Networks, Inc., Unemployment Tax Documents -CA

Hello,

I hope this email finds you well.

I have reviewed the CA unemployment tax documents that were submitted through our platform.

Unfortunately, neither of the documents were signed. I am regenerating the request within the platform for them to be signed. If you have any questions or concerns, please let me know.

Kind Regards,

Leslie Williams
Specialist II. Payroll Tax Compliance
Tax Compliance Dept 800.243.8489

HR SOLUTIONS FOR THE PEOPLE THAT MATTER
TriNet.com | Twitter | Instagram | Facebook

TriNet does not provide legal, accounting, or tax advice. This message is confidential and solely for the intended recipient.
Any other use is prohibited.

--------------- Original Message ---------------
**From:** Payroll Tax Compliance [payrolltax-compliance@trinet.com]
**Sent:** 6/5/2024 1:56 PM
**To:** mbajema@starx.com; rrabinowitch@starx.com; ccoit@starx.com; leslie.williams@trinet.com
**Subject:** RE: 24S3, StarX Networks, Inc., Unemployment Tax Documents -CA

Hello,

I hope this email finds you well.

I have reviewed the CA unemployment tax documents that were submitted through our platform. Unfortunately, neither of the documents were signed. I am regenerating the request within the platform for them to be signed. If you have any questions or concerns, please let me know.

Kind Regards,

Leslie Williams
Specialist II. Payroll Tax Compliance
Tax Compliance Dept 800.243.8489

HR SOLUTIONS FOR THE PEOPLE THAT MATTER
TriNet.com | Twitter | Instagram | Facebook

TriNet does not provide legal, accounting, or tax advice. This message is confidential and solely for the intended recipient.
Any other use is prohibited.

--------------- Original Message ---------------
**From:** Payroll Tax Compliance [payrolltax-compliance@trinet.com]
**Sent:** 5/22/2024 1:04 PM
**To:** mbajema@starx.com; rrabinowitch@starx.com; ccoit@starx.com; leslie.williams@trinet.com
**Subject:** 24S3, StarX Networks, Inc., Unemployment Tax Documents -CA

Hello

trinet

Ritter v. Schmidt, et al., No. 2:26-cv-04382-JGB-Ex (C.D. Cal.)

First Amended Complaint

# EXHIBIT 14

Wells Fargo: Oct. 8, 2024 closure letters (SPM -4631/-6449; Audem -0882) and Meredith transmittal email; Oct. 10, 2024 Meredith email; Oct. 11, 2024 commercial-card termination letter; Oct. 18 and Oct. 25, 2024 Meredith emails; Nov. 14, 2024 "Steel Perlot Management Connection" email

**From:** "Meredith, Lisa M" <lisa.meredith@wellsfargo.com>
**Date:** October 8, 2024 at 2:26:12 PM PDT
**To:** Michelle Ritter <mritter@audem-mgmt.com>, mritter@steelperlot.com
**Subject: Steel Perlot and Audem Management account closure notifications**

Good afternoon, Michelle, I am attaching letters that were mailed out today advising you of the planned closures of the checking and savings accounts for Steel Perlot Management LLC and Audem Management, LLC.

Please contact me if you have any questions.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560
lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at https://www.wellsfargo.com/privacy-security/

**If you need assistance with documents that may be attached, please contact the sender of this message.**

WIMBL123

WELLS FARGO THE PRIVATE BANK

1300 SW Fifth Avenue
Suite 1800
P6101-180
Portland, OR 97201
800.688.6870 Toll Free

October 8, 2024

Steel Perlot Management LLC
31 W 21st St
New York NY 10010-6800

Subject: Closing of Analyzed Business Checking account ending in 4631 and Business Market Rate Savings Account ending in 6449.

Dear Michelle Ritter

To oversee and manage risks in our banking operations, we regularly review our accounts. Recently, we reviewed this account relationship and, as a result, we have decided to close the accounts above and conclude our relationship with you. This will be effective at the close of business on November 8, 2024. Please review the information below to help you prepare for the account closure.

**Account closing information for you**

A cashier's check for any amount remaining in the accounts will be mailed to you within ten business days of the date the account is closed.

Checks drawn against the account that are presented to the bank after November 8, 2024 will be returned unpaid. If any payments are directly deposited to the account, these payments will no longer be accepted after the account is closed. Please make other arrangements to receive these payments. Similarly, any payments you make to others that are automatically withdrawn from the account will be discontinued after the account is closed. As a result, if any automatic payments are withdrawn from the account, you should make arrangements to ensure these payments continue to be made on time.

Please note, our risk assessment process and results are confidential, and our decision to close the account is final. You may choose to close the account before this date. If circumstances arise that necessitate an earlier closing, we reserve the right to close the account sooner than November 8, 2024

If you have questions, you can call 971.978.4673 Monday – Friday, 8:00 a.m. to 5:00 p.m. PT

Thank you.

Sincerely,

Lisa Meredith
Executive Director
Wells Fargo Wealth & Investment Management

Wells Fargo Wealth Investment Management provides products and services through Wells Fargo Bank, N.A. and its various affiliates and subsidiaries.

Wells Fargo Bank, N.A. Member FDIC

WELLS FARGO THE PRIVATE BANK

1300 SW Fifth Avenue
Suite 1800
P6101-180
Portland, OR 97201
800.688.6870 Toll Free

October 8, 2024

Audem Management, LLC
31 W 21st St
New York NY 10010-6800

Subject: Closing of Analyzed Business Checking account ending in 0882

Dear Michelle Ritter

To oversee and manage risks in our banking operations, we regularly review our accounts. Recently, we reviewed this account relationship and, as a result, we have decided to close the account above and conclude our relationship with you. This will be effective at the close of business on November 8, 2024. Please review the information below to help you prepare for the account closure.

**Account closing information for you**

A cashier's check for any amount remaining in the accounts will be mailed to you within ten business days of the date the account is closed.

Checks drawn against the account that are presented to the bank after November 8, 2024 will be returned unpaid. If any payments are directly deposited to the account, these payments will

returned unpaid. If any payments are directly deposited to the account, these payments will no longer be accepted after the account is closed. Please make other arrangements to receive these payments. Similarly, any payments you make to others that are automatically withdrawn from the account will be discontinued after the account is closed. As a result, if any automatic payments are withdrawn from the account, you should make arrangements to ensure these payments continue to be made on time.

Please note, our risk assessment process and results are confidential, and our decision to close the account is final. You may choose to close the account before this date. If circumstances arise that necessitate an earlier closing, we reserve the right to close the account sooner than November 8, 2024

If you have questions, you can call 971.978.4673 Monday – Friday, 8:00 a.m. to 5:00 p.m. PT

Thank you.

Sincerely,

Lisa Meredith
Executive Director
Wells Fargo Wealth & Investment Management

Wells Fargo Wealth Investment Management provides products and services through Wells Fargo Bank, N.A. and its various affiliates and subsidiaries.

Wells Fargo Bank, N.A. Member FDIC

WELLS FARGO THE PRIVATE BANK

1300 SW Fifth Avenue
Suite 1800
P6101-180
Portland, OR 97201
800.688.6870 Toll Free

October 8, 2024

Steel Perlot Management LLC
31 W 21st St
New York NY 10010-6800

Subject: Closing of Analyzed Business Checking account ending in 4631 and Business Market Rate Savings Account ending in 6449.

Dear Michelle Ritter

To oversee and manage risks in our banking operations, we regularly review our accounts. Recently, we reviewed this account relationship and, as a result, we have decided to close the accounts above and conclude our relationship with you. This will be effective at the close of business on November 8, 2024. Please review the information below to help you prepare for the account closure.

**Account closing information for you**

A cashier's check for any amount remaining in the accounts will be mailed to you within ten business days of the date the account is closed.

Checks drawn against the account that are presented to the bank after November 8, 2024 will be returned unpaid. If any payments are directly deposited to the account, these payments will no longer be accepted after the account is closed. Please make other arrangements to receive these payments. Similarly, any payments you make to others that are automatically withdrawn from the account will be discontinued after the account is closed. As a result, if any automatic payments are withdrawn from the account, you should make arrangements to ensure these payments continue to be made on time.

Please note, our risk assessment process and results are confidential, and our decision to close the account is final. You may choose to close the account before this date. If circumstances arise that necessitate an earlier closing, we reserve the right to close the account sooner than November 8, 2024

If you have questions, you can call 971.978.4673 Monday – Friday, 8:00 a.m. to 5:00 p.m. PT

Thank you.

Sincerely,

Lisa Meredith
Executive Director
Wells Fargo Wealth & Investment Management

Wells Fargo Wealth Investment Management provides products and services through Wells Fargo Bank, N.A. and its various affiliates and subsidiaries.

Wells Fargo Bank, N.A. Member FDIC

WELLS FARGO THE PRIVATE BANK

1300 SW Fifth Avenue
Suite 1800
P6101-180
Portland, OR 97201
800.688.6870 Toll Free

October 8, 2024

Audem Management, LLC
31 W 21st St
New York NY 10010-6800

Subject: Closing of Analyzed Business Checking account ending in 0882

Dear Michelle Ritter

To oversee and manage risks in our banking operations, we regularly review our accounts. Recently, we reviewed this account relationship and, as a result, we have decided to close the account above and conclude our relationship with you. This will be effective at the close of business on November 8, 2024. Please review the information below to help you prepare for the account closure.

**Account closing information for you**

A cashier's check for any amount remaining in the accounts will be mailed to you within ten business days of the date the account is closed.

Checks drawn against the account that are presented to the bank after November 8, 2024 will be returned unpaid. If any payments are directly deposited to the account, these payments will no longer be accepted after the account is closed. Please make other arrangements to receive these payments. Similarly, any payments you make to others that are automatically withdrawn from the account will be discontinued after the account is closed. As a result, if any automatic payments are withdrawn from the account, you should make arrangements to ensure these payments continue to be made on time.

Please note, our risk assessment process and results are confidential, and our decision to close the account is final. You may choose to close the account before this date. If circumstances arise that necessitate an earlier closing, we reserve the right to close the account sooner than November 8, 2024

If you have questions, you can call 971.978.4673 Monday – Friday, 8:00 a.m. to 5:00 p.m. PT

Thank you.

Sincerely,

Lisa Meredith
Executive Director
Wells Fargo Wealth & Investment Management

Wells Fargo Wealth Investment Management provides products and services through Wells Fargo Bank, N.A. and its various affiliates and subsidiaries.

Wells Fargo Bank, N.A. Member FDIC

WELLS FARGO

# RE: Steel Perlot and Audem Management account closure notifications

**mritter@steelperlot.com**

**Received:** Oct 10, 2024 10:43 AM
**Expires:** Nov 9, 2024 11:43 AM
**From:** lisa.meredith@wellsfargo.com
**To:** mritter@steelperlot.com
**Cc:** mritter@audem-mgmt.com
**Subject:** RE: Steel Perlot and Audem Management account closure notifications

**Attachments:** Audem Management - COBO_0a05f509-52d4-361c-ece9-0821948dc21b.pdf , Authorization for Information_64ca0295-68b4-9f65-0d15-c2445a854f10.pdf , Audem Management - EIN Confirmation 4853-4757-1976 v.1.pdf , Certification of Beneficial Owners_8e3f8719-ef7d-8c67-1a98-41616e40e3d6.pdf , Steel Perlot Management, LLC - 2021.09.21 Operating Agreement (MR).pdf , Audem Management, LLC - CA Qualification.pdf , Steel Perlot Management, LLC - 2021.09.22 IRS EIN Assignment Letter (87-2771416).pdf , AFI - Audem Management.pdf , Audem Management, LLC-Operating Agreement.docx.pdf , Steel Perlot Management, LLC - 2021.09.21 Certificate of Formation (DE).pdf

This message was sent securely using Zix®

Hi Michelle, see attached account opening documents for Steel Perlot Management and Audem Management, as requested. Our decision in Wealth and Investment Management to close the accounts and exit the relationship is final, but we understand that you would like to continue to operate these entities and have banking services. Going forward, since there will be no connection to the Hillspire relationship, it should be housed in the small business area of Wells Fargo. I am working to find someone in our Small Business Banking department in NYC, who can help you establish a new relationship and open new accounts for these entities. I will give you a call shortly to discuss.

Best,

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** Michelle Ritter <mritter@steelperlot.com>
**Sent:** Wednesday, October 9, 2024 9:36 AM
**To:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>
**Cc:** Michelle Ritter <mritter@audem-mgmt.com>; James Knopf <jsk@knopflaw.com>
**Subject:** Re: Steel Perlot and Audem Management account closure notifications

Hi Lisa,

Thank you for sending. We need to obtain all of the original account opening documents and bank records please.

Unfortunately, I have not been able to control my own companies so we need to get the operating agreements as quickly as possible please. In the meantime, can we please halt these closures until we discuss?

I intend to fully operate SPM and would like to please get a proposed plan as to how we can disentangle SPM and Audem from Hillspire's Wells Fargo accounts. Can you please help with this as soon as possible?

Separately, I'd like to discuss a broader business accounts plan with you. Please let me know if you have some availability later tomorrow or Friday.

Thank you on all,

Michelle

> On Oct 8, 2024, at 2:26 PM, Meredith, Lisa M <lisa.meredith@wellsfargo.com> wrote:
>
> Good afternoon, Michelle, I am attaching letters that were mailed out today advising you of the planned closures of the checking and savings accounts for Steel Perlot Management LLC and Audem Management, LLC.
>
> Please contact me if you have any questions.
>
> Lisa Meredith
>
> Lead Wealth Management Banker, Executive Director
> Western Division
> NMLSR ID 1953715
>
> Wells Fargo Wealth & Investment Management
> 1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
> Tel 971.978.4673 | Cell 971.252.5622
>
> The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560
> lisa.meredith@wellsfargo.com
>
> Pronoun: She/Her/Hers
>
> Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.
>
> This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.
>
> For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additiona

**If you need assistance with documents that may be attached, please contact the sender of this message.**

WIMBL123

<Steel Perlot Management Account Closure Letter October 8 2024.pdf>

<Audem Management Account Closure letter October 8 2024.pdf>

This message was secured by **Zix** ®.

This service is hosted by Zix on behalf of Wells Fargo More Information

WELLS FARGO

October 11, 2024

Steel Perlot Management LLC
31 W 21st St
New York, NY 10010-6800

RE: WellsOne® Commercial Card Agreement

Dear Michelle Ritter, CEO:

The purpose of this letter is to provide Steel Perlot Management LLC ("**Customer**", "**you**", or "**your**") thirty (30) days' prior written notice that, pursuant to the WellsOne® Commercial Card Agreement dated on or about December 2, 2021, by and between Customer and Wells Fargo Bank, N.A. ("**Wells Fargo**") (as amended, supplemented, restated, or otherwise modified from time to time, the "**Agreement**"; capitalized terms used herein but not specifically defined herein will have the meaning assigned to such terms in the Agreement), Wells Fargo is hereby terminating the Agreement effective as of November 11, 2024. In addition, all Cards issued pursuant to the Agreement will be cancelled as of the above-referenced date and may not be used thereafter.

This decision to terminate the Agreement was made with careful review and consideration. If you would like to receive a statement of specific reasons why this action was taken, please contact me at the telephone number shown below within sixty (60) days of the date of this letter. Upon your request, I will provide you with a written statement of reasons within thirty (30) days after receiving your request.

Wells Fargo would like to remind you of your obligations under the Agreement. Upon termination, any unpaid balances on the Cards shall become immediately due and payable, and Wells Fargo may immediately debit your Account for payment of such balances. In addition, you have a continued responsibility for full payment of the current balance on the Cards as well as any and all purchases, fees, and charges incurred before termination including any such purchases, charges, and fees that post after termination of the Cards. Therefore, your Account subject to the Agreement, will remain open for a period of 60 days after termination in order to settle all subsequent transactions that post after the termination date. Lastly, you also have an obligation to destroy all Cards issued under the Agreement.

In addition, Wells Fargo also reminds you of the mutual obligations within the Agreement, regarding the return or destruction, as requested by the disclosing party, of all Confidential Information upon termination of the Agreement.

As a reminder, historical data will be available online for sixty (60) days after termination. Please ensure you retrieve your information within this time period.

Wells Fargo continues to reserve all of its rights and remedies pursuant to the Agreement and under law and in equity. If you have any questions concerning the content of this letter, please contact me at the referenced telephone number below.

© 2024 Wells Fargo Bank, N.A.

Sincerely,

Lisa Meredith
Executive Director
lisa.m.meredith@wellsfargo.com 971.978.4673
Wells Fargo Bank, N.A.

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington DC 20552.

From: Meredith, Lisa M lisa.meredith@wellsfargo.com
Subject: RE: Steel Perlot and Audem Management account closure notifications
Date: Oct 10, 2024 at 12:44:08 PM
To: Michelle Ritter mritter@steelperlot.com

Hi Michelle, I set you the account opening documents earlier today, and left you a voice mail. I am trying to get you connected to a small business relationship manager in our New York office, but it would be helpful if you could clarify the ongoing operations of Audem Management – the profile in our system indicates this entity owns a single family home that is an STR with AirBNB – is that correct? If not, please let me know the operations of Audem Management.

Thank you!

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** Michelle Ritter <mritter@steelperlot.com>
**Sent:** Wednesday, October 9, 2024 9:36 AM
**To:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>
**Cc:** Michelle Ritter <mritter@audem-mgmt.com>; James Knopf <jsk@knopflaw.com>
**Subject:** Re: Steel Perlot and Audem Management account closure notifications

Hi Lisa,

Thank you for sending. We need to obtain all of the original account opening documents and bank records please.

Unfortunately, I have not been able to control my own companies so we need to get the

operating agreements as quickly as possible please. In the meantime, can we please halt these closures until we discuss?

I intend to fully operate SPM and would like to please get a proposed plan as to how we can disentangle SPM and Audem from Hillspire's Wells Fargo accounts. Can you please help with this as soon as possible?

Separately, I'd like to discuss a broader business accounts plan with you. Please let me know if you have some availability later tomorrow or Friday.

Thank you on all,

Michelle

On Oct 8, 2024, at 2:26 PM, Meredith, Lisa M <lisa.meredith@wellsfargo.com> wrote:

Good afternoon, Michelle, I am attaching letters that were mailed out today advising you of the planned closures of the checking and savings accounts for Steel Perlot Management LLC and Audem Management, LLC.

Please contact me if you have any questions.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560
lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at https://www.wellsfargo.com/privacy-security/.

**If you need assistance with documents that may be attached, please contact the sender of this message.**

WIMBL123

<Steel Perlot Management Account Closure Letter October 8 2024.pdf>
<Audem Management Account Closure letter October 8 2024.pdf>

# RE: RE: OD for Steel Perlot Management

**mritter@steelperlot.com**

| | |
|---|---|
| **Received:** | Oct 25, 2024 10:20 AM |
| **Expires:** | Nov 24, 2024 11:20 AM |
| **From:** | lisa.meredith@wellsfargo.com |
| **To:** | mritter@steelperlot.com |
| **Cc:** | shawn.friday@wellsfargo.com |
| **Subject:** | RE: RE: OD for Steel Perlot Management |

This message was sent securely using Zix ®

Hi Michelle, I am copying Shawn Friday, who is one of our small business relationship managers. Please let us know when you would be available for a conversation to discuss your needs going forward with Steel Perlot Management and Audem Management.

Please understand that the decision to close these existing accounts in Wealth Management are final, as you are no longer associated with the Hillspire family office. Shawn can work with you to open new accounts and establish a separate relationship for you and these entities. Shawn's contact information is below.

Best,

Shawn Friday

Senior Small Business Banking Relationship Manager (LO)

Regional Business Relationship Management (RBRM)

Wells Fargo | 8505 IBM Drive, 3rd Floor | Charlotte, NC 28262

MAC D1192-03A | Tel: 704-317-5066 | Fax: 877.399.6127

shawn.friday@wellsfargo.com

This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for this addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** mritter@steelperlot.com <mritter@steelperlot.com>
**Sent:** Thursday, October 24, 2024 3:40 PM
**To:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>
**Cc:** mritter@steelperlot.com
**Subject:** [Secure] RE: OD for Steel Perlot Management

This message was encrypted by the sender and may contain sensitive data. If you reply to or forward this email, please comply with Information Security Policy and remove any sensitive information (including confidential or restricted information) or encrypt the message.

This message was sent securely using Zix ®

Hi Lisa,

I am waiting to hear from your associate as to these accounts. Can you please advise of your and his availability for Monday or Tuesday as I aim to finalize various legal and financial matters while keeping SP running and once again funded despite my business partner?

Thank you,

Michelle

--- Originally sent by lisa.meredith@wellsfargo.com on Oct 24, 2024 10:45 AM ---

This message was sent securely using Zix ®

Good morning, Michelle; FYI there was an item presented this morning for Steel Perlot Management account x4631 that is being returned due to insufficient funds. The item is an automatic payment for $2,282.56, but the balance in the account is only $1,155.47.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560
lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection a

**If you need assistance with documents that may be attached, please contact the sender of this message.**

WIMBL123

This message was secured by **Zix** ®.

This message was secured by **Zix** ®.

This message was secured by **Zix** ®.

This service is hosted by Zix on behalf of Wells Fargo More Information

From: Shawn.Friday@wellsfargo.com
Subject: Steel Perlot Management Connection
Date: Nov 14, 2024 at 5:39:28 AM
To: ritter.sm@icloud.com, mritter@steelperlot.com
Cc: max.allen@wellsfargo.com, lisa.meredith@wellsfargo.com

---

Wells Fargo prohibits any recording of meetings unless expressly authorized. You agree Wells Fargo may record and use meeting content for purposes described in its Privacy Notices, and parties joining can access data you share.

---

Hi Michelle,
Thanks for taking the time to connect with me. My goal for this call is to find out about your business needs and to present some solutions to help you and your business. If you are not able to make it please let me know. I look forward to speaking with you.

Thanks
All the best,

---

## Microsoft Teams Need help?

### Join the meeting now

Meeting ID: 221 523 991 635

Passcode: 7hDGik

---

**Dial in by phone**

+1 980-495-3902,,70021937# United States, Charlotte

Find a local number

Phone conference ID: 700 219 37#

**Join on a video conferencing device**

Tenant key: wf@m.webex.com

Video ID: 117 462 274 0

More info

For organizers: Meeting options | Reset dial-in PIN

Wells Fargo prohibits any recording of meetings unless expressly authorized. You agree Wells Fargo may record and use meeting content for purposes described in its privacy notices linked below, and parties joining can access data you share.

Privacy and security

---

---

This email may be an advertisement or solicitation for products and services. Click here http://www.wellsfargo.com/unsubscribe
to unsubscribe from receiving promotional emails.

**mime-attachment.ics**
5 KB

# EXHIBIT 15

Wells Fargo: Meredith "sole member" / "sole owner and control person" correspondence (July 11–17, 2024) and July 26, 2024 follow-up; Sencil email of July 29, 2024 ("joint written confirmation from you and Hillspire")

From: Michelle Ritter mritter@steelperlot.com
Subject: Fwd: Steel Perlot Management LLC
Date: Nov 18, 2024 at 10:43:22 AM
To: Scott Baron sbaron@baronsamson.com, Elliott Joffe ejoffe@baronsamson.com, Michelle Ritter ritter.sm@icloud.com

Relevant on payroll for SPM and Wells Fargo controls by Hillspire.

##

**Forwarded Conversation**
**Subject: Steel Perlot Management LLC**
------------------------

From: **Sencil, Jerald R.** <sencilj@wellsfargo.com>
Date: Thu, Jul 11, 2024 at 10:24 AM
To: mritter@steelperlot.com <mritter@steelperlot.com>
Cc: Meredith, Lisa M <lisa.meredith@wellsfargo.com>

Good morning Michelle,

There is a wire for Trinet (payroll) set to debit Steel Perlot Management (account ending in 4631) for $337,625.46.

The account is short by $296,367.86.

As CEO of Steel Perlot, you'll need to move funds into the account before 3:30PM today or the wire will automatically cancel.

Either an internal transfer between your Wells Fargo accounts or an incoming wire to Steel Perlot will suffice.

(Check deposits are not readily available funds same day).

Thank you.

Jerald Sencil

Senior Wealth Management Banking Coordinator

Pacific North Region

NMSLR ID: 612034

Wells Fargo Wealth & Investment Management

999 3rd Ave, Suite 4000│Seattle, WA 98104 │MAC P6540-400

Tel 206.343.8371 │ Fax 206.833.4472

The Private Bank Service Team available Monday-Friday, 8a.m. – 12a.m. Eastern Time: 877-646-8560

sencilj@wellsfargo.com

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you

must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at https://www.wellsfargo.com/privacy-security/

WIMBL123

----------

From: **Michelle Ritter** <mritter@steelperlot.com>
Date: Thu, Jul 11, 2024 at 11:16 AM
To: Sencil, Jerald R. <sencilj@wellsfargo.com>
Cc: Meredith, Lisa M <lisa.meredith@wellsfargo.com>, <mkolcun@sgrlaw.com>, Ian Jones <ijones@sgrlaw.com>

Hi Jerald,

Thanks for advising. Can you please let me know who updated all of the contact information for these accounts this morning at Wells Fargo?

As for the funds to Trinet, I am once again very upset that Steel Perlot Management is not funded due to personal matters taken out in a professional context and I am being forced into limbo.

We will address. I've cc'ed SPM's external counsel.

Thank you

—
**Michelle Ritter**
Steel Perlot
mritter@steelperlot.com
(o) +1 917-200-0338

> On Jul 11, 2024, at 10:24 AM, Sencil, Jerald R. <sencilj@wellsfargo.com> wrote:

----------
From: **Michelle Ritter** <mritter@steelperlot.com>
Date: Thu, Jul 11, 2024 at 11:33 AM
To: Sencil, Jerald R. <sencilj@wellsfargo.com>
Cc: Meredith, Lisa M <lisa.meredith@wellsfargo.com>, <mkolcun@sgrlaw.com>, Ian Jones <ijones@sgrlaw.com>, Lisa Coyle <lisa.coyle@blankrome.com>, <craig.weiner@blankrome.com>, Michelle Ritter <michelleritter929@gmail.com>, Connor Coit <ccoit@steelperlot.com>

Hi Jerald,

As just discussed, I asked who directed these changes to the account and gave the directive to reach out to me "as CEO of Steel Perlot" on payroll since it is directly evident from the books and records that Hillspire is the only group that

can send money in and out of these accounts. Even more, as SPM external counsel and I have repeatedly noted, I am simply a figurehead manager which we only discovered, with all authorities apparently falling within Hillspire's direct or indirect control. I asked you if Wells Fargo is effectively working for Hillspire in this case, you said yes and that you'd have the banker reach out.

Michael, Ian + Lisa C - please address this accordingly since the lack of funding and operational transparency from Hillspire and this new mechanism of using a large bank to effectively pressure and threaten me is unacceptable for all parties and introduces new liabilities, including for Wells Fargo.

Thanks

—
**Michelle Ritter**
Steel Perlot
mritter@steelperlot.com
(o) +1 917-200-0338

> On Jul 11, 2024, at 11:16 AM, Michelle Ritter <mritter@steelperlot.com> wrote:
>
> Hi Jerald,

----------

From: **Meredith, Lisa M** <lisa.meredith@wellsfargo.com>
Date: Thu, Jul 11, 2024 at 4:26 PM
To: Michelle Ritter <mritter@steelperlot.com>, Sencil, Jerald R. <sencilj@wellsfargo.com>
Cc: mkolcun@sgrlaw.com <mkolcun@sgrlaw.com>, Ian Jones

<ijones@sgrlaw.com>, Lisa Coyle <lisa.coyle@blankrome.com>, craig.weiner@blankrome.com <craig.weiner@blankrome.com>, Michelle Ritter <michelleritter929@gmail.com>, Connor Coit <ccoit@steelperlot.com>

Hi Michelle. I am attaching the Operating Agreement for Steel Perlot Management, LLC signed by you as the sole member. This is the document Wells Fargo is using to determine who has control of this account; I am not aware of any other "books and records" that govern this entity or account. The agreement is clear that this is a member managed entity and that "All powers to control and manage the business and affairs of the Company shall be vested exclusively in the Member". We are not "working for" Hillspire or anyone else, and have no interest in whatever personal issues are going on between you and Hillspire. We have not made any changes to the account; the only thing that was done this morning was updating the contact information. The only way to address this is for you to provide Wells Fargo with an updated Operating Agreement or other documentation that names someone else as control person. Until that time, Wells Fargo considers you the sole owner and control person of this entity.

I am happy to discuss at your convenience, or refer you to our legal counsel.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

----------

From: **Michelle Ritter** <mritter@steelperlot.com>
Date: Thu, Jul 11, 2024 at 5:19 PM
To: Michelle Ritter <michelleritter929@gmail.com>

--
**Michelle Ritter**
mritter@steelperlot.com

----------

From: **Michelle Ritter** <mritter@steelperlot.com>
Date: Thu, Jul 11, 2024 at 6:08 PM
To: Meredith, Lisa M <lisa.meredith@wellsfargo.com>
Cc: Sencil, Jerald R. <sencilj@wellsfargo.com>, mkolcun@sgrlaw.com <mkolcun@sgrlaw.com>, Ian Jones <ijones@sgrlaw.com>, Lisa Coyle

<lisa.coyle@blankrome.com>, craig.weiner@blankrome.com <craig.weiner@blankrome.com>, Michelle Ritter <michelleritter929@gmail.com>, Connor Coit <ccoit@steelperlot.com>

Hi Lisa,

Thank you for your note. Just to clarify, can you please help reconcile why there were sudden changes in emails/POCs at Wells Fargo this morning and a later email to me, which your colleague noted was a directive from Hillspire, compared to your message sent shortly ago indicating that Hillspire is not involved with this matter and is not even a SPM LLC member, per the agreement you shared?

In this regard, is the operating agreement you provided the only agreement you have on record? I have also attached the relevant LLC agreements and amendments that reflect Hillspire's 49% ownership and membership in SPM LLC. Can you please forward all relevant contracts and agreements on file that you and Wells Fargo have on record?

Lastly, on business itself, the top priority remains paying employees and fulfilling responsibilities to the firm broadly. For your own awareness, Hillspire has been directly involved in all funding matters and as the operating agreement notes - no external funding can be raised to prevent funding blocks unless all members consent.

Thanks,

Michelle
--
**Michelle Ritter**

mritter@steelperlot.com

----------

From: **Meredith, Lisa M** <lisa.meredith@wellsfargo.com>
Date: Mon, Jul 15, 2024 at 9:24 AM
To: Michelle Ritter <mritter@steelperlot.com>
Cc: Sencil, Jerald R. <sencilj@wellsfargo.com>, mkolcun@sgrlaw.com <mkolcun@sgrlaw.com>, Ian Jones <ijones@sgrlaw.com>, Lisa Coyle <lisa.coyle@blankrome.com>, craig.weiner@blankrome.com <craig.weiner@blankrome.com>, Michelle Ritter <michelleritter929@gmail.com>, Connor Coit <ccoit@steelperlot.com>

Hi Michelle, thank you for sending these documents. We will review them and get back to you.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products

and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** Michelle Ritter <mritter@steelperlot.com>
**Sent:** Thursday, July 11, 2024 6:08 PM
**To:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>
**Cc:** Sencil, Jerald R. <sencilj@wellsfargo.com>; mkolcun@sgrlaw.com; Ian Jones <ijones@sgrlaw.com>; Lisa Coyle <lisa.coyle@blankrome.com>; craig.weiner@blankrome.com; Michelle Ritter <michelleritter929@gmail.com>; Connor Coit <ccoit@steelperlot.com>
**Subject:** Re: Steel Perlot Management LLC

----------

From: **Meredith, Lisa M** <lisa.meredith@wellsfargo.com>
Date: Wed, Jul 17, 2024 at 2:22 PM
To: Michelle Ritter <mritter@steelperlot.com>

Hi Michelle,

Thanks for your response and for the updated entity documents. We've provided you with all of the documentation you've requested below. As you are likely aware,

both you and Mandy Quach are authorized signors on the Steel Perlot Management, LLC accounts. However, based on the email exchange below, it appears that there are some outstanding questions that require resolution between you and Hillspire, including who authorizes transactions within the accounts on a go-forward basis.

We are happy to continue to take instruction from whomever the members of Steel Perlot Management LLC agree on to be the authorized signor(s) on the accounts. We ask that you and Hillspire provide us joint written confirmation by August 19, 2024 on who will serve as the authorized parties on these accounts. Until then, we'll restrict the checking and savings accounts from any activity to ensure all parties and assets are protected. If we do not receive guidance from you and Hillspire by August 19, 2024, we will close all the accounts on August 20, 2024.

Our primary goal is to identify the accurate authorized parties so that we can continue to service the accounts in a manner aligned with Steel Perlot Management LLC's wishes. We look forward to your and Hillspire's joint guidance.

Thanks,

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** Michelle Ritter <mritter@steelperlot.com>
**Sent:** Thursday, July 11, 2024 6:08 PM
**To:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>
**Cc:** Sencil, Jerald R. <sencilj@wellsfargo.com>; mkolcun@sgrlaw.com; Ian Jones <ijones@sgrlaw.com>; Lisa Coyle <lisa.coyle@blankrome.com>; craig.weiner@blankrome.com; Michelle Ritter <michelleritter929@gmail.com>; Connor Coit <ccoit@steelperlot.com>
**Subject:** Re: Steel Perlot Management LLC

----------

From: **Michelle Ritter** <mritter@steelperlot.com>
Date: Wed, Jul 17, 2024 at 2:27 PM
To: Michelle Ritter <michelleritter929@gmail.com>, <mkolcun@sgrlaw.com>

—

**Michelle Ritter**

Steel Perlot
mritter@steelperlot.com
(o) +1 917-200-0338

Begin forwarded message:

**From:** "Meredith, Lisa M" <lisa.meredith@wellsfargo.com>
**Date:** July 17, 2024 at 2:22:04 PM PDT
**To:** Michelle Ritter <mritter@steelperlot.com>
**Subject: RE: Steel Perlot Management LLC**

----------
From: **Michelle Ritter** <mritter@steelperlot.com>
Date: Tue, Aug 20, 2024 at 9:40 AM
To: <jsk@knopflaw.com>

--
**Michelle Ritter**
mritter@steelperlot.com

--
**Michelle Ritter**
mritter@steelperlot.com

pdf
**Steel Perlot Management, LLC - 2021.09.21 Operating**
318 KB

pdf
**Steel Perlot Management, LLC - 2021.09.21 Operating**
318 KB

pdf
****July 2021 - SPM 95 5 Amended and Restated**
526 KB

pdf
**SPM Letter Agreement (7-1-22) [Execution].docx**
281 KB

From: Meredith, Lisa M lisa.meredith@wellsfargo.com
Subject: RE: Steel Perlot Management LLC
Date: Jul 17, 2024 at 2:22:04 PM
To: Michelle Ritter mritter@steelperlot.com

---

Hi Michelle,
Thanks for your response and for the updated entity documents. We've provided you with all of the documentation you've requested below. As you are likely aware, both you and Mandy Quach are authorized signors on the Steel Perlot Management, LLC accounts. However, based on the email exchange below, it appears that there are some outstanding questions that require resolution between you and Hillspire, including who authorizes transactions within the accounts on a go-forward basis.
We are happy to continue to take instruction from whomever the members of Steel Perlot Management LLC agree on to be the authorized signor(s) on the accounts. We ask that you and Hillspire provide us joint written confirmation by August 19, 2024 on who will serve as the authorized parties on these accounts. Until then, we'll restrict the checking and savings accounts from any activity to ensure all parties and assets are protected. If we do not receive guidance from you and Hillspire by August 19, 2024, we will close all the accounts on August 20, 2024.
Our primary goal is to identify the accurate authorized parties so that we can continue to service the accounts in a manner aligned with Steel Perlot Management LLC's wishes. We look forward to your and Hillspire's joint guidance.
Thanks,

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** Michelle Ritter <mritter@steelperlot.com>
**Sent:** Thursday, July 11, 2024 6:08 PM

**To:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>
**Cc:** Sencil, Jerald R. <sencilj@wellsfargo.com>; mkolcun@sgrlaw.com; Ian Jones <ijones@sgrlaw.com>; Lisa Coyle <lisa.coyle@blankrome.com>; craig.weiner@blankrome.com; Michelle Ritter <michelleritter929@gmail.com>; Connor Coit <ccoit@steelperlot.com>
**Subject:** Re: Steel Perlot Management LLC

Hi Lisa,

Thank you for your note. Just to clarify, can you please help reconcile why there were sudden changes in emails/POCs at Wells Fargo this morning and a later email to me, which your colleague noted was a directive from Hillspire, compared to your message sent shortly ago indicating that Hillspire is not involved with this matter and is not even a SPM LLC member, per the agreement you shared?

In this regard, is the operating agreement you provided the only agreement you have on record? I have also attached the relevant LLC agreements and amendments that reflect Hillspire's 49% ownership and membership in SPM LLC. Can you please forward all relevant contracts and agreements on file that you and Wells Fargo have on record?

Lastly, on business itself, the top priority remains paying employees and fulfilling responsibilities to the firm broadly. For your own awareness, Hillspire has been directly involved in all funding matters and as the operating agreement notes - no external funding can be raised to prevent funding blocks unless all members consent.

Thanks,

Michelle

> On Thu, Jul 11, 2024 at 4:26 PM Meredith, Lisa M <lisa.meredith@wellsfargo.com> wrote:
> Hi Michelle. I am attaching the Operating Agreement for Steel Perlot Management, LLC signed by you as the sole member. This is the document Wells Fargo is using to determine who has control of this account; I am not aware of any other "books and records" that govern this entity or account. The agreement is clear that this is a member managed entity and that "All powers to control and manage the business and affairs of the Company shall be vested exclusively in the Member". We are not "working for" Hillspire or anyone else, and have no interest in whatever personal issues are going on between you and Hillspire. We have not made any changes to the account; the only thing that was done this morning was updating the contact information. The only way to address this is for you to provide Wells Fargo with an updated Operating Agreement or other documentation that names someone else as control

person. Until that time, Wells Fargo considers you the sole owner and control person of this entity.

I am happy to discuss at your convenience, or refer you to our legal counsel.

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560

lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

**From:** Michelle Ritter <mritter@steelperlot.com>
**Sent:** Thursday, July 11, 2024 11:33 AM
**To:** Sencil, Jerald R. <sencilj@wellsfargo.com>
**Cc:** Meredith, Lisa M <lisa.meredith@wellsfargo.com>; mkolcun@sgrlaw.com; Ian Jones <ijones@sgrlaw.com>; Lisa Coyle <lisa.coyle@blankrome.com>; craig.weiner@blankrome.com; Michelle Ritter <michelleritter929@gmail.com>; Connor Coit <ccoit@steelperlot.com>
**Subject:** Re: Steel Perlot Management LLC

Hi Jerald,

As just discussed, I asked who directed these changes to the account and gave the directive to reach out to me “as CEO of Steel Perlot” on payroll since it is directly evident from the books and records that Hillspire is the only group that can send money in and out of these accounts.

Even more, as SPM external counsel and I have repeatedly noted, I am simply a figurehead manager which we only discovered, with all authorities apparently falling within Hillspire's direct or indirect control. I asked you if Wells Fargo is effectively working for Hillspire in this case, you said yes and that you'd have the banker reach out.

Michael, Ian + Lisa C - please address this accordingly since the lack of funding and operational transparency from Hillspire and this new mechanism of using a large bank to effectively pressure and threaten me is unacceptable for all parties and introduces new liabilities, including for Wells Fargo.

Thanks

—
**Michelle Ritter**
Steel Perlot
mritter@steelperlot.com
(o) +1 917-200-0338

On Jul 11, 2024, at 11:16 AM, Michelle Ritter <mritter@steelperlot.com> wrote:

Hi Jerald,

Thanks for advising. Can you please let me know who updated all of the contact information for these accounts this morning at Wells Fargo?

As for the funds to Trinet, I am once again very upset that Steel Perlot Management is not funded due to personal matters taken out in a professional context and I am being forced into limbo.

We will address. I've cc'ed SPM's external counsel.

Thank you

—
**Michelle Ritter**
Steel Perlot
mritter@steelperlot.com
(o) +1 917-200-0338

On Jul 11, 2024, at 10:24 AM, Sencil, Jerald R. <sencilj@wellsfargo.com> wrote:

Good morning Michelle,

There is a wire for Trinet (payroll) set to debit Steel Perlot Management (account ending in 4631) for $337,625.46.
The account is short by $296,367.86.

As CEO of Steel Perlot, you'll need to move funds into the account before 3:30PM today or the wire will automatically cancel.
Either an internal transfer between your Wells Fargo accounts or an incoming wire to Steel Perlot will suffice.
(Check deposits are not readily available funds same day).

Thank you.

Jerald Sencil
Senior Wealth Management Banking Coordinator
Pacific North Region
NMSLR ID: 612034

Wells Fargo Wealth & Investment Management
999 3rd Ave, Suite 4000 | Seattle, WA 98104 | MAC P6540-400
Tel 206.343.8371 | Fax 206.833.4472

The Private Bank Service Team available Monday-Friday, 8a.m. – 12a.m. Eastern Time: 877-646-8560

sencilj@wellsfargo.com

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at https://www.wellsfargo.com/privacy-security/.

> WIMBL123

--
**Michelle Ritter**
mritter@steelperlot.com

From: Michelle Ritter mritter@steelperlot.com
Subject: Re: Steel Perlot Management, LLC follow up
Date: Jul 26, 2024 at 9:20:02 AM
To: Meredith, Lisa M lisa.meredith@wellsfargo.com
Cc: rsmich@icloud.com

---

Hi Lisa,

I received your follow-up voicemail as I simply called to say thank you last week. As I noted over email and asked, you do not have the correct agreements on file for Steel Perlot. Everyone has known this as Hillspire's representatives are signatories to the documents.

As for Audem, I am the sole manager and member. However, I cannot get complete access and control over any account, without such account being owned or controlled by Hillspire.

What do we need to do to get this addressed?

Thanks,

Michelle

> On Thu, Jul 25, 2024 at 2:55 PM Meredith, Lisa M <lisa.meredith@wellsfargo.com> wrote:

> Hi Michelle, I received your voice mail and have not been successful in connecting with you via phone. I thought I would reach out to see if there has been any update on your end with respect to the ownership and control of Steel Perlot Management, LLC, as well as Audem Management, LLC. I'm happy to discuss if that would be easier.
>
> Thanks

Lisa Meredith

Lead Wealth Management Banker, Executive Director
Western Division
NMLSR ID 1953715

Wells Fargo Wealth & Investment Management
1300 SW 5th Avenue, 18th Floor | Portland, OR 97201 | MAC P6101-180
Tel 971.978.4673 | Cell 971.252.5622

The Private Bank Service Team available 24 hours a day, 7 days a week at 877.646.8560
lisa.meredith@wellsfargo.com

Pronoun: She/Her/Hers

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at https://www.wellsfargo.com/privacy-security/

WIMBL123

--

**Michelle Ritter**
mritter@steelperlot.com

From: Michelle Ritter mritter@steelperlot.com
Subject: Fwd: Wells Fargo Private Bank - Audem Management - Steel Perlot Management
Date: Aug 20, 2024 at 9:39:58 AM
To: jsk@knopflaw.com

---------- Forwarded message ---------
From: **Sencil, Jerald R.** <sencilj@wellsfargo.com>
Date: Mon, Jul 29, 2024 at 12:02 PM
Subject: Wells Fargo Private Bank - Audem Management - Steel Perlot Management
To: mritter@steelperlot.com <mritter@steelperlot.com>
Cc: Meredith, Lisa M <lisa.meredith@wellsfargo.com>, Steele, Jessica M. <Jessica.Steele@wellsfargo.com>

Good morning Michelle,

We are reaching out to you in regards to the Audem Management account. We have been notified of a wire trying to debit the account today, which currently does not have enough funds to process. The account will need to have funds transferred into the account in order for the wire to successfully be released. As you know, we are still waiting on instructions from you and Hillspire on who to reach out to, and take instruction from, for this account for Audem Management as well as the account(s) for Steel Perlot Management, LLC. Without proper funds, the debit will be cancelled. We hope to receive joint written confirmation from you and Hillspire soon so that we have a clear understanding of who to contact in relation to Audem Management and Steel Perlot Management, LLC.

Thank you.

Jerald Sencil

Senior Wealth Management Banking Coordinator

Pacific North Region

NMSLR ID: 612034

Wells Fargo Wealth & Investment Management

999 3rd Ave, Suite 4000 | Seattle, WA 98104 | MAC P6540-400

Tel 206.343.8371 | Fax 206.833.4472

The Private Bank Service Team available Monday-Friday, 8a.m. – 12a.m. Eastern Time: 877-646-8560

sencilj@wellsfargo.com

Wealth & Investment Management offers financial products and services through affiliates of Wells Fargo & Company. Bank products and services are available through Wells Fargo Bank, N.A., Member FDIC.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you must not copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

---

For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at

https://www.wellsfargo.com/privacy-security/

WIMBL123

--

**Michelle Ritter**
mritter@steelperlot.com